Mark B. Chassman, SBN 119619
Email: mchassman@chassmanseelig.com
Ana Vasquez, SBN 231903
Email: avasquez@chassmanseelig.com
CHASSMAN & SEELIG, LLP
1250 Sixth Street, Suite 403
Santa Monica, CA 90401
Telephone: (310) 929-7192
Fax: (310) 929-7627

Alexander D. Pencu (*pro hac vice*)
Email: adp@msf-law.com
Benjamin D. Bianco (*pro hac vice*)
Email: bdb@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Defendant B.R. Shetty*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>Defendants. | Case No.: 2:20-cv-02303-CBM-MAA<br><br>(Consolidated with Case No. 2:20-cv-02895-CBM-MAA)<br><br>**DEFENDANT B.R. SHETTY'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: September 28, 2021<br>Time: 10:00AM<br>Place: Courtroom |

TO PLAINITFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 28, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Consuelo B. Marshall, United States District Court, Central District of California, Courtroom 8B, 8th Floor, 350 W. 1st Street, Los Angeles, California, defendant B.R. Shetty ("Shetty") will, and hereby do move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint for failure to state a claim.  This motion is based on the Notice of Motion and Motion to Dismiss; the attached Memorandum of Points and Authorities, the Request for Judicial Notice in support thereof; the papers and records on file in this action; and such other written and oral argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 19, 2021.

Dated: August 4, 2021                            CHASSMAN AND SEELIG LLP
                                                 By: /s/ Mark B. Chassman
                                                     Mark B. Chassman

                                                 Attorneys for Defendant
                                                 B.R. Shetty

# Table of Contents

TABLE OF AUTHORITIES ................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

RELEVANT PROCEDURAL BACKGROUND ...................................................... 1

BACKGROUND AND SUMMARY OF ALLEGATIONS ............................................... 2

    NMC's Securities in the United States ............................................. 2

    Allegations Related to Shetty's Role in the Alleged Securities Fraud .............. 3

ARGUMENT ............................................................................ 4

I.    Legal Standard ............................................................... 4

II.    Plaintiffs Do Not Allege A Domestic Transaction ............................. 4

III.    The Amended Complaint Fails to State a Claim Under the PSLRA/Rule 10b-5 and Also Fails to Comply with Federal Rules 8(a) and 9(b) ..................... 6

    A. The Amended Complaint Does Not Plead Any Actionable Statements .. 7

        1. Plaintiffs Do Not Identify Any Material Misstatements .................... 7

        2. Plaintiffs Do Not Allege Falsity ........................................ 9

        3. Group Pleading Is Impermissible ....................................... 10

        4. The Muddy Waters Report Does Not Support Plaintiffs' Claims ..... 11

        5. Plaintiffs Engage In Impermissible Puzzle Pleading ........................ 12

    B. Plaintiffs Fail to Allege a Strong Inference of Scienter ......................... 13

    C. Plaintiffs Fail to Plead Reliance ............................................ 17

        1. Plaintiffs Are Not Entitled to the Affiliated Ute Presumption .......... 17

        2. The Fraud-on-the-Market Presumption Does Not Apply ................ 18

    D. Plaintiffs Fail To Plead Loss Causation ..................................... 20

1.  Standard ............................................................................ 20

2.  Transaction Causation Is Insufficient to Plead Loss Causation ........ 21

3.  The Muddy Waters Report Is Not a Corrective Disclosure............... 22

IV.    Plaintiffs' Section 20(a) Claim Fails to Plead Control Person Liability...... 23

CONCLUSION............................................................................... 25

# Table of Authorities

Page(s)

Cases

*Affiliated Ute Citizens of the State of Utah v. United States,*
  406 U.S. 128 (1972) ................................................................... 17

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ................................................................... 18

*Binder v. Gillespie,*
  184 F.3d 1059 (9th Circ. 1999) ......................................... 17, 18, 19

*Bonanno v. Cellular Biomedicine Group, Inc.,*
  2016 WL 4585753 (N.D. Cal. Sep. 2, 2016) ............................... 23

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) ..................................................... 4

*Cammer v. Bloom,*
  711 F.Supp. 1264 (D.N.J. 1989) ................................................. 19

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.,*
  878 F.Supp.2d 1009 (C.D. Cal. 2011) ......................................... 17

*Depot, Inc. v. Caring for Montanans, Inc.,*
  915 F.3d 643 (9th Cir. 2019) ....................................................... 7

*Destfino v. Reiswig,*
  630 F.3d 952 (9th Cir. 2011) ..................................................... 10

*Dura Pharm., Inc. v. Broudo,*
  544 U.S. 336 (2005) .............................................................. 6, 20

*Firefighters Pension & Ret. Sys. v. IXIA,*
  50 F.Supp.3d 1328 (C.D. Cal. 2014) ..................................... 15, 16

*Glazer Capital Mgmt., LP v. Magistri,*
  549 F.3d 736 (9th Cir. 2008) ..................................................... 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................................ 18, 20

*Hodges v. Akeena Solar, Inc.*,
2010 WL 3705345 (N.D. Cal. May 20, 2010) ......................................................... 12

*In re Arrowhead Research Corp. Sec. Litig.*,
2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ......................................................... 15

*In re Bofl Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ................................................................................. 22

*In re Cutera Securities Litig.*,
610 F.3d 1103 (9th Cir. 2010) ................................................................................. 8

*In re FoxHollow Tech., Inc. Sec. Litig.*,
2008 WL 2220600 (N.D. Cal. May 27, 2008) ........................................................... 8

*In re Hansen Natural Corp., Sec. Litig.*,
527 F.Supp.2d 1142 (C.D. Cal. 2007) .............................................................. 10, 15

*In re Herbalife, Ltd. Sec. Litig.*,
2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) .................................................... 22, 23

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
554 F.Supp.2d 1083 (C.D. Cal. 2008) .............................................................. 10, 14

*In re Lockheed Martin Corp. Sec. Litig.*,
272 F.Supp.2d 928 (C.D. Cal. 2002) ...................................................................... 14

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ................................................................................ 24

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) ................................................................................... 24

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability
Litig.*,
258 F.Supp.3d 1037 (N.D. Cal. 2017) .............................................................. 24, 25

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ................................................................................. 16

*Killyoung Oh v. Hanmi Finan. Corp.*,
   2021 WL 1566849 (C.D. Cal. Mar. 17, 2021) ........................................................ 13

*May v. Borick*,
   1997 WL 314166 (C.D. Cal. Mar. 3, 1997) ................................................. 10, 11, 12

*May v. KushCo Holdings, Inc.*,
   2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ..................................................... 15, 16

*McGee v. American Oriental Bioengineering, Inc.*,
   2014 WL 12586107 (C.D. Cal. 2014) ...................................................................... 16

*Metzler Inv. GMBH v. Corinthian College, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................ Passim

*Morrison v. National Australia Bank*,
   561 U.S. 247 (2010) .................................................................................................. 4

*Mulquin v. Nektar Therapeutics*,
   2020 WL 7773580 (N.D. Cal. Dec. 30, 2020) ........................................................... 9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013) .......................................................................... 20, 21

*Oregon Pub. Emp. Ret. Fund v. Apollo Group Inc.*,
   774 F.3d 598 (9th Cir. 2014) ...................................................................... 6, 7, 8, 14

*Police Ret. Sys. of St. Louis v. Intuitive Surg., Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ................................................................................... 9

*Primo v. Pacific Biosciences of California, Inc.*,
   940 F.Supp.2d 1105 (N.D. Cal. 2013) .................................................................... 12

*Reese v. Malone*,
   2009 WL 506820 (W.D. Wash. Feb. 27, 2009) ....................................................... 24

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard*,
   845 F.3d 1268 (9th Cir. 2017) ................................................................................... 7

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   119 F.Supp.3d 1213 (C.D. Cal. 2015) ............................................................... 19, 20

*Seaman v. California Business Bank*,
  2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) ........................................................ 9

*Short v. Dondanville*,
  2012 WL 12888360 (C.D. Cal. Oct. 5, 2012)......................................................... 25

*Shurkin v. Golden State Vintners Inc.*,
  471 F.Supp.2d 998 (N.D. Cal. 2006) ...................................................................... 24

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) .................................................................................. 15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
  552 U.S. 148 (2008)................................................................................................. 17

*Stoyas v. Toshiba Corp.*,
  424 F.Supp.3d 821 (C.D. Cal. 2020) ........................................................................ 6

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) ....................................................................... 2, 4, 5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................. 13

*Wenger v. Lumisys, Inc.*,
  2 F.Supp.2d 1231 (N.D. Cal. 1998) .................................................................... 9, 13

*Wietschner v. Monterey Pasta Co.*,
  294 F.Supp.2d 1102 (N.D. Cal. 2003) .................................................................... 14

*Xiaojiao Lu v. Align Tech., Inc.*,
  417 F.Supp.3d 1266 (N.D. Cal. 2019) ................................................................. 9, 13

*Zucco Partners LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ......................................................................... 4, 17

Statutes

15 U.S.C. §78u-4(b)(1)............................................................................................... 7

15 U.S.C. §78u-4(b)(2)............................................................................................... 7

15 U.S.C. §78u-4(b)(2)(A) ............................................................................ 14

Rules

Fed. R. Civ. P. 8(a) ............................................................................... 3, 1, 6

Fed. R. Civ. P. 9(b) ............................................................................. 1, 7, 10

Fed. R. Civ. P. 12(b)(6) ....................................................................... 2, 1, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs assert claims against Defendant B.R. Shetty ("Shetty") under the Securities Exchange Act of 1934 ("Exchange Act") for: (1) securities fraud under Section 10(b) and Rule 10b-5; and (2) control person liability under Section 20(a).

The Amended Complaint should be dismissed for four reasons.  First, the Amended Complaint does not allege a domestic securities transaction involving NMC Health Plc ("NMC").  Second, the Section 10(b) claim is not pled with particularity as required by Fed. R. Civ. P. ("Federal Rule") 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Third, in violation of Federal Rule 8(a)'s requirement to present short, plain, and non-redundant allegations Plaintiffs engage in impermissible puzzle pleading.  Finally, the Section 20(a) claim should be dismissed because Plaintiffs cannot establish a primary Section 10(b) violation, nor do Plaintiffs plead that Shetty is a "control person" for purposes of Section 20(a).

## RELEVANT PROCEDURAL BACKGROUND

On March 13, 2020, plaintiff Chris Hashem ("Hashem") filed a class action complaint on behalf of persons or entities who purchased or traded NMC securities between March 13, 2016, and March 10, 2020 (the "Class Period") against NMC and individual defendants Shetty, Prasanth Manghat, Khalifa Bin Butti, Prashanth Shenoy, H.J. Mark Tompkins ("Individual Defendants"). (Dkt. 1) On March 27, 2020, Shengming Huang ("Huang") filed a materially identical complaint against defendants (2:20-cv-02895-CBM-MAA).  On September 24, 2020, the actions were consolidated, and Hashem, Huang, and Abdul Razeq Abdul Ahad were appointed as lead plaintiffs (together, "Plaintiffs") (Dkt. 21).[1]  On June 21, 2021, Shetty moved pursuant to Rule 12(b)(6) to dismiss Plaintiffs' Exchange Act claims (Dkt. 51), and on July 7, 2021, Plaintiffs filed the Amended Complaint (Dkt. 56).

---

[1]  All references to "¶_" are to the Amended Complaint.

## BACKGROUND AND SUMMARY OF ALLEGATIONS

NMC is a foreign corporation incorporated in England and Wales.  ¶11.  NMC owned and operated approximately 200 healthcare facilities in, *inter alia*, the United Arab Emirates, the U.K., and Spain.  ¶10.  Shetty founded NMC and served as NMC's CEO until March 2017.  ¶16.  Shetty served as NMC's Non-Executive Joint Chairman of the Board from March 2017, until February 17, 2020.  ¶¶16, 87.

The Amended Complaint alleges that statements from NMC publications were "materially false and/or misleading because they misrepresented and failed to disclose … adverse facts pertaining to the NMC's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them."  ¶69.

On December 17, 2019, Muddy Waters Capital LLC ("Muddy Waters") published a short-seller report (the "Muddy Waters Report").  Muddy Waters disclosed that it was "short NMC Health plc" and stood to realize a significant profit if the price of NMC securities dropped.  *See* Request for Judicial Notice ("RJN"), Ex. 1, pp. 1-2.  Plaintiffs allege that Muddy Waters "explain[ed] that NMC had misled investors and failed to disclose: "(i) its lack of internal controls; (ii) (de facto) related party transactions; (iii) its true debt burden; (iv) its true cash-on-hand and asset values; and (v) its use of reverse factoring."  ¶70.  Plaintiffs did not acquire NMC securities until after the Muddy Waters Report was released.  *See* Dkt. 11-2, pp. 2, 5, 7.

### NMC's Securities in the United States

An American Depositary Receipt ("ADR") is an instrument issued by a bank that represents a certain number of shares in a non-U.S. company.  "ADRs are receipts that evidence ownership of an 'American Depositary Share' or 'ADS,' which is the actual negotiable certificate."  *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 940 n.5 (9th Cir. 2018).[2]

Investors in the U.S. were able to obtain interests in NMC only through the purchase of NMC ADSs, which traded on the over-the-counter market ("OTC") under

---

[2] *See also*, https://www.sec.gov/investor/alerts/adr-bulletin.pdf, p. 1.

the ticker symbol "NMHLY."  ¶5.  Citibank N.A. ("Citibank") and Deutsche Bank Trust Company America ("Deutsche Bank") in New York acted as the depositary banks for NMC ADSs and each administered an NMC ADR program.[3]  *Id*.

ADRs may be "sponsored" or "unsponsored."  Sponsored ADRs are ADRs where the non-U.S. company "enters into an agreement directly with the U.S. depositary bank to arrange for … forwarding of shareholder communications, payment of dividends, and other services."[4]  Unsponsored ADRs are set up without cooperation from the non-U.S. company and can be initiated by a broker-dealer that wants to establish a trading market in the United States for the non-U.S. company.[5]

ADRs are registered with the Securities and Exchange Commission ("SEC") on a Form F-6 statement.  The Form F-6 statement discloses the contractual terms of the ADR deposit, *e.g*., the number of shares of the underlying non-U.S. company that are on deposit with the depositary bank.[6]  The Citibank Form F-6 was filed with the SEC on May 13, 2015, and the Deutsche Bank Form F-6 was filed with the SEC on April 3, 2015.[7]  Both NMC ADR programs were "unsponsored," meaning that they were issued without NMC's involvement, and NMC was not subject to SEC filing regulations.[8]

**Allegations Related to Shetty's Role in the Alleged Securities Fraud**

The Muddy Waters Report notes that as of December 2019, Shetty owned 15.9% of NMC's shares.  RJN, Ex. 1, p. 31.  Plaintiffs allege that Shetty reduced his interest in NMC to 9.81% in February 2020.  ¶90.  Plaintiffs allege that Shetty signed NMC's annual reports and that the annual reports identify Shetty, along with defendant Khalifa Bin Butti and non-party H.E. Bin Butti, as NMC's "immediate and ultimate controlling part[ies]."  ¶¶13, 26, 37, 46, 55.  Plaintiffs also allege that in 2014, *i.e*., two years before

---

[3] *See* RJN Exs. 2-3.
[4] https://www.sec.gov/investor/alerts/adr-bulletin.pdf, pp. 1-2.
[5] https://www.sec.gov/investor/alerts/adr-bulletin.pdf, p. 1.
[6] https://www.sec.gov/investor/alerts/adr-bulletin.pdf, p. 2.
[7] *See* RJN Ex. 2, p. 7; Ex. 3, p. 7.
[8] https://www.adr.db.com/drwebrebrand/dr-universe/dr_details.html?identifier=10520; https://depositaryreceipts.citi.com/adr/common/file.aspx?idf=3417

the Class Period, an alleged "Shetty controlled company" was the "primary contractor" for an NMC hospital constructed in 2014.  ¶¶71-72; RJN, Ex. 1, p. 4.  No other allegations are alleged directly against Shetty.

**ARGUMENT**

### I.    <u>Legal Standard</u>

A motion to dismiss is proper under Federal Rule 12(b)(6) where a pleading fails to state a claim upon which relief can be granted.  A district court properly dismisses a claim if the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1159 (9th Cir. 2016).  When deciding a motion to dismiss a court may consider the facts alleged in the complaint, documents attached to the complaint, and documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned. *See Zucco Partners LLC v. Digimarc Corp*., 552 F.3d 981, 990 (9th Cir. 2009).

Plaintiffs' Section 10(b) claim should be dismissed for two reasons: (1) Plaintiffs do not allege a domestic transaction; and (2) the Section 10(b) claim is not pled with requisite particularity under the PSLRA.  Without a primary Section 10(b) violation, Plaintiffs' Section 20(a) control person claim against Shetty must fail.  Plaintiffs' Section 20(a) claim against Shetty fails for the additional reason that Plaintiffs fail to allege that Shetty was a "control person."

### II.    <u>Plaintiffs Do Not Allege A Domestic Transaction</u>

The Exchange Act "appl[ies] only [to] transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. National Australia Bank,* 561 U.S. 247, 268 (2010).  Neither the London Stock Exchange, on which NMC's common shares were traded, nor the OTC, where NMC ADSs trade in the U.S., qualify as a "domestic exchange."  *Stoyas*, 896 F.3d at 946 (finding the OTC is not included in the definition of "domestic exchange").  Thus, to plead a viable Exchange Act claim plaintiffs must allege a "domestic transaction."

The Ninth Circuit applies the "irrevocable liability test" to determine whether securities are the subject of a "domestic transaction."  *Stoyas*, 896 F.3d at 949.  To satisfy the "irrevocable liability test," a plaintiff "must plausibly allege 'that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security.'"  *Stoyas*, 896 F.3d at 948.  The factual allegations that may be used to satisfy this test include "detailed factual allegations … concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money."  *Id*.  Plaintiffs' failure to plead particularized facts regarding their alleged purchases of NMC ADSs mandates dismissal of their claims.

In *Stoyas*, like the action herein, the complaint alleged that the ADRs of foreign defendant Toshiba were purchased in the U.S. on the over-the-counter market.  *Stoyas*, 896 F.3d at 949.  Missing from the complaint, however, were any allegations "regarding where the parties to the transaction incurred irrevocable liability," such as "who sold the relevant securities, and how those transactions were effectuated, as evidenced by documentation such as confirmation slips."  *Id*.  The plaintiffs alleged only that proposed class included "all persons who acquired Toshiba" ADRs regardless of the location of irrevocable liability.  *Stoyas*, 896 F.3d at 949, n. 20.  The Ninth Circuit affirmed the 12(b) dismissal for plaintiffs' failure to plead a "domestic transaction."

Like the plaintiffs in *Stoyas*, Plaintiffs here fail to allege any facts addressing, as required, "irrevocable liability." *Stoyas*, 896 F.3d at 949.  Moreover, to plead a domestic transaction, and establish irrevocable liability in the U.S., Plaintiffs must allege with particularity the who, what, when, where, and how of their alleged purchases of NMC ADSs.  *See id*.  Plaintiffs' failure to plead such specific facts, therefore, precludes a finding that Plaintiffs engaged in a "domestic transaction."

In addition, contrary to their allegations, Plaintiffs' certifications do not state that Plaintiffs purchased NMC ADSs during the Class Period.  ¶9.  Hashem certified that he acquired 11,000 shares of NMC "Common Stock" on January 8, 2020.  (Dkt. 11-2,

p. 2).   Accepting Hashem's certification as true that he purchased NMC "Common Stock," he could only have purchased such securities on the London Stock Exchange, and not in the United States.  Huang certified that on December 20, 2019, he acquired 15,845 "shares" of NMC, and Ahad certified that on March 5, 2020, he acquired 20,000 "shares" of NMC.  (*Id.*, pp. 5, 7).   Huang and Ahad do not specify whether, like Hashem, they acquired NMC common stock, or if they acquired NMC ADSs, and if they did acquire NMC ADSs, how the transaction was effectuated, *e.g.*, who the ADSs were purchased from.   In conclusory fashion, Plaintiffs allege that they "incurred irrevocable liability" in the United States (¶9), but—as set forth above—such allegations are insufficient to satisfy *Morrison*'s "domestic transaction" requirement. *See Stoyas v. Toshiba Corp.*, 424 F.Supp.3d 821, 827 (C.D. Cal. 2020).[9]

### III.   The Amended Complaint Fails to State a Claim Under the PSLRA/Rule 10b-5 and Also Fails to Comply with Federal Rules 8(a) and 9(b)

To state a claim for securities fraud under Rule10b-5, a plaintiff must plead the following elements: (1) a material misrepresentation or omission of fact; (2) scienter; (3) reliance; (4) economic loss; and (5) loss causation.   *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  A plaintiff alleging securities fraud must comply with the requirements of Federal Rules 8(a), 9(b), and the PSLRA.   *See Oregon Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

Federal Rule 8(a) provides that a complaint, "shall contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). To state a claim for securities fraud, a complaint must specify "each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1).  Rule 9(b) requires a plaintiff to plead the "time, place, and

---

[9]  On a separate ground for dismissal, Plaintiffs improperly define the class as all "persons or entities who purchased or otherwise acquired NMC American Depositary Shares ("ADSs")," regardless of the locus of irrevocable liability.  ¶¶1, 96.  In *Stoyas*, the Ninth Circuit found that the proposed class, defined as "'all persons who acquired Toshiba' ADRs," failed to "comport with *Morrison*" because the class was not limited to persons who incurred "irrevocable liability" in the U.S.  *Stoyas*, 896 F.3d at 949, n.20.

specific content of the false representations as well as the identities of the parties to the misrepresentations." *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 668 (9th Cir. 2019).  The PSLRA itself further requires that "the complaint shall, with respect to each act or omission ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2).

**A.  The Amended Complaint Does Not Plead Any Actionable Statements**

An actionable misrepresentation or omission has two components.  First, "Plaintiffs must allege a misrepresentation or a misleading omission with particularity and explain why it is misleading." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard*, 845 F.3d 1268, 1274 (9th Cir. 2017).  Second, "applying an objective standard, that misrepresentation or omission must have been material to investors." *Id*.  Materiality depends on whether there is "a substantial likelihood [the misrepresentation or omission] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" for the purpose of making the investment decision. *Id*.

**1.  Plaintiffs Do Not Identify Any Material Misstatements**

Only "objectively false statements," and "knowingly false statements of fact" that "are capable of objective verification" can form the basis of a securities fraud claim.  *See Oregon Pub. Emp. Ret. Fund*, 774 F.3d at 606 (dismissing Section 10(b) claims for failure to allege "objectively false statements").  By contrast, statements that cannot be evaluated as "true or false on an objective standard" and "subjective assessments" by a corporation "hardly amount[] to a securities fraud." *Id.*, at 606-07.

Plaintiffs premise their case on unactionable expressions of opinion from NMC's annual reports.  *See*, *e.g.*, ¶34 (alleging that the Board believes "to the best of [their] knowledge" the accuracy of NMC's financial statements); ¶¶31, 42, 50, 59 ("the Board do not consider that [interests in other businesses], nor the time commitment that they require, affect the ability of such Directors to undertake their role or comply with their statutory obligations"); ¶61 (the "Senior Management Team believes that these

divisions of responsibility at both facility and corporate levels provide a natural check and balance across all internal control areas"); ¶62 (the "Board believes, having evaluated both the design and operating effectiveness of the internal controls and procedures, that these were effective during the period covered by this report").  These types of statements are "inherently subjective 'puffing' and would not induce the reliance of a reasonable investor."  *Oregon Pub. Emp. Ret. Fund*, 774 F.3d at 606.

Plaintiffs also rely on vague statements of corporate optimism as evidence of securities fraud, but such statements are equally unactionable.  *See In re Cutera Securities Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel-good monikers," and "subjective assessment[s] hardly amounts to a securities violation").  For example, Plaintiffs highlight as misleading a statement from an NMC annual report that "VIEWING THE FUTURE WITH OPTIMISM, DESPITE ALL CHALLENGES NMC has moved from success to success over the past many years and I see no reason why this should change in the foreseeable future, despite an otherwise challenging environment."  ¶47 (emphasis in original).  This quintessential "vague and unspecific assertion[] of corporate optimism or statement[] of mere puffing cannot state an actionable claim of fraud" because "reasonable investors do not consider 'soft' statements or loose predictions important in making investment decisions."  *In re FoxHollow Tech., Inc. Sec. Litig.*, 2008 WL 2220600 *17 (N.D. Cal. May 27, 2008) (statement that the company believes "we have the resources, technology, people and financial to realize our goals" is not actionable).

Similarly, Plaintiffs cite to statements from NMC's annual reports that it had "ambitious growth plans" (¶47), aspired to adopt a "conservative approach in risk taking" (¶¶30, 40, 48), and that it had a "proactive stance in considering risk … [to] create[e] long term value for our shareholders" (¶29), but such "[s]tatements of mere corporate puffery" are not actionable forecasts because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate

executives." *Police Ret. Sys. of St. Louis v. Intuitive Surg., Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("feel good" speak that there are "potential growth" opportunities and that the company is "reservedly optimistic" are "non-actionable puffing").

Finally, conclusory allegations that NMC "lacked effective internal controls and risk management," or "engaged in undisclosed and extensive related party and de facto related party transactions" do not state a claim for securities fraud.  ¶69; *Seaman v. California Business Bank*, 2013 WL 5890726 *4 (N.D. Cal. Oct. 30, 2013).

### 2.  <u>Plaintiffs Do Not Allege Falsity</u>

The Amended Complaint fails for the additional reason that it does not properly plead falsity with the requisite particularity.  "Falsity is alleged when a plaintiff points to [a] defendant's statements that directly contradict what the defendant knew at the time." *Mulquin v. Nektar Therapeutics*, 2020 WL 7773580 *8 (N.D. Cal. Dec. 30, 2020).  This requires Plaintiffs to connect the content of NMC's publications with particularized allegations that the publications were "false at the time made." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F.Supp.3d 1266, 1277 (N.D. Cal. 2019).

The falsity requirement "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian College, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). "[W]ithout specific references to specific facts demonstrating that the statements at issue were false or misleading when made, allegations regarding adverse information supposedly known to defendants are merely 'speculation and conclusions drawn from hindsight.'"  *Wenger v. Lumisys, Inc.*, 2 F.Supp.2d 1231, 1250 (N.D. Cal. 1998) (finding complaint failed to allege specific "facts showing that the defendants lacked a reasonable basis for its predictions").

Plaintiffs allege a laundry list of potential ways NMC's statements could be false or misleading (¶69), but a "list of subjects about which Defendants made allegedly false or misleading statements" is insufficient to plead securities fraud because this does not

inform the court as to "how or why" each statement was "fraudulent or misleading *at the time it was made*."  *May v. Borick*, 1997 WL 314166 at *8 (C.D. Cal. Mar. 3, 1997) (emphasis in original).

### 3.  Group Pleading Is Impermissible

Unable to identify the "who, what, when, where and how" of the alleged fraud, Plaintiffs improperly rest on "group pleading" and allege fraud generally against all Defendants.  ¶69; *see In re Hansen Natural Corp., Sec. Litig*., 527 F.Supp.2d 1142, 1153 (C.D. Cal. 2007) (the "group pleading doctrine can no longer be used in pleading cases under the PSLRA").  Plaintiffs cannot escape their pleading obligations with the "everyone did everything" allegations contained in the Amended Complaint.  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  The PSLRA imposes a "specific requirement that the untrue statements or omissions be set for with particularity" as to "each defendant in multiple defendant cases." *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F.Supp.2d 1083, 1093 (C.D. Cal. 2008).  The PSLRA's particularity requirement is in accord with Rule 9(b), which "does not allow a complaint to … lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino*, 630 F.3d at 958.

Plaintiffs allege that Shetty purportedly "signed" NMC's annual reports (¶¶26, 37, 46, 55) in a hollow attempt to convince the Court that Shetty made the statements cited in the Amended Complaint.  The truth is that a vast majority of the quotes cited in the Amended Complaint are specifically attributed to other individuals.   For example, in Paragraph 28 Plaintiffs allege that NMC's 2015 annual report "[i]n particular … stated the following about the Company's strong financial base: … 'This strong financial base enabled the Company to restructure existing loans, reduce its costs of funds and create additional headroom *to ensure that the Group is conservatively financed*.'"  ¶28 (emphasis in original).   Shetty did not make this statement.  Rather, defendant Tompkins included this statement in his Chairman's 2015 report to shareholders.  *See* RJN Ex. 4 (2015 Annual Report), p. 4.  Tompkins is also responsible

for the statement quoted in Paragraph 29, that in the fourth quarter of 2014 NMC's management team implemented a "full risk identification process." *Id.*

Similarly, although Shetty is attributed with the statement quoted in Paragraph 30 that there were "no material changes to the Group's strategic risk register in 2015," Plaintiffs make no attempt to explain how or why this statement discussing NMC's "strategic risk register in 2015," *i.e.*, one year before the Class Period, was false or material to Plaintiffs' claims. ¶30. In other instances, Plaintiffs quote statements by non-party independent directors of NMC's board of directors and not Shetty himself. For example, Paragraph 31 of the Amended Complaint quotes from non-party Jonathan Bomford's corporate governance report issued on behalf of NMC's Audit Committee, of which Shetty was not a member. ¶31; RJN Ex. 4 (2015 Annual Report), pp.52-53. Plaintiffs do not explain how or why Mr. Bomford's statement is false, misleading, or material or why such a statement is imputed to Shetty for its purported falsity.

The above pleading deficiencies, which pervade the Amended Complaint, are a classic example of a defective securities fraud complaint that is littered with a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false." *Metzler*, 540 F.3d at 1070. The PSLRA's heightened pleading standard requires more than block quotes from annual reports and allegations that Shetty purportedly signed NMC's annual reports.

### 4. The Muddy Waters Report Does Not Support Plaintiffs' Claims

Plaintiffs allege that the "truth" was "revealed" in the December 17, 2019 Muddy Waters Report (¶¶70-80) but fail to trace with particularity statements from the Muddy Waters Report to the litany of alleged false statements recounted in the Amended Complaint, thus "leaving Defendants and the Court to piece together Plaintiff[s'] claims with regard to particular statements." *May*, 1997 WL 314166 *8. This lack of specificity in the Complaint "obfuscates rather than clarifies" Plaintiffs' claims, and the failure to address the substance or materiality of any alleged misleading or false statement is fatal to Plaintiffs' claims. *Id.*

As to Shetty, the Muddy Waters Report's discussion of alleged wrongdoing by Shetty is limited to an assertion that in 2014, two years before the Class Period and one year before NMC ADS were even registered with the SEC, an alleged "Shetty controlled company" was overpaid to build the NMC Royal Women's Hospital. *See* ¶¶71-72; RJN, Ex.1, pp. 4-5; Ex. 2, p.7; Ex.3, p. 7. Plaintiffs allege that the construction costs were in "stark contrast to NMC's continued statements regarding its internal controls and lack of improper related party transactions," but this allegation defies basic logic. ¶70. The "continued statements" that Plaintiffs reference are from NMC's annual reports published in 2016-2018. Statements from 2016-2018 have no logical relation to a pre-Class Period transaction that was completed in 2014. Plaintiffs make no allegation that Shetty or NMC misrepresented or concealed the costs to construct the NMC Royal Women's Hospital. Indeed, the information Muddy Waters used for its report came from NMC's 2014 annual report. RJN, Ex.1, p. 4 n.1. Information that was accurately disclosed in NMC's 2014 annual report cannot form the basis of a securities fraud claim, and regardless, pre-Class Period transactions cannot serve as a basis for liability. *See Hodges v. Akeena Solar, Inc*., 2010 WL 3705345 *2 (N.D. Cal. May 20, 2010) (pre-class period supply agreement where defendant "agreed to pay Suntech a much higher premium than the market price for the solar panels Suntech was providing warranted" found unactionable as a matter of law).

### 5. Plaintiffs Engage In Impermissible Puzzle Pleading

The Amended Complaint is a classic example of "puzzle pleading" that leaves "defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading." *Primo v. Pacific Biosciences of California, Inc.*, 940 F.Supp.2d 1105, 1111 (N.D. Cal. 2013) ("puzzle pleadings fail 'to set forth a 'short and plain' statement of their claims in violation of Rule 8(a),' to 'make each allegation 'simple, concise and direct'"). For 39 paragraphs of the Amended Complaint Plaintiffs block quote dozens of general statements from NMC's annual reports (¶¶26-64) but fail to explain which particular

statements are allegedly false or misleading and why.  Instead, in conclusory fashion Plaintiffs state that "Defendants made false and/or misleading statements and/or failed to disclose" information "pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them."  ¶69.  Then, Plaintiffs rattle off a list of eight general reasons why the statements were false when made, but do not identify which reason(s) applies to which allegation(s).  *Id*.

Puzzle pleadings fall short of the pleading requirements of Federal Rule 8(a), 9(b) and the PSLRA because, as here, the format provides no timeline as to Defendants' alleged knowledge, nor particularized allegations as to the reasons for any given statement's alleged falsity.  *See Wenger*, 2 F.Supp.2d at 1244 ("dumping long lists of 'specific' reasons into the complaint … make[s] a mockery of Rule 9(b) and the [PSLRA]").  Indeed, courts regularly dismiss securities fraud claims as "puzzle pleadings" where the complaint "recite[s] lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a generalized list of omissions that were required to make the statements not misleading." *Xiaojiao*, 417 F.Supp.3d at 1274 (complaint dismissed as a "puzzle pleading" where for 42 paragraphs of the complaint the plaintiff quoted "paragraph-long statements and selectively bold[ed] and italicize[d] certain sentences"); *see also Killyoung Oh v. Hanmi Finan. Corp.*, 2021 WL 1566849 (C.D. Cal. Mar. 17, 2021) (dismissing complaint for use of "numerous, lengthy block quotations … followed by a 'laundry list of reasons why all the statements were allegedly false' or misleading when made").

**B. <u>Plaintiffs Fail To Allege A Strong Inference Of Scienter</u>**

"The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  "[W]ith respect to each act or omission" the complaint

must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2)(A).

Where, as here, Plaintiffs seek to hold individuals and a company liable for securities fraud, the Ninth Circuit "require[s] that the Plaintiffs allege scienter with respect to each of the individual defendants."  *Oregon Pub. Emp. Ret. Fund*, 774 F.3d at 607.  "Under no circumstances does the group-published information doctrine relieve plaintiffs of their burden to plead scienter under [the PSLRA]."  *In re Lockheed Martin Corp. Sec. Litig.*, 272 F.Supp.2d 928, 936 (C.D. Cal. 2002).  Thus, the question on a motion to dismiss is whether Plaintiffs have alleged "in great detail, facts that constitute strong circumstantial evidence" that Shetty (and Individual Defendants) acted with "deliberate[] reckless[ness]" or engaged in "conscious misconduct."  *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (the "PSLRA requires [the plaintiff] to plead scienter with respect to those individuals who actually made the false statements").  "It is not enough for [plaintiffs] to state facts giving rise to a mere speculative inference of deliberate recklessness, or even a reasonable inference of deliberate recklessness."  *In re Impac Mortg.*, 554 F.Supp.2d at 1090.

Devoid from the Amended Complaint is a single particularized allegation that Shetty (or any Defendant) acted with scienter.  In conclusory fashion, Plaintiffs allege that "Individual Defendants, who are the senior officers and/or directors of [NMC], had actual knowledge of the material omissions and/or the falsity of the material statements … and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other NMC personnel to members of the investing public, including Plaintiffs and the Class."  ¶110.  "[B]lanket statements as to what Defendants knew or should have known" are insufficient to plead scienter where "Plaintiffs fail to allege specifically what information these individuals, or anyone else at the company, actually acquired through 'inside access.'"  *Wietschner v. Monterey Pasta Co.*, 294 F.Supp.2d 1102, 1115 (N.D. Cal. 2003) (allegation that

defendants were "the two highest ranking officers . . . during the class period" and, thus, had "access to the adverse non-public information about the business, finances, markets and present and future business prospects" insufficient to plead scienter).

As for Plaintiffs' allegation that Individual Defendants acted with "reckless disregard," as this Court held in *In re Arrowhead Research Corp. Sec. Litig.*, 2016 WL 6562066 (C.D. Cal. Mar. 29, 2016), to "allege scienter under a 'deliberate recklessness' standard and satisfy the heightened pleading requirements of the PSLRA," Plaintiffs are "required to allege 'some degree of intentional or conscious misconduct' with 'particularity.'" *Arrowhead*, at *10. Plaintiffs plead no facts whatsoever that the Individual Defendants acted intentionally or with conscious misconduct.

Plaintiffs rely on Individual Defendants' job titles, but "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068; *see also May v. KushCo Holdings, Inc.*, 2020 WL 6587533 at *7 (C.D. Cal. Sept. 25, 2020). Indeed, "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard. In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008).

Plaintiffs include general allegations regarding NMC's "internal controls," *e.g.*, ¶¶18, 32, 49, 58, 62, but "[m]ere allegations" that NMC "had deficient internal controls are insufficient to give rise to a strong inference of scienter." *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F.Supp.3d 1328, 1364 (C.D. Cal. 2014); *In re Hansen*, 527 F.Supp.2d at 1158 ("allegations that Defendants had deficient internal controls during the class period does not create a strong inference that Defendants knowingly [made] false or misleading statements"). While general allegations of inadequate

internal controls "is perhaps an indication of incompetence, but incompetence, even gross incompetence, [it] is no basis for a securities fraud claim." *McGee v. American Oriental Bioengineering, Inc*., 2014 WL 12586107 *17 (C.D. Cal. 2014).

To state a securities fraud claim against Shetty based on internal control deficiencies, Plaintiffs must include specific allegations identifying the alleged internal control deficiencies, that Shetty had contemporaneous knowledge of the alleged internal control issues, and that Shetty exploited the alleged deficiencies. *Okla. Firefighters,* 50 F.Supp.3d at 1364. While Plaintiffs allege that Shetty signed certain statements in NMC's annual reports (*e.g.* ¶26) and cite to identical provisions in NMC's annual reports stating that Shetty is part of NMC's "immediate and ultimate controlling party" (¶¶35, 44, 52), they plead no facts that Shetty (or any Individual Defendant) was aware of any alleged fraud within NMC.

Undercutting any inference of scienter against Shetty is that after he resigned as a Non-Executive Joint Chairman of the Board in February 2020, Shetty retained a substantial interest in NMC of 9.81%. ¶¶87, 90. Plaintiffs allege that "NMC ADSs during the Class Period were artificially inflated" (¶100), but if Shetty intended to defraud investors, he would have sold his substantial holdings in NMC when it was purportedly artificially inflated. *See May*, 2020 WL 6587533 at *9. To the contrary, Shetty continues to be a significant NMC stockholder and has incurred the same, and much larger losses, as did Plaintiffs themselves who did not acquire a single share in NMC until after the Muddy Waters Report was published. *See In re Worlds of Wonder Sec. Litig*. 35 F.3d 1407, 1424-25 (9th Cir. 1994) (affirming the finding of no scienter where "[e]ach of the Officer Defendants … held onto most of their WOW stock and incurred the same large losses as did the Plaintiffs themselves ….").

Plaintiffs allege that Shetty sold or pledged a portion of his NMC common stock (¶¶88-91), but do not explain the significance of the transactions, or how the transactions lead to any inference of scienter against Shetty. Moreover, Plaintiffs present no allegations regarding Shetty's prior trading history, which is "necessary to

determine whether the sales during the Class Period were 'out of line with' historical practices.'" *Metzler*, 540 F.3d at 1064, 1067.  "Even if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history." *Zucco*, 552 F.3d at 1006.

Reviewed holistically, the Amended Complaint fails to give rise to a strong inference of scienter and the absence of specific allegations that Shetty was aware of any alleged NMC fraud requires that Shetty be dismissed from this action.

### C. <u>Plaintiffs Fail to Plead Reliance</u>

Reliance is an essential element of the Section 10(b) action as it "ensures that, for liability to arise, the 'requisite causal connection between a defendant's misrepresentation and a plaintiff's injury' exists as a predicate for liability." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008).  Plaintiffs "must plead facts that show actual, direct reliance on a particular alleged misstatement or omission … [and] allege the details of their securities transactions." *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F.Supp.2d 1009, 1020 (C.D. Cal. 2011).  Plaintiffs seek to avoid pleading reliance by alleging that they are entitled to a presumption of reliance.  Plaintiffs rely on two theories of presumption —the fraud-on-the-market doctrine or that a presumption of reliance arises because "Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information."  ¶¶103-104.  Neither presumption applies here.

#### 1. <u>Plaintiffs Are Not Entitled to the *Affiliated Ute* Presumption</u>

The presumption of reliance recognized in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), whereby a plaintiff can avoid pleading direct reliance in a case framed as one of material omission, is confined "to cases that primarily allege omissions" and does not apply to securities fraud actions premised on allegations of a defendant's misrepresentation of fact.  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Circ. 1999).  Plaintiffs do not plead an omissions case.  The crux of Plaintiffs' claim is one of misrepresentation – that Defendants "misrepresented material

facts about the financial condition and business of NMC," and that "Defendants caused NMC to issue false and misleading filings during the Class Period." ¶100.

Even if the Complaint could be construed as containing both misrepresentations and omissions, Plaintiffs cannot invoke the *Affiliated Ute* presumption because the presumption "should not be applied to cases that allege both misstatements and omissions," unless the complaint primarily alleges omissions. *Binder*, 184 F.3d at 1064.

## 2. The Fraud-on-the-Market Presumption Does Not Apply

The "fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information, regarding the company and its business; [and] [m]isleading statements will therefore defraud purchasers [even] if purchasers do not directly rely on the misstatements." *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988). Fraud on the market requires allegations that: (i) the misrepresentations were publicly known and material, (ii) the security traded on an efficient market, and (iii) Plaintiffs traded between the time the misrepresentations were made and the truth was revealed. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).

Plaintiffs do not plead an actionable material misrepresentation or omission (*see supra* pp. 7-13) and the OTC market where NMC ADSs traded is not an "efficient market." Moreover, Plaintiffs have not alleged facts that they traded NMC ADSs between the time the alleged misrepresentations were made and the "truth was revealed." *Halliburton*, 573 U.S. at 268. To the contrary, Plaintiffs allege that the "truth" emerged on December 19, 2019, when the Muddy Waters Report was published, and lead Plaintiffs have each certified that their Class Period acquisitions of NMC securities occurred after the Muddy Waters Report was published.[10]

---

[10] Hashem certified that on January 8, 2020, he acquired 11,000 shares of NMC common stock for $17.25/share. *See* ECF 11-2, p. 2. Huang certified that on December 20, 2019, he purchased 7,757 shares of NMC for $16.55/share and 8,088 shares of NMC for $16.50/share. *Id*., p. 5. Ahad certified that on March 5, 2020, he purchased 20,000 shares of NMC for $7/share. *Id*., p. 7.

Plaintiffs' conclusory allegation that the over-the-counter market where NMC ADSs traded is "an efficient market" is insufficient to trigger a fraud-on-the-market presumption. ¶102. In *Binder*, the Ninth Circuit affirmed the district court's class decertification order on the basis that the plaintiff failed to allege that the OTC was an "efficient market" for purposes of invoking the fraud-on-the-market presumption. *Id.*, at 1064-65 (affirming order decertifying class during the period "AVBC's stock traded exclusively on the OTC market"); *see also ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F.Supp.3d 1213, 1252 (C.D. Cal. 2015) ("Scrips cannot invoke the fraud-on-the-market presumption because its shares trade on the OTC market").

In reaching the conclusion that the OTC market was not an "efficient market," the *Binder* court addressed five characteristics of the company and its stock: (1) "whether the stock trades at a high weekly volume;" (2) "whether securities analysts follow and report on the stock;" (3) "whether the stock has market makers and arbitrageurs;" (4) "whether the company is eligible to file SEC registration form S-3, as opposed to form S-1 or S-2;" (5) "whether there are 'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Binder*, 184 F.3d at 1065 (quoting *Cammer v. Bloom*, 711 F.Supp. 1264, 1286-87 (D.N.J. 1989)).

These factors, known as the *Cammer* factors, are "designed to help make the central determination of efficiency in a particular market." *Id*. In *Binder*, the Ninth Circuit concluded that although the plaintiff satisfied one of the *Cammer* factors – the presence of market makers and arbitrageurs – satisfying only one of the five *Cammer* factors alone was insufficient to deem the OTC an "efficient market." *Id.* Also, Rule 9(b) requires that reliance be plead with particularity. Applying Rule 9(b) to the "pleading of reliance under a fraud-on-the-market theory … the complaint must state with particularity" the facts upon which Plaintiffs base their assertion that the OTC— where NMC ADSs traded—is an efficient market.

Plaintiffs plead none of the *Cammer* factors with particularity. Plaintiffs do not allege the weekly trading volume of NMC ADSs, do not identify any market makers for NMC ADSs during the Class Period, identify no securities analysts that follow NMC ADSs, and make no mention if NMC was eligible to file any forms with the SEC.

The dearth of allegations regarding trading volume is indicative of the deficiencies in the Amended Complaint. Plaintiffs' sole allegation regarding trading volume is the conclusory allegation that "NMC ADSs met the requirements for listing and were listed and actively traded on the OTC Pink, an efficient market." ¶102. The reason why courts examine trading volume is because large weekly trading volume indicates market efficiency in that "the existence of an actively traded market, as evidenced by a large weekly volume of stock trades, … implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *ScripsAmerica, Inc.*, 119 F.Supp.3d at 1253.

Without particularized allegations that the OTC market is an efficient market for NMC's ADSs, Plaintiffs cannot establish reliance through the *Basic* presumption. In the absence of a presumption of reliance, Plaintiffs must plead and prove that they "directly relied on the defendant's misrepresentation in buying or selling" NMC ADSs, *e.g.*, that Plaintiffs read and relied upon NMC's annual reports. *Halliburton*, 573 U.S. at 269. No such allegations are made in the Amended Complaint.

**D. Plaintiffs Fail To Plead Loss Causation**

**1. Standard**

Loss causation is the "causal connection between the [defendant's] material misrepresentation and the [plaintiff's] loss." *Dura*, 544 U.S. at 342. A "plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013). A distinct, but related element of causation is transaction causation. "Transaction causation constitutes 'actual' or 'but-for' cause,"

and is akin to reliance in that "it focuses on the time of the transaction and 'refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell the securities." *Id*. at 1118.

### 2. <u>Transaction Causation Is Insufficient To Plead Loss Causation</u>

Plaintiffs allege that the "market price of NMC securities had been artificially and falsely inflated," and that had Plaintiffs been aware of this information they would not have purchased NMC securities. ¶112. Plaintiffs' theory fails for two reasons: (1) Plaintiffs plead transaction causation, not loss causation; and (2) Plaintiffs' alleged losses all stem from purchases made after the Muddy Waters Report was issued.

The Ninth Circuit has "consistently rejected loss causation arguments … that a defendant's fraud caused plaintiffs damages because it 'induced them to buy the shares' – because the argument 'renders the concept of loss causation meaningless by collapsing it into transaction causation.'" *Nuveen*, 730 F.3d at 1121. "Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price." *Metzler*, 540 F.3d at 1064.

The Muddy Waters Report was published on December 17, 2019. *See* RJN, Ex. 1 p. 2. Plaintiffs did not acquire NMC ADSs until January 8, 2020 (Dkt. No. 11-2, p. 2 - Hashem), December 20, 2019 (*id*., p. 5 – Huang), and March 5, 2020 (*id*., p. 7 – Ahad). As Plaintiffs' purchases did not occur until *after* the alleged fraud was revealed, no plausible argument can be made that Plaintiffs' losses stem from any alleged fraud discussed in the Muddy Waters Report.

Loss causation must be plead with particularity and requires more than bare allegations of a drop in price or that the "'market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud." *Id*. Plaintiffs also attempt to establish loss causation via corrective disclosure, but as discussed immediately below, the Muddy Waters Report is not a corrective disclosure and Plaintiffs' futile efforts to establish loss causation via this theory also fail as a matter of law.

### 3.  <u>The Muddy Waters Report Is Not a Corrective Disclosure</u>

"[T]o prove loss causation by relying on one or more corrective disclosures, a plaintiff must show that: (1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendants' misstatements; and (2) disclosure of the truth caused the company's price to decline and the inflation attributable to the misstatements to dissipate."  *In re Bofl Holding, Inc. Sec. Litig*., 977 F.3d 781, 791 (9th Cir. 2020); *Metzler*, 540 F.3d at 1063 (the complaint "must allege that the practices that plaintiff contends are fraudulent were revealed to the market and caused the resulting losses").

At the pleading stage, the plaintiff must "allege with particularity facts 'plausibly suggesting' that both showings can be made."  *In re Bofl*, 977 F.3d at 791.  Plaintiffs do not identify with particularity any alleged fraudulent practices, and do not trace allegations from the Muddy Waters Report to any alleged false or misleading statement.

Further, a plaintiff's pleading burden is enhanced, where, as here, the alleged corrective disclosure is an opinion piece written by a short-seller that is based on already-public information.  RJN, Ex. 1, p. 1 (The Muddy Waters Report disclosed that it "express[es] the opinion" of Muddy Waters and is based on "public sources that [Muddy Waters] believe to be accurate and reliable.").  It is Plaintiffs' burden to "plead with particularity facts plausibly explaining why the information was not yet reflected in the company's stock price."  *In re Bofl*, 977 F.3d at 794.

Plaintiffs must specifically plead that Muddy Waters revealed "previously unavailable information or that the information could not be understood absent expert analysis."  *In re Herbalife, Ltd. Sec. Litig*., 2015 WL 1245191 *5 (C.D. Cal. Mar. 16, 2015). The reason is because "[i]f every analyst or short-seller's opinion based on already-public information could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue under §10(b) using an analyst's negative analysis of public filings as a corrective disclosure."  *Id*., *4.

The Muddy Waters Report does not reveal any new information, it merely revisits previously published information.  Plaintiffs complain that the "build-out costs

of the NMC Royal Women's Hospital" were excessive, but Muddy Waters' sole attributed source is NMC's 2014 annual report. ¶¶70-71; RJN Ex. 1, p. 4 n.1. Plaintiffs cite Muddy Waters' discussion of NMC's 2018 acquisition of 70% of an entity purportedly linked to defendant Khalifa Bin Butti (¶74), but the only source Muddy Waters cites for its analysis is NMC's 2018 annual report. *See* RJN Ex. 1, p. 34 n.65. A short-seller's report that "only collect[s] and opine[s] on already public information … does not constitute a disclosure of 'the truth' as required for a corrective disclosure." *Bonanno v. Cellular Biomedicine Group, Inc*., 2016 WL 4585753 *4 (N.D. Cal. Sep. 2, 2016) ("aggregation" of previously available information "cannot constitute new information because an efficient market 'would easily digest' all public information 'without the need for [the analyst] to regurgitate it first'"). Not only is the Muddy Waters Report deficient as a corrective disclosure, but Plaintiffs do not explain how the report relates to any alleged false or misleading statement from NMC.

Accepting Plaintiffs' allegations as true, a drop in price alone is insufficient to plead loss causation. Allegations that the market "merely react[ed] to reports of the defendant's poor financial health generally" does not plead loss causation. *Metzler*, 540 F.3d at 1063. Plaintiffs must plead with particularity how the Muddy Waters Report "exposed any prior misrepresentations" or revealed that Defendants had previously misrepresented NMC's business operations. *See In re Herbalife*, 2015 WL 1245191 *4-5. Plaintiffs' failure to allege any non-public information in the Muddy Waters Report, or "explain why th[e] public information would not be factored into market price" of NMC ADSs is fatal to any claim that the Muddy Waters Report is a corrective disclosure. *Bonanno*, 2016 WL 4585753 *6.

### IV.   <u>Plaintiffs' Section 20(a) Claim Fails to Plead Control Person Liability</u>

Plaintiffs fail to plead controlling person liability against Shetty. To establish "controlling person" liability under Section 20(a), "a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." *In*

*re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).  "Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the pleading requirements for both violations are the same."  *Shurkin v. Golden State Vintners Inc.*, 471 F.Supp.2d 998, 1027 (N.D. Cal. 2006).

As set forth herein, Plaintiffs fail to plead a primary Exchange Act violation. Since a Section 20(a) claim cannot survive without an underlying violation of the Exchange Act, the Court should dismiss the Section 20(a) claim against Shetty.  *See In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993).

Even if Plaintiffs had adequately pled a primary violation against NMC the Section 20(a) claim against Shetty should be dismissed for failure to allege with particularity that Shetty was active in the day-to-day affairs of NMC.  Plaintiffs' conclusory allegation that "[b]ecause of their positions of control and authority as senior officers, the Individual Defendants … [are] 'controlling persons' of NMC within the meaning of Section 20(a) of the Exchange Act'" is insufficient to plead control person liability against Shetty.  ¶118; *see In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 258 F.Supp.3d 1037, 1048-49 (N.D. Cal. 2017) ("conclusory allegations that [the chairman of the management board] was involved in the day-to-day operations of, and exercised power, and control over, the Corporate Defendants" held insufficient to plead a Section 20(a) claim); *see also Reese v. Malone*, C 08-1008-MJP, 2009 WL 506820 at *9 (W.D. Wash. Feb. 27, 2009) (Section 20(a) claims dismissed against "non-executive member of the BP plc board of directors," because title alone without particularized allegations "do not speak to any degree of control over the operations of the corporation and certainly no involvement in its day-to-day activities")

Plaintiffs define the Class Period as March 13, 2016 – March 10, 2020.  ¶1. Shetty retired as NMC's CEO in March 2017.  ¶16.  Plaintiffs do not allege a single alleged wrongful act between March 13, 2016, and March 2018, and the purpose of defining an artificially long Class Period is a transparent attempt to cover Shetty's last

year as NMC's CEO.  Regardless, since Plaintiffs do not allege any wrongdoing during the time Shetty was NMC's CEO, for control person liability to attach to Shetty Plaintiffs must allege specific facts that during the time Shetty was NMC's Non-Executive Joint Chairman of the Board he was active in the day-to-day affairs of NMC. *See* Short v. Dondanville, ED CV-11-00615-JAK, 2012 WL 12888360 at *15 (C.D. Cal. Oct. 5, 2012) (dismissing claims against president and CEO because "Plaintiffs have not sufficiently pleaded that the Third Quarter 2008 10-Q [issued after the defendant assumed the role of CEO] contained any actionable misrepresentations").

While Shetty remained as NMC's Non-Executive Joint Chairman of the Board from March 2017, until February 2020, and remained a substantial shareholder of NMC, Shetty was not active in NMC's day-to-day affairs, nor, as a non-executive director, did Shetty have power to control corporate actions.  NMC's 2017 annual report states that in March 2017, after 45 years of heading NMC, at the age of 75 years old, Shetty "decided to step down from day-to-day operational activities and relinquished his positions as Executive Vice Chairman and CEO to take on the role of Joint non-executive Chairman of the Group."  *See* RJN Ex. 5 (2017 Annual Report, p. 14).

Plaintiffs allege that as a non-executive board member Shetty "signed" NMC's 2017 and 2018 annual reports (¶¶46, 55), but not only do Plaintiffs fail to plead with particularity a single actionable statement from NMC's annual reports, *see supra* pp. 7-13, but also, in the absence of specific factual allegations supporting Plaintiffs' conclusory allegation that Shetty was actually active in the day-to-day management of NMC (¶118), the Amended Complaint does not support control person liability as to Shetty.  *See In re Volkswagen*, 258 F.Supp.3d at 1048-49.

## CONCLUSION

For the foregoing reasons, the Court should grant Shetty's motion to dismiss in its entirety with prejudice.

Dated: August 4, 2021

By: */Mark B. Chassman/*
Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
CHASSMAN & SEELIG LLP
1250 Sixth Street, Suite 403
Santa Monica, CA 90401
Telephone: (310) 929-7192
Fax: (310) 929-7627

Alexander D. Pencu
(*pro hac vice*)
Email: adp@msf-law.com
Benjamin D. Bianco
(*pro hac vice*)
Email: bdb@msf-law.com
Austin D. Kim
(*pro hac vice*)
Email: adk@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Defendant B.R. Shetty*