1

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>                              Defendants. | Case No.: 2:20-cv-02303-CBM-MAA<br><br>(Consolidated with Case No. 2:20-cv-02895-CBM-MAA)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS**<br><br>Judge: Consuelo B. Marshall<br>Hearing: September 28, 2021<br>Time: 10:00 AM<br>Location: Courtroom 8B |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     STATEMENT OF FACTS ..................................................................... 2

    A.      False and Misleading Statements Throughout the Class Period .............. 3

    B.      The Truth Is Gradually Revealed Through a Series of Partial Corrective Disclosures.............................................................................................. 5

    C.      Judicial Determinations Against Shetty .................................................. 6

III.    CONTROLLING STANDARDS DO NOT SUPPORT DISMISSAL ......... 7

IV.     THE COMPLAINT ADEQUATELY STATES CLAIMS AGAINST SHETTY .......................................................................................... 8

    A.      Plaintiffs Plead Domestic Transactions Under the Exchange Act .......... 8

    B.      Plaintiffs Adequately Allege Shetty Violated Section 10(b)'s Prohibition of Misrepresentations and Omissions................................................. 10

        1.      Plaintiffs Identify Material Misstatements and Omissions .............. 11

            a.      Undisclosed Debt ....................................................... 11

            b.      Undisclosed Material Related Party Transactions ...................... 12

            c.      Undisclosed Infective Internal Controls and Risk Management . 14

            d.      Shetty's Additional Falsity Arguments Fail ............................... 15

        2.      Plaintiffs Allege a Strong Inference of Scienter ............................. 18

            a.      Shetty's Actual Knowledge Supports a Strong Inference of Scienter ...................................................................... 19

            b.      The Nature and Size of the Fraud Support a Strong Inference of Scienter ...................................................................... 19

i

c.     As Alleged, the Fraud Would Be Highly Implausible Without Shetty's Involvement ...................................................... 21

d.     Shetty's Stock Sales Support an Inference of Scienter ............... 21

e.     The Resignation of Defendants Shetty and K. Bin Butti Support a Strong Inference of Scienter .......................................... 21

f.     The Findings of the United Kingdom Court Further Support a Strong Inference of Scienter .......................................... 22

3.     Plaintiffs Adequately Allege Reliance ............................. 22

4.     Plaintiffs Adequately Allege Loss Causation ................... 23

C.     Shetty Does Not Dispute the Sufficiency of Plaintiffs' Scheme Liability Claim ................................................................................... 24

D.     Plaintiffs Adequately Allege a Claim Under §20(a) ............................ 24

V.     CONCLUSION .......................................................................... 25

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

# TABLE OF AUTHORITIES

## Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)................................................................10

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)................................................................22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................18

*Backe v. Novatel Wireless, Inc.*,
  642 F. Supp. 2d 1169 (S.D. Cal. 2009)................................................21

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................22

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ................................................23

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................14

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal 2012) ................................................14

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
  793 F. Supp. 2d 1138 (C.D. Cal. 2011) ................................... 22, 23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................22

*Craig Frazier Design, Inc. v. Zimmerman Agency,
  LLC*, No. C, 10-1094 SBA, 2010 WL 3790656 (N.D. Cal. Sept. 27, 2010) .........7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................23

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................................................25

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...................................................................11

*Estakhrian v. Obenstine*,
    320 F.R.D. 63 (C.D. Cal. 2017) .................................................................24

*Flynn v. Sientra, Inc.*,
    No CV 15 07548 SJO, 2016 WL 3360676 (C.D. Cal. June 9, 2016).................17

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ....................................................................19

*Henning v. Orient Paper, Inc.*,
    No. CV 10-5887-VBF, 2011 WL 2909322
    (C.D. Cal. July 20, 2011) ..................................................... 17, 21, 24

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) .................................................... 16, 25

*In re Amgen Inc. Sec. Litig.*,
    No. CV 07–2536 PSG, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)..............18

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010)...............................24

*In re Atossa Genetics Inc Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) ......................................................................7

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...............................................12

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) .................................................... 13, 20

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...............................................................7, 23

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

*In re Lehman Bros. Sec. & ERISA Litig.*,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011) ....................................................15

*In re Medicis Pharm. Corp. Sec. Litig.*,
  No. CV-08-1821-PHX, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010)................21

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013) ....................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) .....................................................20

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015)................................................ 20, 21

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015) ....................................................16

*In re PMI Grp., Inc. Sec. Litig.*,
  No. C08-1405 SI, 2009 WL 1916934 (N.D. Cal. July 1, 2009).........................15

*In re Questcor Sec. Litig.*,
  No. SA CV 12-01623 DMG, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)........24

*In re USA Talks.com Sec. Litig.*,
  No. 99-CV-0162-L(JA), 2000 WL 1887516 (S.D. Cal. Sept. 14, 2000) ...........22

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ..............................................................11

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017)..................................................15

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
  No. 3:19-cv-00407, 2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021)..................24

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................... 1, 7, 11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)........................................................................................7

*May v. Borick*,
    No. CV 95-8407 LGB, 1997 WL 314166 (C.D. Cal. Mar. 3, 1997)..................11

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    No. CV 06-6863 DOC, 2008 WL 7084629
    (C.D. Cal. July 10, 2008) ...................................................................... 20, 22

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)......................................................................................8

*N.M. State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir.2011) ....................................................................18

*N.Y. City Emps. Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009)........................................................20

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ..................................................................8, 24

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ....................................................................25

*Rihn v. Acadia Pharms. Inc.*,
    No. 15CV00575 BTM, 2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) ..............17

*Rudolph v. UTStarcom*,
    No. C 07-04578 SI, 2008 WL 4002855 (N.D. Cal. Aug. 21, 2008)..................24

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ................................................................. 18, 20

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ....................................................................18

*Sec. & Exch. Comm'n v. Yin Nan Michael Wang*,
    No. LA CV 13-07553 JAK, 2015 WL 12656906
    (C.D. Cal. Aug. 18, 2015)..........................................................................10

*Snellink v. Gulf Resources, Inc., et al.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2015) ........................................................ 14, 17

*Stoyas v. Toshiba Corp.*,
   424 F. Supp. 3d 821 (C.D. Cal. 2020) ............................................................9, 10

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ..................................................................... 8, 9, 10

*Tellabs, Inc. v. Makor Issues & Rts, Ltd.*,
   551 U.S. 308 (2007)....................................................................................7, 18

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
   No. CV 16-02942 SJO, 2017 WL 2378369 (C.D. Cal. May 31, 2017) ..............24

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   No. CV-09-CV-02487-DMG, 2013 WL 12203024
   (C.D. Cal. Apr. 4, 2013)....................................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...........................................................................20

**<u>Statutes</u>**

15 U.S.C. § 78u-4(b)(1) ......................................................................................8, 11

15 U.S.C. § 78u-4(b)(2)(A)......................................................................................17

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ...........................................................................................8, 11

FINRA, Rule 5220 (2012) .......................................................................................10

**<u>Regulations</u>**

17 C.F.R. §240.12g3-2(b)..........................................................................................3

17 C.F.R. § 210.4-01(a)(1).......................................................................................13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

1

2   17 C.F.R. § 229.404(a)................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

Lead Plaintiffs Shengming Huang, Chris Hashem, and Abdul Raziq Abdul (collectively, "Plaintiffs") submit this memorandum of law in support of their opposition to Defendant B.R. Shetty's ("Shetty") Motion to Dismiss the Amended Class Action Complaint.[1, 2]

## I.   PRELIMINARY STATEMENT

Shetty's Motion does not squarely address the Complaint allegations against him. As the Complaint alleges, Shetty has already admitted that "serious fraud and wrongdoing" occurred at NMC Health, Inc. ("NMC" or the "Company") between March 13, 2016 and March 10, 2020 (the "Class Period"). ¶ 25. Shetty has also admitted that the fraudulent scheme centered around "bank accounts … **operated in his name**." *Id.* Shetty was not only identified by himself, the Board of Directors, and the Company as a controlling person of NMC throughout the fraudulent scheme, but also was a signatory to or extensively referenced in the very documents used to disseminate the misrepresentations to investors. ¶¶ 16, 25, 35-37, 43-44, 46, 52, 55. Shetty himself also personally represented to investors that "exposure . . . to financial instruments" was fully disclosed in Annual Reports. *See, e.g.,* ¶ 36. And, a United Kingdom court has deemed the evidence against Shetty to be so convincing that it froze his assets worldwide. ¶ 24 and n.1. Likewise, a review by the Company found Shetty to be complicit in the fraud. *Id.*

Although all of these allegations are clearly set forth in the succinct 34-page Complaint, Shetty pretends in his Motion that they do not exist. He claims to be

---

[1] Shetty's Motion to Dismiss is cited as "MTD" or the "Motion." *See* Dkt. No. 70. Unless otherwise stated, all paragraph ("¶" or "¶¶") references are to Plaintiff's Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"). Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

[2] Plaintiffs do not contest Shetty's Request for Judicial Notice and Incorporation by Reference. *See* Dkt. No. 70-6. The Court may not, however, consider these documents for the truth of the matters asserted therein. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004 (9th Cir. 2018).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

unable to find any misrepresentation even though the Complaint alleges in detail exactly how Shetty and his co-conspirators concealed from investors **over $3 billion** in debt and hid repeated related-party transactions. Shetty likewise claims to be unable to find any allegations about himself personally, even though he is expressly identified—and his role in the fraud particularized—throughout the Complaint. Similarly, Shetty claims to be unable to find allegations that Plaintiffs purchased NMC's American Depositary Shares ("ADSs") in the United States even though the Complaint extensively details facts demonstrating that the transactions occurred domestically.

While Shetty may prefer that such allegations do not exist (and may prefer that he was not caught red-handed perpetrating a multi-billion-dollar fraudulent scheme), his refusal to squarely address Complaint allegations cannot provide a basis for dismissal. Therefore, and as explained more fully below, Shetty's motion to dismiss should be denied in its entirety.

## II. STATEMENT OF FACTS

NMC was a healthcare services company doing business in the United Arab Emirates and other regions, including the United States. ¶ 10. It claimed to own and manage approximately 200 healthcare facilities. *Id.* Defendant Shetty was NMC's founder and an "immediate and controlling party." ¶ 16. Before opportunistically dumping shares, Shetty owned at least 19.2% of the Company. *Id.* He served as CEO and Executive Vice Chairman until March 2017, then remained as Non-Executive Vice Chairman until February 2020, when he abruptly resigned amid the fraud revelations. *Id.*

During the Class Period, NMC's ADRs traded in the United States on the OTC Pink, an American trading venue operated by OTC Markets, Inc., an American company. ¶ 5. NMC's ADSs were registered exclusively in the United States by two American financial institutions, Deutsche Bank Trust Company

Americas and Citibank N.A., both in New York City.  *Id.*  NMC ADSs could be exchanged for ordinary shares at designated U.S. branches of those banks.  *Id.*

Although NMC's ADSs were not officially sponsored, NMC indicated its consent or non-objection to the American registration and trading of it.  ¶ 6. Moreover, for the U.S. banks to register NMC's ADSs, NMC had to meet the requirements of 17 C.F.R. §240.12g3-2(b).  *Id.*

## A.    False and Misleading Statements Throughout the Class Period

Throughout the Class Period, Shetty falsified financial statements by hiding billions of dollars' worth of debt.  In the 2015 Annual Report, Shetty falsely attested that NMC's "financial statements . . . give a true and fair view of the assets, liabilities, financial position, and profit or loss of the Company." ¶ 34.  In the 2016, 2017, and 2018 Annual Reports, Shetty falsely assured investors that the "exposure of the Group to financial instruments" was fully set out in financial statements.  ¶ 43, 46, 55.   All of these representations were lies.

In truth—and as Shetty now admits—the Annual Reports significantly underreported and obfuscated the Company's true debt burden.  ¶¶ 25, 36, 45, 54, 63, 69.   They omitted: (a) the approximately $320 million finance leases the Company inherited in connection with the Aspen Healthcare acquisition, ¶ 77; (b) the $352.3 million of operating leases Defendants concealed in at least the 2018 Annual Report (but later disclosed in June 2019), *id.*; and (c) the $3 billion of debt that NMC admitted shortly after Shetty's departure had not been properly disclosed.  ¶ 92.  Similarly, each of the Annual Reports overstated NMC's cash-on-hand.  ¶¶ 76, 92.

That NMC's debt disclosures, certified by Shetty, were manifestly false is beyond dispute.  In June 2019, NMC admitted to concealed debt in connection with hidden operating leases, ¶77, and in March 2020, NMC admitted that its debt was underreported by a staggering $3 billion.  ¶ 92.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

Shetty also concealed material related party transactions.  NMC's 2015, 2016, 2017, and 2018 Annual Reports, which were all signed by Defendant Shetty, each concealed related party transactions, *see* ¶¶ 13, 26, 35, 37, 44, 46, 52-53, 55, 59-60, despite representing that "[e]ach Director discloses to the Board any related party transactions in which they are connected, and such transactions are reported in the Group's financial statements."  ¶¶ 31, 41, 50, 59.  For example, Shetty concealed that in 2018, the Company paid $170 million to KBBO Group—a company controlled by Defendant K. Bin Butti—to acquire its CosmeSurge business at an inflated 12x EBIDA price *without any third-party valuation*.  ¶ 74. As alleged, this inside deal directly contradicted Shetty's lie in Annual Reports that "transactions and relationships with the Controlling Shareholders *are at arm's length* and on a normal commercial basis."  ¶¶ 35, 44, 52-53, 59, 74.

Shetty also concealed insider deals involving the NMC Royal Women's Hospital.[3]  When speaking of this facility to investors, he hid that the primary contractor for the project was Modular Concepts, LLC ("Modular Concept"), a Shetty-controlled company.  ¶¶ 71-73.  Nor did he disclose that NMC significantly overpaid for build-out costs.  ¶ 71.  As Muddy Waters later revealed, NMC paid Shetty's company more than twice the market rate for this project.  ¶ 71.

---

[3] Shetty claims that his concealment of insider transactions associated with the Women's Hospital should be ignored, even at the pleadings stage, because construction occurred mostly in 2014.  However, he does not explain why such information would not be disclosed in the 2015 Annual Report published at the beginning of the Class Period, ¶¶26-35, which discusses the Women's Hospital extensively as a strategic focus of Shetty himself, but conceals that it was used to fraudulently transfer funds to Shetty affiliates by overpaying for construction costs to related parties, compare ¶¶71-74 with ECF No. 70-4 at 2, 7 (discussing 2014 development and opening of Women's Hospital as "a vision of our founder and Executive Chairman B.R. Shetty").

Additionally, the Annual Reports that Shetty signed falsely touted strong internal controls and risk management.  ¶¶ 27-29, 32, 40, 43, 48-49, 56, 58, 62.  For example, the 2015 and 2016 Annual Reports claimed that the Company "has implemented controls and mitigation strategies in order to reduce [] risks."  ¶¶ 30, 40.  The 2015 Annual Report praised the "strengthening" of the Company's "internal controls," and stated that the Company has "incorporate[ed] additional key internal controls into its financial and operation process" and has "implement[ed] new policies and procedures covering all aspects of the Group's accounting policies and procedures."  ¶¶ 30, 32, 40.  The 2017 and 2018 Reports—which Shetty signed as Non-Executive Vice Chairman, *see* ¶¶ 46, 55—also touted the Company's strong internal controls and risk management.  ¶¶ 48-49, 56, 58, 62.  The 2017 Annual Report stated that "[t]he Board and management team have strengthened internal controls" and that the "Board has overall responsibility for the Group's systems of internal control" and "is responsible for monitoring the ongoing effectiveness of these systems."  ¶ 49.

However, during the entire period, the Company lacked effective internal controls and risk management, as evidenced by the significant under reporting of debt and undisclosed material related party transactions.  ¶¶ 70-71, 92.  While Shetty would prefer that these allegations be ignored, he does not contest that they are plausible.  Indeed, it is difficult to conceive how Shetty and his co-conspirators could have pilfered $3 billion via hidden debt arrangements, as the Company now admits occurred, had there been effective internal controls.

**B.    The Truth Is Gradually Revealed Through a Series of Partial Corrective Disclosures**

On December 17, 2019, Muddy Waters Capital LLC ("Muddy Waters") published a report (the "Report") explaining that NMC had misled investors and failed to disclose: (i) its lack of internal controls; (ii) (de facto) related party transactions; (iii) its true debt burden; (iv) its true cash-on-hand and asset values;

5

and (v) its use of reverse factoring.  ¶¶ 70-79.  On this news, NMC ADSs fell over 33.6% on December 17, 2019.  ¶ 80.

On January 8, 2020, NMC issued a press release that disclosed that Defendant K. Bin Butti and his relatives sold 31.2 million shares, or roughly 15% of the Company.  ¶ 81.  On this news, NMC ADSs fell over 28.4%.  Then, on February 14, 2020, NMC admitted it needed greater clarity from controlling shareholders, including Shetty.  ¶ 83.  That same day, NMC announced Bin Butti had resigned as a Director, causing another 5% drop in ADS price.  ¶ 85.  A few days later, on February 17, 2020, NMC announced that Shetty and two other Directors he had appointed resigned from the Board.  ¶ 86-87.  The next day, NMC disclosed that Shetty had abruptly dumped over 10 million shares of the Company.  ¶ 88.  On this news, NMC ADSs fell another 6.5%.  ¶ 89.

Finally, on March 10, 2020, the *Financial Times* published an article revealing the shocking extent of the fraud.  ¶ 92.  The article revealed that NMC had discovered almost ***$3 billion of hidden, undisclosed debt.*** *Id.*  The same day, *Bloomberg* published an article reporting that an Abu Dhabi Insurer was stepping in to help NMC pay overdue bills and employee salaries.  ¶ 93.  On this news, NMC ADSs fell almost **64%** on March 10, 2021, further damaging investors.  ¶ 94.

## C.    Judicial Determinations Against Shetty

On April 15, 2020, the Abu Dhabi Commercial Bank filed a criminal complaint in the United Kingdom against Shetty and others over allegations related to the serious fraud outlined above.  ¶ 25.  As the article incorporated by reference into the Complaint makes clear, the U.K. judge and bank both agreed that Shetty was the "chief protagonist" of the fraud.[4]   Because of Shetty's fraud, the U.K.

---

4 See "Assets of billionare B.R. Shetty frozen worldwide by UK court," available at https://www.thenewsminute.com/article/assets-billionaire-br-shetty-frozen-worldwide-uk-court-143481, cited in ¶ 25 and n.2

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

judge concluded that "Something had gone very wrong with the management and oversight" of NMC and froze Shetty's assets.  ¶ 25.  After being thrown out of NMC in April 2020, Shetty admitted "that serious fraud and wrongdoing appears to have taken place at NMC" and other companies he controlled.  *Id.*  Defendant Shetty also admitted "that bank accounts were operated ***in his name*** to engineer fraudulent money transfers."  *Id.*

## ARGUMENT

## III.   CONTROLLING STANDARDS DO NOT SUPPORT DISMISSAL

As the United States Supreme Court instructs, securities fraud plaintiffs "need only allege enough facts to state a claim for relief that is plausible on its face."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011).  On a Rule 12(b)(6) motion, the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs."  *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017) (citation omitted).  The purpose of such motions "is to test the sufficiency of the complaint, not to decide its merits."  *Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*, No. C 10-1094 SBA, 2010 WL 3790656, at *6 (N.D. Cal. Sept. 27, 2010) (citation omitted).  As with any motion to dismiss, the court "is not sitting as a trier of fact."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  Rather, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of proceedings."  *Id.*

Dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).[5]  Courts accept as true all factual allegations and draw all reasonable inferences in plaintiff's favor.  *Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S.

---

[5] All emphasis is added, and all internal citations and quotations have been omitted.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

308, 322-23 (2007).  While the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure require a plaintiff to specify each misleading statement, the reasons why the statement is misleading, and, if an allegation "is made on information and belief . . . state with particularity all facts on which [the] belief is formed." 15 U.S.C. § 78u-4(b)(1). Courts should not, however, "raise the bar of the PSLRA any higher than that which is required."  *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003).

## IV.    THE COMPLAINT ADEQUATELY STATES CLAIMS AGAINST SHETTY

Shetty argues that the Complaint should be dismissed because: (1) Plaintiffs do not allege a domestic transaction; (2) the Section 10(b) claim does not meet the PSLRA and Rule 9(b) standards; and (3) the Section 20(a) claim fails to plead control person liability.  These arguments all fail.

### A.    Plaintiffs Plead Domestic Transactions Under the Exchange Act

Shetty claims that his fraud is beyond the purview of U.S. securities laws because the Court should presume that Plaintiffs' purchases of NMC ADSs are not "domestic transactions" because they do not trade on an exchange.  MTD at 4-6. Shetty is wrong.  The Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) makes clear that U.S. securities laws and §10(b) apply to both "transactions in securities listed on domestic exchanges, and ***domestic transactions in other securities***[.]"  *Id.*

Plaintiffs have alleged a domestic transaction under *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018) ("*Toshiba I*").  In *Toshiba I*, the Ninth Circuit adopted the same test as the Second and Third Circuits and held that a transaction is "domestic" if the purchaser incurred irrevocable liability within the United States to take and pay for the security ***or*** the seller incurred irrevocable liability within the United States to deliver a security.  *Id.*  While the plaintiff there had not initially

8

alleged facts the Ninth Circuit deemed necessary, Plaintiffs here have alleged the precise facts identified in *Toshiba I* and accepted as satisfactory upon remand in that case.

On remand, the *Toshiba* district court held that the plaintiffs had adequately alleged a domestic transaction in a substantially similar case involving U.S. transactions on the OTC market by U.S. investors in a foreign company. *Stoyas v. Toshiba Corp.*, 424 F. Supp. 3d 821, 825-27 (C.D. Cal. 2020) ("*Toshiba II*"). There, "Plaintiffs allege that a single transaction occurred—[Plaintiffs'] purchase of ADRs on the OTC Market." *Id.* at 826. Plaintiffs alleged, *inter alia*, that they purchased shares on "the OTC Market using the OTC Link trading platform, both of which are based in New York." *Id.* at 826. The Court found that these allegations, taken as whole, were sufficient at the pleading stage to allege that Plaintiffs incurred irrevocable liability to take and pay for the ADRs in the United States. *Id.* at 827. The Court noted the fact "[t]hat discovery [may] ultimately reveal[] that the ADR transaction involved an initial purchase of common stock in a foreign transaction, as Defendant contends," but that is "a matter properly raised at the summary judgment stage." *Id.*

Plaintiffs' similar allegations here are more than sufficient to establish a domestic transaction under *Toshiba I* and *Toshiba II*. Plaintiffs Hashem and Huang are U.S. residents who purchased NMC ADSs in the United States. *See* Dkt. No. 11-4, p. 2. Further, all transactions took place using OTC Pink and OTC Markets, Inc., both of which are in the United States and designed to serve clients in the United States. ¶ 5. NMC ADSs were issued by two U.S. banks, Deutsche Bank Trust Company Americas and Citibank N.A., both of which were and are located in New York, New York. *Id.*

Furthermore, as the Ninth Circuit acknowledged in *Toshiba I*, the OTC Market is regulated by the U.S. Securities and Exchange Commission ("SEC").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

*Toshiba I*, 896 F.3d at 946 ("The OTC Markets Group" is "an SEC regulated and SEC-registered alternative trading system."). The OTC Market rules: (1) bind purchasers and sellers to complete transactions when offers to purchase or sell are posted on the market, and (2) deem sales complete upon delivery of funds by the buyer and delivery of securities by the sellers—events which occurred in the United States. *See* FINRA, Rule 5220 (2012).

Therefore, the Complaint adequately alleges that Plaintiffs incurred irrevocable liability to complete the transaction in the United States. Indeed, many courts have held that the irrevocable liability test is satisfied where, as here, ***either*** the buyer or the seller became bound in the United States. *See Toshiba II*, 424 F. Supp. 3d at 825-28; *Sec. & Exch. Comm'n v. Yin Nan Michael Wang*, No. LA CV 13-07553 JAK, 2015 WL 12656906, at *10 (C.D. Cal. Aug. 18, 2015) (applying the irrevocable liability test to find that the Exchange Act applies to offerings made only to foreign residents because the purchases closed in the U.S.); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, No. CV-09-CV-02487-DMG, 2013 WL 12203024, at *6-7 (C.D. Cal. Apr. 4, 2013) (transaction was domestic when seller became bound in the United States). Because Plaintiffs purchased NMC ADSs on the U.S. OTC Market, through a U.S. bank in New York, and were bound to complete the transaction in the United States, they have adequately alleged a domestic transaction. *Toshiba II*, 424 F. Supp. 3d at 825-28; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) ("it is sufficient for a plaintiff to allege facts lead to the plausible inference that the parties incurred irrevocable liability within the United States").

## B. Plaintiffs Adequately Allege Shetty Violated Section 10(b)'s Prohibition of Misrepresentations and Omissions

To state a claim under Section 10(b) and Rule 10b5(b), a plaintiff must plead: (1) a material misstatement or omission; (2) scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss

causation.  *Khoja*, 899 F.3d at 1008.  A plaintiff "need not prove its case at the outset.  Rather, it must provide a narrative of fraud—facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016).  Shetty challenges falsity, scienter, reliance, and loss causation.  However, as demonstrated below, these arguments fail, and the Motion should be denied.

### 1.    Plaintiffs Identify Material Misstatements and Omissions

To plead falsity under Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)).  Shetty argues that the Complaint does not allege falsity because it "does not inform the court as to 'how or why' each statement was 'fraudulent or misleading at the *at the time it was made*.'"  MTD at 9-10 (citing *May v. Borick*, No. CV 95-8407 LGB, 1997 WL 314166 at *8 (C.D. Cal. Mar. 3, 1997)).  This is wrong.  The Complaint identifies each false statement or omission, ¶¶ 26-68, and specifically explains why the statements are false.  ¶ 69.  That is all that is required to plead falsity.  As outlined below, Plaintiffs have done that for each category of false statements or omissions identified in the Complaint.

### a.    Undisclosed Debt

The Complaint explains how and why NMC's debt disclosures in ¶¶ 36, 45, 54, and 63 were false and misleading.  ¶ 69, 92.  Each year, the Company significantly underreported its debt obligations.[6]  NMC admitted as much when

---

[6] The 2015 Annual Report stated that the Company's "Net Debt" as of December 31, 2015 was $553 million; the 2016 Annual Report stated that the Company's "Net Debt" as of December 31, 2016 $431.3 million; the 2017 Annual Report stated that the Company's "Net Debt and payables" as of December 31, 2017 was $1.3 billion; the 2018 Annual Report stated that the Company's "Net Debt and payables" as of

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

they finally disclosed that they had discovered almost ***$3 billion*** of hidden debt that was previously unreported.   ¶ 92.  Prior to that, Defendants last disclosed approximately $1.9 billion in debt at the end of 2018.  ¶ 63.  Thus, NMC's true debt burden was ***more than twice as much*** as the last time it disclosed its debt.   ¶ 63. Therefore, the portions of the Company's Annual Reports disclosing its "net debt and payables,"  ¶¶  36, 45, 54, 63, were false and misleading because they significantly understated the Company's debt by billions of dollars, which in turn misled investors about the Company's financial health and profitability.   This enough to plead falsity.  *See In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001) ("the mere fact that . . . [financial] statements were restated at all" is sufficient to establish falsity at the pleading stage).  While Shetty seeks to divert attention from these well-pleaded allegations, he raises no case or argument suggesting that falsity is not alleged by the understatement of debt by billions of dollars.

### b.    Undisclosed Material Related Party Transactions

The Complaint also explains how and why NMC's Annual Reports were false and misleading for failing to disclose related party transactions.   Despite claiming in each of the Annual Reports that "[e]ach Director discloses to the Board any related party transactions in which they are connected, and ***such transactions are reported in the Group's financial statements*,"  ¶¶ 31, 41, 50, 59, Defendants failed to disclose material related party transactions with two Directors.  The 2015, 2016, 2017, and 2018 Annual Reports—which Shetty signed, *see, e.g.,*  ¶¶ 26, 37, 46, 55—did not disclose that the Company paid $170 million to a Defendant K.

---

December 31, 2018 was $1.9 billion.   ¶¶ 36, 45, 54, 63.  In August 2019, NMC released its Financial Report for the Six Months Ended 30 June 2019 ("H1 2019"), which updated the Company's lease liabilities by adding upwards of $353 million, noting that "additional lease payments were identified which were previously not part of operating lease commitments."  ¶¶ 65-66.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

Bin Butti company. *See, e.g.,* ¶ 74. Moreover, this related party transaction was done without any third-party valuation, rendering false and misleading Shetty's assurances that related party transactions "with the Controlling Shareholders [like K. Bin Butti] are at arm's length." ¶¶ 35, 44, 52-53, 57. Shetty also never disclosed the related party transaction by which the Company paid more than twice as much as they should have to Shetty-controlled Modular Concepts for the NMC Royal Women's Hospital construction project.[7] ¶¶ 71-73.

Moreover, the Company's Annual Reports are materially misleading because they concealed large, related party transactions in violation of not only Shetty's express claim to have disclosed such transactions, but also because the concealment violated GAAP. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (financial statements that do not comply with GAAP are presumptively misleading); 17 C.F.R. § 210.4-01(a)(1). Statement of Financial Accounting Standards ("SFAS") No. 57 and Accounting Standards Codification ("ASC") 850 Related Party Transactions provide that a public company's "[f]inancial statements shall include disclosures of material related party transactions." SFAS No. 57 ¶ 2; ASC 850-10-50-1. "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families." SFAS No. 57 ¶ 1; ASC 850-10-05-3. Disclosures of related party transactions shall include, among other things, the nature of the relationship involved and the dollar amount of each transaction. SFAS No. 57 ¶ 2; ASC 850-10-50-1. Related party transactions are "material" if they are for more than $120,000. *See* Item 404 of Regulation S-K, 17 C.F.R. § 229.404(a). The related

---

7 Shetty does not dispute that this was a material related party transaction. Instead, he claims that it should be ignored because the construction project occurred mostly in 2014. But Shetty does not explain why such information should not have been disclosed in the 2015 Annual Report. The Court should reject this factual argument.

party transaction with K. Bin Butti was for $170 million, well over the materiality threshold.

Shetty's failure to disclose this material related party transaction in violation of GAAP renders the 2018 Annual Report false and misleading.   Other courts in this Circuit have repeatedly "held that similar allegations concerning a failure to disclose related-party transactions are adequate to plead falsity." *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1118-19 (C.D. Cal 2012) (collecting cases); *Snellink v. Gulf Resources, Inc., et al.*, 870 F. Supp. 2d 930, 939-40 (C.D. Cal. 2015) (finding plaintiffs adequately pled falsity based on related party transaction allegations).   Thus, while Shetty would prefer to ignore the well-pleaded allegations, it is beyond dispute that Plaintiffs have adequately pled that Shetty's concealment of related-party transactions was materially false and misleading.  To the extent that Shetty has any defense to the damning facts alleged, he can raise it at trial.

### c.   Undisclosed Infective Internal Controls and Risk Management

The Company's statements touting their strong internal controls and risk management are also materially false and misleading. ¶¶ 29, 32, 40, 42, 48-49, 51, 56, 58, 61-62.  A statement is misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Here, statements such as "NMC . . . has implemented controls and mitigation strategies in order to reduce [] risks," ¶¶ 40, 48, and "the Board has taken a proactive stance in considering risk," ¶¶ 29, created a false impression that the Company had, at a minimum, enacted controls sufficient to prevent its controlling shareholders, including "chief protagonist" of the fraud Shetty, from looting the Company's treasury.  That was not the case.  The Company lacked any internal

controls over financial reporting, as they underreported the Company's debt burden by a staggering $3 billion, and had no internal controls in place to prevent the Controlling Shareholders—Shetty and Defendant K. Bin Butti—from exploiting NMC to their personal benefit.  ¶¶ 69-79, 92.

Courts have consistently found similar statements regarding a Company's risk management controls actionable.  *See In re PMI Grp., Inc. Sec. Litig.*, No. C 08-1405 SI, 2009 WL 1916934, at *7 (N.D. Cal. July 1, 2009) (statements "assur[ing] investors that [the Company's] core strength was credit risk management, despite the fact that [the Company's] proprietary system could no longer adequately evaluate [such] risk" were actionable); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (statements regarding risk management controls actionable); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 317 (S.D.N.Y. 2013) (misstatements about risk controls, including that they were "robust," actionable); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 284-85 (S.D.N.Y. 2011) (statements of company's confidence in risk controls actionable given the allegations of frequent, significant departures the Company's stated policies).  This Court should do the same.

### d.    Shetty's Additional Falsity Arguments Fail

In a desperate attempt to avoid answering to the fraud he perpetrated, Shetty throws a kitchen sink of falsity arguments at the Court, erroneously asserting that: (1) his blatantly false statements constitute inactionable puffery, MTD at 7-9; (2) the Complaint relies on "group pleading" even though it expressly and extensively alleges his personal role in the fraud, MTD at 10-11; (3) the Muddy Waters report does not support the claims, MTD at 11-12; and (4) the succinct 34-page Complaint should be presumed an inscrutable "puzzle pleading." MTD at 12-13.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

*Puffery*: Shetty's puffery argument fails for several reasons.  First, the Complaint identifies concrete, "objectively false" misrepresentations that were intended to be, and were, significant to investors.  Defendants failed to disclose significant related party transactions in their Annual Reports and underreported the Company's debt by billions of dollars.  These statements are hardly the sort of vague statements of corporate optimism in the cases Shetty cites.  MTD at 8-9.  Second, even if statements regarding internal controls and risk management could, when "viewed in isolation," constitute puffery, where (as here) they "were made repeatedly in an effort to reassure the investing public about the Company's integrity," a reasonable investor "could rely on them as reflective of the true state of affairs at the Company."  *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015).  NMC statements attempted to reassure investors that the Company had effective internal controls and risk management even though these systems did nothing to detect serious fraud that has destroyed the Company.

*Group pleading*: Shetty's group pleading argument fails because the Complaint alleges that Shetty signed the 2015 and 2016 Annual Reports as the Company's CEO and Executive Vice Chairman and attested that, to the "best of [his] knowledge," "[t]he financial statements give a true and fair view of the assets, liabilities, financial position and profit or loss of the Company."  ¶¶ 26, 34, 37.  Shetty also signed the 2017 and 2018 Annual Reports as Non-Executive Vice Chairman.  ¶¶ 46, 55.  The 2015, 2016, 2017, and 2018 Annual Reports also stated that Shetty ensured that the "exposure of the Group to financial instruments" was fully set out in the Annual Report's financial statements.  ¶¶ 36, 42, 46, 55.  Therefore, Shetty can be held liable for the false and misleading statements in the Annual Reports.  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) (finding that in order for certifications made by a corporate officer to have

any substance, signatories to the certifications must be held accountable for the statements).

*Muddy Waters*:  Shetty's argument that the Muddy Waters Report does not support Plaintiffs' claims is a red herring.  The Muddy Waters Report revealed multiple frauds, including the NMC Women's Hospital related party transaction, and was just the tip of the iceberg.  Plaintiffs believe that a jury will find it to be wholly supportive of Plaintiffs' claims, especially because later disclosures revealed the full extent of the fraud that occurred on Shetty's watch and because other courts have credited allegations in a Muddy Waters reports to prove falsity. *See Henning v. Orient Paper, Inc.*, No. CV 10-5887-VBF, 2011 WL 2909322, at *4, 8 (C.D. Cal. July 20, 2011) (crediting factual allegations in a Muddy Waters report); *Snellink*, 870 F. Supp. 2d at 939 ("It is permissible for Plaintiffs to rely on a short seller report . . . to allege falsity at the pleading stage").  Regardless, the credibility of the Muddy Waters report and Shetty himself are both issues for the jury.

*Puzzle pleading*:  Finally, Shetty's puzzle pleading argument fails because, unlike the cases he cites, here "it is clear from the italicized portions of the quotes and the other allegations of the complaint what statements Plaintiff alleges are misleading and why Plaintiff believes they are misleading."  *Rihn v. Acadia Pharms. Inc.*, No. 15CV00575 BTM, 2016 WL 5076147, at *5 n. 1 (S.D. Cal. Sept. 19, 2016); *Flynn v. Sientra, Inc.*, No CV 15 07548 SJO, 2016 WL 3360676, at *9-10 (C.D. Cal. June 9, 2016).  This is neither a lengthy complaint nor an intricate fact pattern.  Shetty's response makes clear that he understands the Complaint and its charges against him, but simply prefers not to answer to it.  That is not a "puzzle pleading."

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

## 2. Plaintiffs Allege a Strong Inference of Scienter

The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In the Ninth Circuit, the "required state of mind" is satisfied by allegations of "deliberate recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). When analyzing scienter, the Court must determine whether the allegations collectively give rise to a strong inference of scienter, "not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310. The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 309-10, 324. Rather, "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* In sum, a "tie goes to the plaintiff." *In re Amgen Inc. Sec. Litig.*, No. CV 07–2536 PSG, 2014 WL 12585809, at *8 (C.D. Cal. Aug. 4, 2014).

Shetty himself concedes that a "serious fraud" occurred at NMC "in his name." ¶ 25. He provides no reason, given that the "serious fraud" was perpetrated in his name, why a reasonable jury would not find his involvement to be the most plausible and compelling explanation. That is all the law requires for pleading purposes. *Tellabs*, 551 U.S. at 309-10, 324. Moreover, while Shetty attempts to invent an alibi claiming he was unaware of any fraud, he provides no reason why that competing inference would be plausible or compelling. Regardless, his alternative explanation hinges on credibility, quintessentially a jury question. *See, e.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"*).

Moreover, Shetty's argument impermissibly cherry picks and isolates certain allegations while ignoring others. This approach violates controlling Ninth Circuit

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

authority, which requires a holistic review of the allegations.  *See, e.g., N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir.2011); *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).   Considered holistically, the Complaint alleges facts supporting a strong inference of scienter by alleging that: (a) the nature and size of the fraud was of such prominence that it would be absurd to suggest that Shetty, as the CEO and Vice Chairman of the Company, was without knowledge of the significant GAAP violations; (b) Shetty sold approximately half of his ownership of NMC before the full extent of the fraud was revealed; and (c) Shetty and other high-ranking officials resigned under highly suspicious circumstances.

### a.    Shetty's Actual Knowledge Supports a Strong Inference of Scienter

Plaintiffs allege facts supporting a strong inference that he had actual knowledge of the fraudulent scheme at the same time he made misrepresentations to public investors.  Specifically, Shetty admitted that the Company engaged in "serious fraud" under "his name."  *See, e.g.,* ¶ 25.  While he may for strategic, lawyer-driven purposes now disclaim that he was responsible for such fraud, Shetty fails to cite a single case or even a plausible explanation to rebut that the most compelling inference is that he was involved in, and had knowledge of, such fraud. The strength of this inference is compounded by the fact that fraud purportedly occurred at **both** of Shetty's controlled companies, NMC and Finablr.  *Id.*

### b.    The Nature and Size of the Fraud Support a Strong Inference of Scienter

Given Shetty's admission that "serious fraud" occurred, ¶ 25, he cannot dispute that his statements to investors in Annual Reports "were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication."  *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).  Here, "the nature of the relevant

fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *South Ferry LP, No. 2*, 542 F.3d at 786; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009).[8]

Given the colossal size of the fraud, totaling billions of dollars, it would be absurd to suggest that Shetty—who during the Class Period was the CEO, Executive (and later Non-Executive) Vice Chairman, and controlling shareholder—was unaware that NMC was under reporting its debt by billions of dollars or that the Company was engaging in massive, related party transactions worth hundreds of millions of dollars.

Scienter can also be inferred because the Company's failure to accurately report its debt or disclose related party transactions resulted in enormous GAAP violations. *In re Daou Sys.*, 411 F.3d at 1016 ("[v]iolations of GAAP standards can . . . provide evidence of scienter."). Moreover, "[t]he greater the magnitude of . . . the violation of GAAP, the more likely it is that such . . . violation was made consciously or recklessly." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000); *see also N.Y. City Emps. Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 1000 (N.D. Cal. 2009) (where "revenues were overstated by a considerable amount, . . . it is possible to infer that those revenues were overstated intentionally"); *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 DOC, 2008 WL 7084629, at *6 (C.D. Cal. July 10, 2008) ("Significant GAAP violations, when described with particularity, may provide powerful indirect evidence of

---

[8] Contrary to Shetty's argument, *see* MTD at 14-15, the Complaint does more than rely on Shetty's job title to establish scienter. In the Ninth Circuit, "allegations based on management's role may be relevant and help to satisfy the PSLRA scienter requirement . . . where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226 (N.D. Cal. 2015). Regardless, the Complaint here alleges actual statements by Shetty as well as judicial determinations of his complicity. *See, e.g.,* ¶25.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

scienter.").  Here, the GAAP violations ranged between several hundred million dollars to as much as $3 billion.  ¶¶ 66, 77, 92. Thus, the most plausible inference is that the deception was known to key executives, and in particular to Shetty, who was both a "controlling shareholder" and the person who is alleged to have personally effectuated the fraud.

### c.    As Alleged, the Fraud Would Be Highly Implausible Without Shetty's Involvement

Further bolstering the strong inference of scienter is the simplicity and obviousness of the disclosure obligations.  *Henning*, 2011 WL 2909322, at *6; *see also In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) (simplicity, obviousness, and magnitude of accounting error all contribute to scienter inference).   This is especially true because Shetty "flagged related party transactions in its financial statements, which shows that [he] was well aware of [his] duty to comply with this disclosure requirement." *In re Montage Tech.*, 78 F. Supp. 3d at 1226.

### d.    Shetty's Stock Sales Support an Inference of Scienter

Shetty's highly unusual and massive stock sales also support a strong inference of scienter.  *See, e.g., Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1185 (S.D. Cal. 2009).  Shetty sold 10 million shares of NMC stock between February 3 and 6, 2020, only one month **before** it was revealed that NMC had failed to disclose $3 billion of debt.  ¶¶ 88, 92.   That same month, he also pledged approximately 7 million more shares to creditors.  ¶90.  Thus, Shetty sold or pledged the overwhelming majority of his holdings during the Class Period, ¶ 94, further demonstrating his scienter.

### e.    The Resignation of Defendants Shetty and K. Bin Butti Support a Strong Inference of Scienter

The resignations of numerous high-ranking executives and directors (including Shetty) just as the public was learning about the depths of their fraud,

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

*see* ¶¶ 83-84, 86-87, further support an inference of scienter.  *See Middlesex*, 2008 WL 7084629, at *9 (suspicious departures are "highly probative of scienter" and add to the overall pleading of circumstantial evidence of fraud); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017).

### f.   The Findings of the United Kingdom Court Further Support a Strong Inference of Scienter

Incredibly, Shetty ignores entirely that another court has ***already*** adjudicated the fraud allegations against him to be strong and compelling.  The U.K. decision, as cited by the article incorporated by reference in the Complaint, determined that the most plausible inference was that Shetty was the "chief protagonist" of the fraudulent scheme, and as a result froze his accounts worldwide.  ¶ 25 and n.2. Shetty offers no reason why this Court should not find the facts equally plausible to establish his state of mind here.

### 3.   Plaintiffs Adequately Allege Reliance

Plaintiffs' allegations regarding "fraud-on-the-market" and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), *see* ¶¶ 102-04, are sufficient to establish reliance at the pleading stage.  *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1145 (C.D. Cal. 2011). "Whether Plaintiffs did or did not rely on [the Company's] misstatements . . . are all questions of fact" inappropriate at this juncture.  *Id.*

As courts in this Circuit have found, "[a] showing of whether the *Cammer* elements are met requires a factual exploration which is ***premature at the motion to dismiss stage***."  *In re USA Talks.com Sec. Litig.*, No. 99-CV-0162-L(JA), 2000 WL 1887516, at *6 (S.D. Cal. Sept. 14, 2000) (emphasis added). Indeed, the Supreme Court recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) that proof of market efficiency "is a matter for trial."  *Id.* at 249 n.29. Moreover, contrary to Shetty's argument, "the applicable pleading standards for a

22

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

fraud-on-the-market theory have not been heightened by the PSLRA." *In re USA Talks.com Sec. Litig.*, 2000 WL 1887516, at *6. In addition, Shetty's argument is factually wrong as will be proved at the evidentiary phase. Most importantly, Plaintiffs have alleged a "cause and effect relationship" between disclosures "and an immediate response in stock price." *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999).[9]

In addition to fraud-on-the-market, Plaintiffs have sufficiently alleged reliance based on the *Affiliated Ute* presumption because the Complaint "primarily alleges omissions." *Binder*, 184 F.3d at 1064. All the misrepresentations identified in ¶¶ 26-68 relate back to key omissions, concealed related party transactions, and hidden debt. Thus, Plaintiffs are entitled to rely on the *Affiliate Ute* presumption of reliance. *Binder*, 184 F.3d at 1064.

### 4.    Plaintiffs Adequately Allege Loss Causation

Shetty's loss causation arguments ignore well-pleaded facts and controlling law. For loss causation, a plaintiff need only show "some indication of the loss and the causal connection that he has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). A plaintiff must allege only "facts that, if taken as true, plausibly establish loss causation, . . . suggesting that loss causation is a fact-

---

[9] Shetty's argument that Plaintiffs cannot demonstrate reliance because they purchased NMC securities after the Muddy Waters report misstates the law. *See* MTD at 18. As the Complaint alleges, the truth was gradually revealed through multiple partial disclosures over a period of several months. ¶¶ 70-94. Indeed, the disclosure revealing the $3 billion in hidden debt was not disclosed until March 10, 2020, which caused the most significant percentage drop in the price of NMC ADSs. ¶¶ 92-94. Where, as here Plaintiffs "allege[d] that the corrective disclosures occurred gradually . . . over the course of several months," claims are not properly dismissed because the Plaintiffs purchased after an initial disclosure. *Countrywide Fin. Corp.*, 793 F. Supp. 2d at 1145. Regardless, "[w]hether Plaintiffs did or did not actually rely on [Shetty's] misstatements. . . are all questions of fact that cannot be determined at this motion stage." *Id.*

23

intensive inquiry better suited for determination at trial than at the pleading stage." *Rudolph v. UTStarcom*, No. C 07-04578 SI, 2008 WL 4002855, at *4 (N.D. Cal. Aug. 21, 2008) (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1057).  Here, Plaintiffs allege each of the partial disclosures resulted in stock price declines.  ¶¶ 80, 82, 85, 89, 91, 94.  That is all the law requires.  *See Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. CV 16-02942 SJO, 2017 WL 2378369, at *3 (C.D. Cal. May 31, 2017); *In re Apollo Grp., Inc. Sec. Litig.*, No. 08-16971, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010).[10]

### C.   Shetty Does Not Dispute the Sufficiency of Plaintiffs' Scheme Liability Claim

Shetty's Motion neither mentions nor establishes any defect in Plaintiffs' allegation of scheme liability in violation of Rule 10b-5(a) and (c).  Such arguments cannot be raised for the first time in reply and thus are deemed waived for purposes of the Motion.  *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, No. 3:19-cv-00407, 2021 WL 1316705, at *4 (M.D. Tenn. Apr. 8, 2021) (citing *Estakhrian v. Obenstine*, 320 F.R.D. 63, 91 (C.D. Cal. 2017)).

### D.   Plaintiffs Adequately Allege a Claim Under §20(a)

To state a §20(a) claim a plaintiff must allege, consistent with Rule 8: (i) a primary violation of the Exchange Act; and (ii) that defendants had direct or indirect power or control over the primary violator.  *Am. W. Holding Corp.*, 320 F.3d at 945. "[I]t is not necessary to show actual participation or the exercise of actual power," rather, a plaintiff need only show that defendants were in a position of control.

---

[10] Shetty's "truth-on-the-market" arguments regarding the Muddy Waters Report are inherently factual and simply wrong. MTD at 22. Numerous courts have ruled that a short seller report may be a corrective disclosure.  *See In re Questcor Sec. Litig.*, No. SA CV 12-01623 DMG, 2013 WL 5486762, at *21 (C.D. Cal. Oct. 1, 2013) (holding that the plaintiffs adequately pled loss causation where the corrective disclosure is a short seller report); *Henning*, 2011 WL 2909322, at *7-8 (same). And, contrary to Shetty's mischaracterization, the Muddy Waters Report revealed both concealed related party transactions, ¶¶ 71-75, and hidden lease debt,  ¶ 77.

*Howard*, 228 F.3d at 1065.   This is typically "an intensely factual question." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

As explained above, Plaintiffs have sufficiently alleged a primary violation. Moreover, contrary to Shetty's arguments, Plaintiffs have identified several false and misleading statements that occurred while Shetty was CEO.   ¶¶ 27-46.  Even after he resigned as CEO, Shetty had direct or indirect control over the primary violator because he was one of "the Company's immediate and controlling part[ies]."  ¶ 16.

## V.    CONCLUSION

For the reasons set forth herein, Shetty's Motion should be denied.  If the Court grants any part of Shetty's Motion, Plaintiffs request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).


Dated:  September 8, 2021                    Respectfully Submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            /s/ Laurence M. Rosen
                                            Laurence M. Rosen, Esq. (SBN 219683)
                                            355 South Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-4684
                                            Email: lrosen@rosenlegal.com

                                            **POMERANTZ LLP**
                                            Joshua B. Silverman (*pro hac vice*)
                                            Patrick Dahlstrom (*pro hac vice*)
                                            Jared M. Schneider (*pro hac vice*)
                                            10 South La Salle Street, Suite 3505
                                            Chicago, Illinois 60603
                                            Telephone: (312) 377-1181
                                            Facsimile: (312) 377-1184

25

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA

jsilverman@pomlaw.com
pdahlstrom@pomlaw.com
jschneider@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com

*Attorneys for Lead Plaintiffs*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT B.R. SHETTY'S MOTION TO DISMISS; Case No. 2:20-cv-02303-CBM-MAA