Mark B. Chassman, SBN 119619
Email: mchassman@chassmanseelig.com
Ana Vasquez, SBN 231903
Email: avasquez@chassmanseelig.com
CHASSMAN & SEELIG, LLP
1250 Sixth Street, Suite 403
Santa Monica, CA 90401
Telephone: (310) 929-7192
Fax: (310) 929-7627

Alexander D. Pencu (*pro hac vice*)
Email: adp@msf-law.com
Benjamin D. Bianco (*pro hac vice*)
Email: bdb@msf-law.com
Austin D. Kim (*pro hac vice*)
Email: adk@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Defendant B.R. Shetty*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY, | ) Case No.: 2:20-cv-02303-CBM-MAA <br> ) <br> ) (Consolidated with Case No. 2:20-cv-02895-CBM-MAA) <br> ) <br> ) <br> ) **DEFENDANT B.R. SHETTY'S** <br> ) **REPLY BRIEF IN SUPPORT OF** <br> ) **MOTION TO DISMISS** <br> ) <br> ) Date: September 28, 2021 <br> ) Time: 10:00AM <br> ) Place: Courtroom |

1

**Table of Contents**

2

TABLE OF AUTHORITIES ...................................................................................... iii

3

INTRODUCTION ..................................................................................................... 1

4

ARGUMENT ............................................................................................................. 2

5

6

    I.    Plaintiffs Do Not Allege A Domestic Transaction ....................................... 2

7

    II.   Plaintiffs Do Not Plead Falsity With Particularity ...................................... 3

8

    III.  Plaintiffs Plead No Actionable Omissions ................................................... 4

9

          A. CosmeSurge Acquisition ...................................................................... 4

10

          B. NMC Royal Women's Hospital ............................................................ 5

11

12

    IV.  Plaintiffs Do Not Plead Actionable Misrepresentations .............................. 5

13

          A. No Particularized Facts About NMC's Financial Statements ................. 5

14

          B. No Actionable Facts Regarding NMC's Internal Controls...................... 6

15

    V.    Plaintiffs Fail To Plead Scienter .................................................................. 6

16

    VI.  Plaintiffs Do Not Plead Reliance ................................................................ 9

17

    VII. Plaintiffs Do Not Plead Loss Causation ...................................................... 9

18

    VIII. Plaintiffs Do Not Allege A Scheme .......................................................... 10

19

20

    IX.  Plaintiffs Do Not Allege §20(a) Liability Against Shetty .......................... 10

21

CONCLUSION......................................................................................................... 10

22

23

24

25

26

27

28

**Table of Authorities**

1

2

3

Page(s)

Cases

*Caldera v. J.M. Smucker Co.*,
2013 WL 6987893 (C.D. Cal. Oct. 4, 2013)................................................................. 1

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009) ................................................................... 10

*Fabbrini v. City of Dunsmuir*,
544 F.Supp.2d 1044 (E.D. Cal. 2008) ....................................................... 3

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014) .................................................................. 4

*Howard v. Everex Systems, Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................. 4

*In re Northpoint Communications Group, Inc. Sec. Litig.*,
184 F.Supp.2d 991 (N.D. Cal. 2001)......................................................... 6

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .................................................................... 6

*In re Turbodyne Tech., Inc. Sec. Litig.*,
2000 WL 33961193 (C.D. Cal. Mar. 15, 2000)......................................... 3

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
382 F.Supp.2d 1173 (N.D. Cal. 2004)....................................................... 9

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
258 F.3d 1037 (N.D. Cal. 2017) .............................................................. 10

*In re Yahoo! Inc. Sec. Litig.*,
2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) .......................................... 6

*Mendoza v. HF Foods Group, Inc.*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) .......................................... 1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Metzler Inv. GMBH v. Corinthian College, Inc.*,
　　540 F.3d 1049 (9th Cir. 2008) ............................................................................. 3

*Morrison v. Nat'l Australia Bank*,
　　561 U.S. 247 (2010) .......................................................................................... 2

*Nguyen v. Endologix, Inc.*,
　　962 F.3d 405 (9th Cir. 2020) ............................................................................. 7

*Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*,
　　759 F.3d 1051 (9th Cir. 2014) ........................................................................... 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
　　442 F.3d 741 (9th Cir. 2006) ............................................................................. 2

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
　　119 F.Supp.3d 1213 (C.D. Cal. 2015) ............................................................... 9

*South Ferry LP, No. 2 v. Killinger*,
　　542 F.3d 776 (9th Cir. 2008) ............................................................................. 8

*Steckman v. Hart Brewing Inc.*,
　　143 F.3d 1293 (9th Cir. 1998) ........................................................................... 5

*Stoyas v. Toshiba Corp.*,
　　896 F.3d 933 (9th Cir. 2018) ......................................................................... 2, 3

*Stoyas v. Toshiba Corp.*,
　　424 F.Supp.3d 821 (C.D. Cal. 2020) ............................................................. 2, 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007) .......................................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
　　552 F.3d 981 (9th Cir. 2009) ............................................................................. 8

Statutes

15 U.S.C. §78u-4(b)(1)(B) .......................................................................................... 3

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1

# **INTRODUCTION**[1]

2     Plaintiffs do not address their failure to plead with particularity contemporaneous
3 facts identifying the who, what, when, where, and how of any alleged fraud.  Instead,
4 Plaintiffs fabricate omissions, recast group statements as specific ones attributable to
5 Shetty, and impermissibly introduce new facts and legal theories alleged nowhere in
6 the Amended Complaint.  The implausible theory Plaintiffs now advance—that, after
7 founding NMC in the 1970s, and over the next 45 years growing NMC from a single
8 clinic into the "largest private healthcare provider in the United Arab Emirates" (¶25
9 n.3; RJN, Ex. 5, p.15), that Shetty orchestrated a multi-billion dollar fraud to "loot[]"
10 NMC's treasury (Op.14)—has no basis in fact, logic, or common sense and fails to
11 plead a strong inference of scienter.[2]

12     In addition, Plaintiffs' extensive use of footnotes with multiple citations to law
13 and argument violates Local Rule 11-6 and Section 7(c) of this Court's Standing Order,
14 as it is an improper attempt to evade this Court's 25-page briefing limitation.  *See e.g.*,
15 Op.4 n.3, 11-12 n.6, 13 n.7, 20 n.8, 23 n.9, 24 n.10; *and see Caldera v. J.M. Smucker*
16 *Co.*, 2013 WL 6987893, at *1 (C.D. Cal. Oct. 4, 2013) (striking brief for "use [of]
17 textual footnotes to evade page limits").  Also, contrary to Plaintiffs' assertion (Op.1
18 n.2), on a motion to dismiss documents referenced in the Amended Complaint may be
19 considered for truth of the matter asserted.  *See Mendoza v. HF Foods Group, Inc.*,
20 2021 WL 3772850, at *2 (C.D. Cal. Aug. 25, 2021).

21     As such, Plaintiffs' oversized opposition should be stricken and Shetty's motion
22 to dismiss granted, on the merits, with prejudice.

23

24

25

---

[1] Defined terms shall have the same meaning as in Shetty's Motion to Dismiss, cited as ("Br.").

26

[2] Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant B.R. Shetty's Motion
27 to Dismiss is cited as ("Op.").  References to ("¶" or "¶¶") are to Plaintiffs' Amended Complaint, and
references to ("RJN") are to Shetty's first Request for Judicial Notice and Incorporation by Reference
28 (ECF 70-6) and second Request for Judicial Notice and Incorporation by Reference filed herewith.

1

# ARGUMENT

## I.    Plaintiffs Do Not Allege A Domestic Transaction

Plaintiffs do not contest that the OTC market is not a domestic exchange, and their failure to satisfy the Ninth Circuit's "irrevocable liability test" is fatal to the Amended Complaint.  Op.8-10; Br.4-6; *see Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 268 (2010) (The Exchange Act "appl[ies] only [to] transactions listed on domestic exchanges and domestic transactions in other securities.").

Plaintiffs' allegation that they "purchased their NMC ADS shares in the United States on the OTC Pink trading venue," mirrors the allegation found deficient in *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018) ("*Toshiba I*").  Br.5; ¶9.  *See Toshiba I*, 896 F.3d at 949 (finding allegations that "Toshiba ADRs were purchased in the United States" and that "Bank of New York, one of the depository institutions, sold Toshiba ADRs in the United States" failed to plead "specific factual allegations," such as "who sold the relevant securities and how those transactions were effectuated, as evidenced by documentation such as confirmation slips").

Furthermore, Plaintiffs blatantly mischaracterize *Stoyas v. Toshiba Corp.*, 424 F.Supp.3d 821 (C.D. Cal. 2020) ("*Toshiba II*") in an effort to hide the deficiencies in the Amended Complaint.  Op.9:4-17.  In *Toshiba II*, the plaintiff included particularized facts alleging precisely how its Toshiba ADRs were purchased, *e.g.*, from which specific depositary institution the ADRs were purchased (Citibank), the trade confirmation process, the source of the funds used to purchase the ADRs, the chain of title establishing that the plaintiff's ADRs were recorded on Citibank's transfer books maintained in New York, and when the plaintiff's ADRs were purchased.[3]  *Toshiba II*, 424 F.Supp.3d at 826.   The Amended Complaint bears little resemblance to the complaint in *Toshiba II*.  *Compare* RJN, Ex. 7 (¶¶20-23), *with* ¶¶5-6, 9; Op.10:7-23.

---

[3] *See Stoyas v. Toshiba Corp.*, No. 2:15-cv-04194-DDP(JCx) (C.D. Cal.) (ECF 75), ¶¶20-23.  A copy of the *Toshiba II* complaint is attached as Exhibit 7 to the RJN.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (A "court may take judicial notice of court filings and other matters of public record.").

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1    In yet another attempt to save the deficient Amended Complaint from dismissal,

2   Plaintiffs rely on general allegations, introduce new facts not set forth in the Amended

3   Complaint regarding the OTC market, and now baselessly assert that Plaintiffs "were

4   bound to complete the transaction in the United States." Op.9:21-10:6, 10:18-19.

5   General statements about the OTC market do not satisfy *Toshiba I*'s mandate to plead

6   "specific factual allegations." *See Toshiba I*, 896 F.3d at 949.  And Plaintiffs cannot

7   rely on extraneous facts to defeat Shetty's motion to dismiss, regardless of their import.

8   *Fabbrini v. City of Dunsmuir*, 544 F.Supp.2d 1044, 1050 (E.D. Cal. 2008) ("It is

9   axiomatic that the complaint may not be amended by the briefs in opposition to a

10   motion to dismiss.").

11   **II.    Plaintiffs Do Not Plead Falsity With Particularity**

12    Plaintiffs argue that the falsity of forty-three group allegations (¶¶26-68) are

13   "specifically explain[ed]" by one general allegation containing eight subparts (¶69).

14   Op.11:16-18.  While Plaintiffs contend "[t]hat is all that is required to plead falsity"

15   (*id*.), Plaintiffs misstate the law.  Br.9-11.  The PSLRA and Federal Rule 9(b) require

16   "particularized explanation[s] stating why the defendant's alleged statements or

17   omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian College, Inc.*, 540 F.3d

18   1049, 1061 (9th Cir. 2008); 15 U.S.C. §78u-4(b)(1)(B).

19    In addition, Plaintiffs' new theory that NMC's financial statements did not

20   comply with GAAP should be disregarded.  Op.13:8-14:14, 19-21.  As noted above,

21   courts cannot "take into account additional facts asserted in a memorandum opposing

22   [a] motion to dismiss."  *In re Turbodyne Tech., Inc. Sec. Litig.*, 2000 WL 33961193, at

23   *10 (C.D. Cal. Mar. 15, 2000).  And, with respect to this specific allegation—as

24   Plaintiffs readily admit—NMC's financial statements were "prepared in accordance

25   with the International Financial Reporting Standards, as adopted by the EU," not

26   GAAP.  ¶34.   Plaintiffs fail to explain why GAAP has any relevance to a foreign

27   company with no reporting requirements in the United States.  Similarly, Plaintiffs'

28   vague reference to a transaction they label the "Aspen acquisition" falls well short of

3

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1    the PSLRA's requirement to plead particularized facts. ¶¶77; Op.3:17-18.  Plaintiffs

2    plead no particularized facts explaining the acquisition or its materiality.

3        As to Shetty, Plaintiffs attempt to skirt the PSLRA's prohibition against group

4    pleading by improperly recasting group statements into individual statements by

5    Shetty.  Op.13-14, 16; Br.10-11.  For example, the Amended Complaint cites to the

6    "Directors' statements" in NMC's 2015 annual report stating "to the best of [their]

7    knowledge" NMC's directors believed that NMC's financial statements complied with

8    EU accounting regulations.  *See e.g.*, ¶34; Op.16; RJN, Ex. 4, p.87.  This group

9    statement was signed by non-party Simon Watkins, not, as Plaintiffs argue, Shetty.

10   RJN, Ex. 4, pp. 85, 89; *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112,

11   1115 (9th Cir. 2014) (courts "need not…accept as true allegations that contradict

12   matters properly subject to judicial notice or by exhibit").  Plaintiffs' reliance on

13   *Howard v. Everex Systems, Inc.*, 228 F.3d 1057 (9th Cir. 2000) on this point is

14   inapposite.  Op.16.  In *Howard*, the court held that when "a corporate officer signs a

15   document on behalf of the corporation" liability may attach to the signing officer, which

16   in the case of the statements Plaintiffs cite in their opposition was non-party Simon

17   Watkins, not Shetty.  *Howard*, 228 F.3d at 1061.

18       **III.   Plaintiffs Plead No Actionable Omissions**

19       Plaintiffs argue that NMC's 2015-2018 annual reports "each concealed related

20   party transactions," but they only reference two allegedly concealed transactions: (1)

21   NMC's 2018 acquisition of 70% of CosmeSurge for $170 million; and (2) NMC's 2014

22   pre-Class Period construction of the NMC Royal Women's Hospital.  Op.4.  Plaintiffs

23   place particular emphasis on the CosmeSurge transaction.  Op.4, 12, 14-15.  As

24   discussed below, both transactions were transparently disclosed.

25       **A. CosmeSurge Acquisition**

26       In its 2018 annual report NMC disclosed that it "agreed to acquire [a] 70%

27   controlling stake of CosmeSurge Aesthetic and Wellness from a related party who is

28   also an executive director in the Company," for "US$170m which has been fully paid

4

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1  during the year and was determined based on valuation done by the management." *See*

2  RJN, Ex. 6, p. 148.  This is the precise information that Plaintiffs erroneously argue

3  "Shetty concealed" and "lie[d]" about (Op.4:6-12) and "render[ed] the 2018 Annual

4  Report false and misleading" (Op.13:23-14:4). *See* Op.12:20-13:1 ("Defendants failed

5  to disclose … that the Company paid $170 million to a Defendant K. Bin Butti

6  company").  Plaintiffs boldly proclaim that the CosmeSurge acquisition is a "damning

7  fact[]" that cannot be resolved until trial (Op.14:13-14), but this Court should reject

8  Plaintiffs' fabrication and baseless rhetoric.  *See Steckman v. Hart Brewing Inc.*, 143

9  F.3d 1293, 1295 (9th Cir. 1998) (courts are "not required to accept as true conclusory

10  allegations which are contradicted by documents referred to in the complaint").

11  **B. <u>NMC Royal Women's Hospital</u>**

12  NMC's pre-Class Period construction of NMC Royal Women's Hospital (f/k/a

13  Brightpoint Royal Women's Hospital) is neither material nor relevant.  Op.4 n.3, 13;

14  Br.12.  Plaintiffs do not dispute that pre-Class Period transactions cannot serve as a

15  basis for liability.  Br.12:1-19.  Moreover, the construction costs for the hospital were

16  fully disclosed in NMC's 2014 annual report.  *See* RJN, Ex. 8, p. 24.  Plaintiffs'

17  accusation that the construction costs were concealed from NMC's 2015 annual report

18  is another false assertion.  Op.4 n.3, 13 n.7.  NMC *did* disclose the construction costs

19  for NMC Royal Women's Hospital in its 2015 annual report.  *See* RJN, Ex. 4, p.26.

20  **IV.   <u>Plaintiffs Do Not Plead Actionable Misrepresentations</u>**

21  **A. <u>No Particularized Facts About NMC's Financial Statements</u>**

22  Plaintiffs alternate between arguing that Shetty individually (Op.3), or

23  Defendants as a group (Op.11-12), are responsible for "significantly underreport[ing]

24  … debt obligations" in NMC's 2015-2018 annual reports, but do not cite any

25  contemporaneous or inconsistent facts to support this conclusory assertion.  Op.11;

26  Br.9-10. Plaintiffs cite a headline from a March 2020 news article titled "NMC Heath

27  Discovers Almost $3bn of Debt Hidden from Its Board," but this title is not a

28  particularized allegation as to NMC's 2015-2018 annual reports.  Op.11; ¶92. Plaintiffs

1    make the inferential leap that this headline relates to NMC's 2015-2018 annual reports,

2    but inferential leaps are not particularized statements of fact.  *See In re Northpoint*

3    *Communications Group, Inc. Sec. Litig.*, 184 F.Supp.2d 991, 1005 (N.D. Cal. 2001)

4    (The "PSLRA clearly establishes a preference for facts over … inferential leaps.");

5    Br.9.  Plaintiffs argue that alleged lease expenses not included in NMC's 2018 annual

6    report issued on March 6, 2019, but fully disclosed three months later in June 2019

7    (¶¶55, 77), constitutes securities fraud.  Op.3:18-27.  The law in this regard is clear:

8    "Mere allegations that statements in one report should have been in an earlier report do

9    not make out a claim of securities fraud," nor are they "admission[s]" of wrongdoing.

10   *See In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *13 (N.D. Cal. Aug. 10, 2012).

11                    **B.  No Actionable Facts Regarding NMC's Internal Controls**

12           Plaintiffs cite no particularized facts to support their argument that NMC lacked

13   internal controls during the Class Period.  Op.4, 14-15; Br.12, 15-16.   Moreover,

14   Plaintiffs' internal control argument rest on the demonstrably erroneous assertion that

15   NMC concealed the CosmeSurge acquisition, and non-particularized allegations that

16   NMC allegedly underreported its debt, which, as discussed above, do not support a

17   claim for securities fraud.  *See supra* pp.4-6.

18   **V.      Plaintiffs Fail To Plead Scienter**

19           Plaintiffs' scienter argument bears no resemblance to the Amended Complaint,

20   which consists of two group allegations that Plaintiffs make no attempt to defend.

21   Op.18-23; ¶¶109-110; Br.13-17.   Plaintiffs argue that scienter can be plead with

22   allegations of "deliberate recklessness" (Op.18:3-4), but cite no "specific facts…that

23   strongly suggests actual intent" to commit fraud.  *In re Silicon Graphics Inc. Sec. Litig.*,

24   183 F.3d 970, 974 (9th Cir. 1999); Br.15.   To salvage the Amended Complaint,

25   Plaintiffs mischaracterize as a purported admission a post-Class Period April 2020

26   article (the "Article") reporting on a probe Shetty commissioned to investigate fraud

27   within NMC.  Op.18-19; ¶25 n.3.  In the Article, Shetty is quoted as follows:

28

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1    The preliminary findings provided by my advisors from my own

2    investigations indicate that serious fraud and wrongdoing appears to have

3    taken place at NMC, Finablr PLC ('Finablr'), as well as within some of

4    my private companies, and against me personally.  This fraud also appears

5    to have been undertaken by a small group of current and former executives

6    at these companies.

7  ¶25, n. 3.  Plaintiffs' scienter theory is that Shetty's investigation, public statement, and

8  decision to "share[] information and evidence from [his] findings with …relevant law

9  enforcement and regulatory authorities" (*id*.), supports a strong inference that Shetty is

10  "responsible for such fraud" and had "actual knowledge of the fraudulent scheme at the

11  same time he made misrepresentations to public investors."  Op.19:12-21.

12    Plaintiffs' implausible theory "has no basis in logic or common sense" and fails

13  to plead a strong inference of scienter.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408

14  (9th Cir. 2020).  Perpetrators of a fraud do not issue public pronouncements stating that

15  a fraud may have occurred, nor do they turn over evidence of fraud to law enforcement

16  and regulatory authorities.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

17  308, 324 (2007) ("an inference of scienter … must be cogent and compelling").

18    The more rational (and cogent and compelling) inference to be drawn from the

19  Amended Complaint is that shortly after the Muddy Waters Report was published in

20  December 2019 (¶70), Shetty—who formally retired from day-to-day duties in March

21  2017 (RJN Ex. 5, p. 14), after relinquishing most meaningful duties years prior—

22  stepped down as NMC's Joint Non-Executive Chairman (¶84), and retained a team to

23  investigate an alleged fraud within NMC of which, until then, he was unaware (¶25

24  n.3).  Shetty then made his preliminary findings public and turned over his investigative

25  team's report to "all relevant boards, as well as [to] relevant law enforcement and

26  regulatory authorities."  ¶25 n.3.  This inference, supported by common sense and

27  contemporaneous documentary evidence, defeats Plaintiffs' position that they have

28  plead a "strong inference" of scienter.  *Tellabs*, 551 U.S. at 314.

1    Unable to defend their scienter allegations, Plaintiffs present a battery of failed

2  arguments, and rely on new facts entirely outside the Amended Complaint.  First, the

3  Article does not support an inference of contemporaneous actual knowledge by Shetty.

4  *See supra* pp.7-8.  Second, Plaintiffs attempt to invoke the "core operations doctrine,"

5  but this doctrine has no application because: (1) Plaintiffs do not allege a "specific

6  admission" of Shetty's "involvement in the minutia" of NMC's operations, nor do they

7  allege witness accounts that Shetty had "actual involvement in creating false reports;"

8  and, (2) the purported GAAP violations are irrelevant.  Op.19:23-21:5; *see supra* p.4;

9  *see also Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051,

10  1062 (9th Cir. 2014).  Therefore, this case does not fall into the "exceedingly rare

11  category" where a plaintiff can avoid pleading scienter on an individualized basis.

12  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008); Br.14-16.

13  Third, Plaintiffs' reliance on Shetty's stock sales fails because Plaintiffs do not allege

14  any "meaningful trading history" by Shetty comparing pre and post-Class Period

15  transactions.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir.

16  2009); Op.21:16-24; Br.16:25-17:7.  Fourth, Plaintiffs cite the resignations of Shetty

17  and Defendant K. Bin Butti (Op.21:26-22:5), but where, as here, the director

18  resignations are unaccompanied by particularized facts detailing their alleged roles in

19  the purported fraud the resignations "cannot support a strong inference of scienter."

20  *Zucco*, 552 F.3d at 1002.  As to Shetty, his actions subsequent to his February 2020

21  resignation, including his internal investigation, and voluntary production of evidence

22  to law enforcement renders his resignation, at best, a neutral factor.  Finally, Plaintiffs

23  patently mischaracterize an *ex parte* injunction issued by a court in the United Kingdom

24  as an "adjudicat[ion]" of fraud against Shetty.  Op.22:7-13.  The allegations and

25  evidence presented to the English judge are not before this Court, and  Plaintiffs provide

26  no facts about the *ex parte* proceeding, or whether the foreign standard for the *ex parte*

27  proceeding comports with the PSLRA and Rule 9(b).  Plaintiffs cannot escape their

28  pleading deficiencies by pointing to an article discussing a foreign *ex parte* order,

8

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA

1  issued by a foreign tribunal, under foreign legal standards.  Reviewed holistically, the

2  Amended Complaint fails to raise a strong inference of scienter.

3  **VI.   Plaintiffs Do Not Plead Reliance**

4  Plaintiffs cannot invoke the fraud-on-the-market presumption of reliance

5  because they fail to plead with particularity that the OTC market is an "efficient

6  market."  Br.18:9-20:19; *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F.Supp.2d

7  1173, 1187-88 (N.D. Cal. 2004) (Fraud on the market reliance must be plead with

8  "particular facts establishing an efficient market.").  Plaintiffs incorrectly contend that

9  the *Cammer* factors are not relevant on a motion to dismiss.  Op.22.  Indeed, courts

10  regularly dismiss securities fraud actions for failure to satisfy the *Cammer* factors, and

11  in particular for failure to plead with particularity that the OTC market is an efficient

12  market.  *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F.Supp.3d 1213, 1252

13  (C.D. Cal. 2015) (collecting cases holding that "as a matter of law … the OTC market

14  is not efficient").  Plaintiffs conflate their burden to "pro[ve] … market efficiency" at

15  trial, with their burden to plead an efficient market with particularity.  Op.22:26-27.

16  And, the *Affiliated Ute* presumption has no application because Plaintiffs

17  primarily plead a misrepresentations case.  Br. 17-18; ¶¶69, 100.  As noted above, the

18  alleged "concealed related party transactions" Plaintiffs argue entitle them to invoke

19  this presumption were actually disclosed, and non-particularized statements of alleged

20  "hidden debt" cannot form the basis of an omissions-based presumption of reliance.

21  Op.23; *see supra* pp.5-7.  Plaintiffs' argument that "misrepresentations … relate back

22  to key omissions" confirms that Plaintiffs plead a mixed misrepresentations/omissions

23  case that does not qualify for the *Affiliated Ute* presumption.  Op.23, Br.17-18.

24  **VII.   Plaintiffs Do Not Plead Loss Causation**

25  Plaintiffs do not address Shetty's loss causation argument, but merely double

26  down on their flawed theory that loss causation can be plead simply by pointing to

27  "stock price declines."  Op.24; Br.21-23.  The Amended Complaint does not, as

28  Plaintiffs argue, plead "gradual[] … multiple partial disclosures."  Op.23, n.9.  Rather,

the "truth" Plaintiffs cite comes exclusively from the December 17, 2019 Muddy Waters Report. ¶¶70-78. Plaintiffs cannot plausibly claim that losses were caused by a report issued before they acquired a single NMC ADS. Op.23-24; Br.21.

## VIII. Plaintiffs Do Not Allege A Scheme

Plaintiffs erroneously argue that Shetty does not challenge Plaintiffs' "scheme" allegations. Op.24. As set forth in Shetty's prior briefing, not only do Plaintiffs not allege a scheme, but Plaintiffs overlook their failure to plead scienter, reliance, and loss causation, all of which are necessary to plead securities fraud under Section 10(b) and Rule 10b-5, under any theory. Br.13-17 (scienter), 17-20 (reliance), and 20-23 (loss causation); *see Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009).

## IX.   Plaintiffs Do Not Allege §20(a) Liability Against Shetty

Plaintiffs cannot establish a securities fraud claim, and do not plead with particularity Shetty's "actual power or control." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 258 F.3d 1037, 1048 (N.D. Cal. 2017). Plaintiffs do not contest that Shetty formally "step[ped] down from day-to-day operational activities" in March 2017 (after relinquishing all meaningful duties years prior), and do not plead with particularity that Shetty prepared NMC's financial statements. Br.24:9-25:23. Plaintiffs instead rely on NMC's 2015 annual report, but fail to plead with particularity a single false or misleading statement from that report. Op.25. The absence of specific allegations that Shetty was "active in the day-to-day affairs" of NMC is fatal to Plaintiffs §20(a) claim. *Id*.

## CONCLUSION

For the reasons set forth herein, the Court should grant Shetty's motion to dismiss in its entirety with prejudice.

1

2    Dated: September 22, 2021          By: */Mark B. Chassman/*
                                        Mark B. Chassman (CA Bar No. 119619)
3                                       Email: mchassman@chassmanseelig.com
4                                       CHASSMAN & SEELIG LLP
                                        1250 Sixth Street, Suite 403
5                                       Santa Monica, CA 90401
6                                       Telephone: (310) 929-7192
                                        Fax: (310) 929-7627
7

8                                       Alexander D. Pencu
9                                       (*pro hac vice*)
                                        Email: adp@msf-law.com
10                                      Benjamin D. Bianco
11                                      (*pro hac vice*)
                                        Email: bdb@msf-law.com
12                                      Austin D. Kim
                                        Email:adk@msf-law.com
13                                      (*pro hac vice*)
14                                      MEISTER SEELIG & FEIN LLP
15                                      125 Park Avenue, 7th Floor
                                        New York, NY 10017
16                                      Telephone: (212) 655-3500
                                        Fax: (646) 539-3649
17

18                                      *Attorneys for Defendant B.R. Shetty*

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOT. TO DISMISS OF DEFENDANT B.R. SHETTY,
Case No. 2:20cv02895-CBM-MAA