Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Nicholas Manningham (*pro hac vice application pending*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: nmanningham@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY, <br><br> Defendants. | No. 2:20-cv-02303-CBM(MAAx) <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) REIMBURSEMENT OF EXPENSES** |

1

DECLARATION OF LAURENCE M. ROSEN

I, Laurence M. Rosen, declare as follows:

1.	I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen"), Co-Lead Counsel for Plaintiffs in this Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.	I submit this declaration in support of Plaintiffs' Motions for: (1) final approval of the proposed Settlement of this Action; and (2) reimbursement of expenses, filed concurrently herewith.[1] This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Co-Lead Counsel's request for reimbursement of expenses is reasonable and should be approved by the Court.

3.	The Settlement creates a gross settlement fund of $120,000, plus accrued interest. After reimbursement of expenses and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons who purchased or otherwise acquired NMC Health PLC ("NMC" or the "Company") American Depository Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive (the "Class Period").[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement dated June 15, 2021 ("Settlement" or "Stipulation") (Dkt. No. 50-2).

[2] Excluded from the Settlement Class are all: (i) Defendants; (ii) current and former officers and directors of NMC and any Tompkins Released Parties; (iii) the Persons expressly excluded from the definition of Settlement Class in paragraph 1.29 of the Settlement Stipulation; (iv) the respective spouses, children, or parents of any Person excluded under subparagraphs, (i) through (iii) of this paragraph; (v) any Person more than 5% owned or directly or indirectly controlled by any Person excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a Person is a beneficiary or of which any Person is related or affiliated to a beneficiary or a trustee; (vi) the respective heirs, successors, trustees and assigns of any Person excluded under paragraphs (i) through (v); and (vii) those Persons who file valid and timely requests for exclusion in accordance with this Preliminary Approval Order.

DECLARATION OF LAURENCE M. ROSEN

4.     The memoranda in support of Plaintiffs' motions, filed herewith, set out the complete narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.     Chris Hashem commenced this Action by filing an initial complaint on March 10, 2020, alleging violations of the Exchange Act against Defendants. Dkt. No. 1.

6.     On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen") as Co-Lead Counsel. Dkt. No. 21.

7.     On August 25, 2020, Plaintiffs served Tompkins, and on January 26, 2021, Plaintiffs filed a request for default against Tompkins. Dkt. No. 25. Around that time, Tompkins' counsel of record agreed to accept service of the complaint on behalf of Tompkins; thus, Plaintiffs withdrew their request for default and the Parties agreed to an extension to respond to the Complaint. Dkt. No. 26.

8.     Co-Lead Counsel and Tompkins' counsel promptly began to discuss settlement after Tompkins' service.  After many dozen communications over several months, they arrived at the Tompkins Settlement.

9.     The Parties entered into an agreement to settle the Action on June 15, 2021. Dkt. No. 50-2.

10.     On August 12, 2021, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. Dkt. No. 79.

## II.     OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

11.     Counsel for the Parties began settlement discussions shortly after Plaintiffs served Tompkins. The Parties discussed settlement even as Plaintiffs researched and filed an amended complaint. During settlement discussions, Co-Lead

DECLARATION OF LAURENCE M. ROSEN

Counsel close eye on NMC's evolving financial situation, which was a key factor in the settlement negotiations. After several months of arm's-length negotiations, the Parties finally entered the Stipulation.

12. In the opinion of the team of lawyers at The Rosen Law Firm P.A. ("Rosen") and Pomerantz LLP ("Pomerantz") who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation against Tompkins under circumstances where a more favorable outcome is less likely, while at the same time leaving open the possibility of an even more substantial recovery against the remaining defendants. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

13. As set forth herein and in the accompanying memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), the Tompkins Settlement alone recovers more than 6% of the estimated total damages of just under $2 million. A guaranteed cash settlement that provides a substantial benefit in the face of numerous challenges—including establishing personal jurisdiction over Tompkins and defeating Tompkins' threatened motion to dismiss—is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

14. The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement. Pursuant to the Notice, exclusion requests and objections to the Settlement must be received by November 9, 2021. To date, neither the Claims Administrator nor Co-Lead Counsel have received any requests for exclusion or objections to any aspect of the Settlement. *See* Declaration of Margery Craig Concerning (A) Mailing of The Postcard Notice; (B) Publication of The

DECLARATION OF LAURENCE M. ROSEN

Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Craig Decl.") ¶¶12-13.[3] If the Claims Administrator or Co-Lead Counsel receives any objection or exclusion request, Plaintiffs will address them in their reply papers in support of final approval.

## III.    NOTICE PROCEDURES

15.    At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on September 7, 2021, Strategic Claims Services ("SCS" or "Claims Administrator") published the Summary Notice on the *Globe Newswire*. Craig Decl. ¶9. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on August 24, 20210. *Id.* ¶11.

16.    To date, SCS has mailed 1,450 Postcard Notices to potential Settlement Class members. *Id.* ¶4. SCS also contacted more than a thousand brokerage firms and other institutions believed likely to have names and addresses of potential Class Members to alert them of the Settlement or provide SCS with their contact information to mail Postcard Notice. *Id.* ¶3. Further, SCS emailed the Summary Notice to three email addresses received from a nominee and was notified by one of the nominees that they emailed 256 of their customers to notify them of this settlement and provide direct link to the Notice Packet on the settlement webpage. *Id.* ¶5.

## IV.    PLAN OF ALLOCATION

17.    Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 50-2, Ex. A-1 (proposed Notice) at 12-23. Co-Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part

---

[3] A true and correct copy of the Craig Decl. is attached hereto as Exhibit 1.

DECLARATION OF LAURENCE M. ROSEN

on the same damages report Plaintiffs used to estimate their recoverable damages, and it closely tracks Plaintiffs' theory of the case.

18.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

19.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

20.    The proposed Settlement is the culmination of careful, economical litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Co-Lead Counsel had thoroughly investigated the case against Tompkins and consulted with multiple experts about the range of damages and the ADS structure.

21.    Co-Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other factors related to collectability of any settlement or judgment. Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation.

DECLARATION OF LAURENCE M. ROSEN

Co-Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

22.    Although Co-Lead Counsel believe Plaintiffs' claims against Tompkins are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Tompkins' threatened motion to dismiss. Tompkins insists he is not subject to the personal jurisdiction of this Court, and Plaintiffs may not be able to establish sufficient contacts to support personal jurisdiction.  Moreover, as Tompkins claims to have been unaware of the fraudulent conduct, Plaintiffs may have difficulty establishing his scienter, especially as he was a non-executive chairman of the board, purportedly not part of the management group that purportedly perpetrated the fraud. Although Plaintiffs believe they have viable arguments, there is no assurance that their claims against Tompkins would be sustained.

23.    Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency. Plaintiffs would have had to hire an expert economist to conduct an event study showing the price reaction of NMC ADSs to new, company-specific material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive.

24.    Discovery would also be costly and time consuming. Plaintiffs would need to engage in fact discovery, requiring review of thousands of documents and deposing Tompkins, among others. Further, since the Class Period began in 2016 and depositions would not start until at least 2022, it is possible that evidence could be lost because as time passes memories fade, making it a challenge to obtain usable deposition or in-person testimony.

25.    At the close of merits discovery, the parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other issues as well. Defendants, including Tompkins, would present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or

DECLARATION OF LAURENCE M. ROSEN

attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud

26.    Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## VI.    REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

27.    Co-Lead Counsel have incurred $30,815.89 in litigation expenses in connection with the prosecution of the Action. These expenses, in the aggregate, are less than the $35,000 expense request that was fully disclosed in the Postcard Notice, Summary Notice, and Notice. They were advanced by Co-Lead Counsel and were reasonable and necessary for the prosecution of the Action.

28.    From the beginning of the case, Co-Lead Counsel was aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Co-Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

29.    A listing of the expenses incurred by Rosen compiled from the regularly maintained records are set forth in the Rosen Expense Decl., ¶3,[4] and a listing of the expenses incurred by Pomerantz compiled from the regularly maintained records are set forth in the Silverman Expense Decl., ¶3.[5] The expenses incurred by Rosen pertaining to this case are reflected in Rosen's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

---

[4] A true and correct copy of the Declaration of Laurence M. Rosen Concerning Expenses ("Rosen Expense Decl.") is attached hereto as Exhibit 2.

[5] A true and correct copy of the Declaration of Joshua B. Silverman in Support of Plaintiffs' Motion for Reimbursement of Expenses ("Silverman Expense Decl.") is attached hereto as Exhibit 3.

DECLARATION OF LAURENCE M. ROSEN

30. Litigation expenses for which Co-Lead Counsel seeks reimbursement included fees for financial experts, costs involved investigating the location of and serving foreign defendants, necessary travel expenses, filing fees, and other expenses that were necessary for the prosecution of this Action. Each of these expenses were reasonable and necessary for the successful prosecution of this case. The financial expert performed a damages analysis so that Lead Counsel could properly evaluate and negotiate the Settlement.

31. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2021.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

DECLARATION OF LAURENCE M. ROSEN

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 2, 2021, I electronically filed the foregoing Declaration of Laurence M. Rosen in Support of Plaintiffs' Motions for Final Approval of Proposed Class Action Settlement and Reimbursement of Expenses, with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

DECLARATION OF LAURENCE M. ROSEN