UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>Defendants. | Case No. 2:20-cv-02303-CBM-MAA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MANGHAT**<br><br>Hon. Consuelo B. Marshall<br><br>CLASS ACTION |

# TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................2

II. SUMMARY OF THE LITIGATION AND MANGHAT SETTLEMENT ..................4

    A.    The Litigation.................................................................................4

    B.    Settlement Discussions ...................................................................4

    C.    The Settlement's Terms .................................................................4

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ............6

    A.    Legal Standard ...........................................................................6

    B.    The Proposed Settlement Results From Serious, Informed, Non-Collusive Negotiations ...............................................................7

    C.    Each *Churchill* Factor Considered at This Stage Supports Preliminarily Approving the Settlement ........................................7

        1.    The Strength of Plaintiffs' Case, Risks of Further Litigation, and Risk of Maintaining Class Action Status Support Approval ...........8

        2.    The Settlement Recovers a Reasonable Proportion of Damages...10

        3.    Plaintiffs' Investigation Allowed Them to Make an Informed Decision .......................................................................11

        4.    Experienced Counsel Believe the Settlement Is In the Best Interests of the Settlement Class................................................11

i

IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED PLAN OF ALLOCATION...............................................................................................12

VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ...........................13

VII. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ……………………………………………………………………16

    A.    Numerosity...........................................................................................17

    B.    Commonality.......................................................................................17

    C.    Typicality ...........................................................................................18

    D.    Adequacy ...........................................................................................19

    E.    Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication...............................................................20

VIII.    THE COURT SHOULD APPROVE LEAD COUNSEL'S SELECTION OF CLAIMS ADMINISTRATOR.............................................................................21

IX. CONCLUSION .................................................................................................21

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Betorina v. Randstad US, L.P.*,
No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ................................... 8

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ...................................................................................... 17

*Booth v. Strategic Realty Tr., Inc.*,
No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ................................... 3

*Ciuffitelli v. Deloitte & Touche LLP*,
No. 3:16-CV-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019) ..................................... 19

*Der-Hacopian v. Darktrace, Inc.*,
No. 18-CV-06726-HSG, 2020 WL 1904471 (N.D. Cal. Apr. 17, 2020) ................................... 7

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) ....................................................................................... 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....................................................................................... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................... 17

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...................................................................................... 19

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................. 13

*Ikuseghan v. Multicare Health Sys.*,
No. 3:14-CV-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) .......................... 10

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................................................... 8

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................... 6

*In re Illumina, Inc. Sec. Litig.*,
   No. 3:16-CV-3044-L-MSB, 2019 WL 6894075 (S.D. Cal. Dec. 18, 2019)............................ 21

*In re Intelcom Grp., Inc. Sec. Litig.*,
   169 F.R.D. 142 (D. Colo. 1996) ............................................................................................ 21

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................................... 12

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)...................................... 18

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)..................................................................................................... 9

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ........................................................................................... 19

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ............................................................................................... 19

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................................................. 20

*Murillo v. Pac. Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) .......................................................................................... 6\

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................................. 10

*Perez-Funez v. Dist. Dir., I.N.S.*,
   611 F. Supp. 990 (C.D. Cal. 1984) ........................................................................................ 18

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
   No. C14-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016)...................................... 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................... 7

*Rosenburg v. I.B.M.*,
   No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)...................................... 12

*Sandoval v. Tharaldson Employee Mgmt., Inc.*,
   No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010)........................ 14

*Scott v. United Servs. Auto. Ass'n*,
   No. C11-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) ....................................... 7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................................ 6

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987)............................................................................ 18

**Rules**

Fed. R. Civ. P. 23 ................................................................................ 6, 14, 17

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1. Whether the Court should preliminarily approve the $190,000 cash settlement with a single Defendant, Prasanth Manghat, without impact to claims against any other Defendant.

2. Whether the Settlement Class should be preliminarily certified for purposes of the Settlement.

3. Whether Plaintiffs should be certified as Class Representatives of the Settlement Class for purposes of the Settlement.

4. Whether Co-Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5. Whether the proposed Settlement Notice, Proof of Claim and Release Form, and the manner for dissemination of the Notice and Proof of Claim to the Settlement Class should be approved.

6. Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Co-Lead Counsel for an award of attorneys' fees, reimbursement of litigation expenses, and compensatory awards to Lead Plaintiffs.

Co-Lead Plaintiffs Chris Hashem, Shengming Huang and Abdul Razeq Abdul Ahad ("Plaintiffs") collectively, and on behalf the proposed Class, move this Court for Preliminary Approval of the Proposed Settlement Agreement with Defendant Prasanth Manghat ("Manghat" and the "Manghat Settlement") and Notice to the Settlement Class on claims that Manghat violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

## I.    INTRODUCTION[1]

Plaintiffs and Manghat have agreed to settle claims against Manghat only for $190,000 in cash. The Manghat Settlement is in addition to a prior settlement with Defendant Tompkins, and provides an additional meaningful recovery to Settlement Class Members.  The Complaint alleges that NMC Health PLC ("NMC") and certain officers and directors misrepresented to investors the finances of NMC between March 13, 2016 and March 10, 2020 (the "Class Period"), concealing related party transactions, NMC's debt burden, reverse factoring, and weaknesses in internal controls.  At the end of the Class Period, NMC disclosed approximately $3 billion of previously-concealed debt, and more recently, it has entered administration (the British analogue to an American bankruptcy).  Manghat is alleged to have misrepresented the finances to investors in his role as Non-executive Chairman of the Board and signatory to NMC's annual reports.  Manghat denies any wrongdoing.

This action involves NMC American Depositary Shares ("ADS"), that traded over-the-counter in the United States under the symbol "NMHLY."  It does not involve NMC ordinary shares, which traded in London.

The Manghat Settlement is an excellent result under difficult circumstances. It was negotiated by lawyers experienced in securities class action litigation, and

---

[1] Unless otherwise noted, all citations are omitted and emphases are added.  All capitalized terms (including "Persons") not defined herein take the meaning provided in the Stipulation.

2

does not compromise claims against any other Defendant.  Moreover, this Settlement avoids the very serious risks that the Settlement Class would recover nothing at all from Manghat, including the risks that Manghat would secure dismissal for lack of jurisdiction or failure to state a claim, the risk that Plaintiffs could not certify a class, or that they could not prove that Manghat made false statements with scienter.  In light of these major litigation risks, the Settlement's recovery, which Plaintiffs estimate to comprise approximately 9.5% of the estimated damages attributable to NMHLY ADS of approximately $2 million, provides Settlement Class Members with tangible and significant benefits, and should be approved.

The Court should also approve the methods and forms of notice to the Class. The Claims Administrator will mail a postcard setting out the principal terms of the settlement ("Postcard Notice") to potential class members, publish a Summary Notice in a newswire with broad circulation, and post a full Notice of Pendency and Proposed Settlement of Class Action ("Internet Notice") on the previously-established case-specific webpage. Each of the Postcard Notice, Summary Notice, and Internet Notice will advise Settlement Class Members of: (i) the essential terms of the proposed Settlement; (ii) the proposed plan for allocating the Manghat Settlement proceeds among Settlement Class Members; (iii) Class Counsel's intent to apply for fees not to exceed one-third of the Settlement Amount, litigation expenses not to exceed $10,000, and an award to Lead Plaintiffs not to exceed $3,000 each; and (iv) how to file a claim, opt out of the Settlement, or file an objection.

Finally, the Court should preliminarily certify a settlement class for the Manghat Settlement, as it did for the Tompkins Settlement. "[S]ecurities fraud cases fit Rule 23 like a glove." *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *9 (N.D. Cal. June 28, 2015).  Here, all of the Rule 23(a) elements are met, common issues predominate over individual issues, and a class action is superior to other methods of resolving the claims at issue.

3

The Court should preliminarily approve the Manghat Settlement, approve the method and form of notice, and preliminarily certify the Settlement Class.

## II.   SUMMARY OF THE LITIGATION AND MANGHAT SETTLEMENT

### A. The Litigation

This Action was filed on March 10, 2020 against NMC and certain of its officers and directors.  On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel.  ECF No. 21.

Plaintiffs served Manghat on April 2, 2021 (*see* ECF No. 47).  Claims against Defendant Tompkins were settled previously for $120,000, and claims against Defendants Shetty, Bin Butti and Shenoy remain and are unaffected by this Settlement.  Claims against the corporate defendant are stayed due to its bankruptcy, and Plaintiffs do not expect any recovery to be possible from that entity.

### B. Settlement Discussions

Given the relatively small dollar amounts involved, and the serious risks to establishing jurisdiction and liability against Manghat, Co-Lead Counsel and Manghat's counsel promptly began to discuss settlement after Manghat's service. After dozens of communications over several months, they arrived at the Manghat Settlement.

### C. The Settlement's Terms

The Manghat Settlement calls for Manghat (or his insurers) to pay $190,000 into a non-reversionary fund for the benefit of the Settlement Class. In exchange, Plaintiffs and Settlement Class Members will release the Released Claims against the Manghat Released Parties.  Both the Released Parties and the Released Claims are defined in the Stipulation; their definition is reproduced below. Both definitions are customary for securities class action settlements.

"Released Parties" means Magnhat, his attorneys, immediate family members, heirs, representatives, insurers (solely in their capacity as insurers for Manghat), agents, administrators, executors, devisees, legatees, estates, predecessors, successors in interest or assigns, or any person, firm, trust, corporation or other entity in which Manghat has a controlling interest. *See* Settlement Stipulation, ¶1.26.

"Released Claims" means and includes any and all Claims (including Unknown Claims as defined in Settlement Stipulation, ¶ 1.38), demands, rights, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known or unknown, contingent or absolute, mature or immature, discoverable or undiscoverable, whether concealed or hidden, suspected or unsuspected, which now exist, or heretofore have existed, asserted or that could have been asserted by or on behalf of any of Plaintiffs or any of the Releasing Parties, in any capacity, arising out of or relating in any way to the purchase or sale of NMC Health PLC American Depositary Shares ("ADSs") during the Class Period or to any and all of the allegations, transactions, acts, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that relate to the claims in the Action or which were or could have been alleged or asserted in the Action.  *Id.* at ¶1.25.

While the Released Claims include Unknown Claims and other claims that could have been asserted in this Action, as is customary, the release of such claims is appropriate because all released claims are based on the identical factual predicate of the claims asserted in this Action.  The proposed Manghat Settlement does not release any claims to enforce the Manghat Settlement, or claims of any Person that

excludes him-, her-, or itself from the proposed Settlement Class.

## III.    PRELIMINARY    APPROVAL    OF    THE    SETTLEMENT    IS WARRANTED

### A.    Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class-wide settlement. Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class may be settled . . . only with the court's approval."). "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005). "[T]here is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Courts evaluate class settlements in two steps. In the first step, at issue here, courts determine whether the settlement appears to be sufficiently fair to permit the plaintiffs to notify the class of the settlement and solicit claims, objections, and opt-outs. Fed. R. Civ. P. 23(e); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages.").

"Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Der-Hacopian v. Darktrace, Inc.*, No. 18-CV-06726-HSG, 2020 WL 1904471, at *7 (N.D. Cal. Apr. 17, 2020). The preliminary approval stage involves a "less searching" inquiry than at final approval,

6

and "seek merely to identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016).

**B. The Proposed Settlement Results From Serious, Informed, Non-Collusive Negotiations**

The proposed settlement results from hard-fought negotiations among experienced counsel. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

None of the factors identified by the Ninth Circuit as signs of a potentially collusive settlement are present here. Counsel have agreed to seek a fee no greater than one-third of the Settlement Amount, and no Settlement Class Member will receive preferential treatment. *See Scott v. United Servs. Auto. Ass'n*, No. C11-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class") (citations omitted). Finally, the funds will not revert to Manghat or his insurer under any circumstances. In short, the settlement does not show any signs of collusion or of any other deficiency.

**C. Each *Churchill* Factor Considered at This Stage Supports Preliminarily Approving the Settlement**

In addition to assessing whether the settlement is collusive, courts in the Ninth Circuit assessing a proposed class action settlement weigh the various *Churchill* factors. These are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

7

(6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Here, the last two factors are not applicable because no government is participating in this Action, and the Court cannot assess the reaction of the Settlement Class Members to the proposed settlement until the Final Approval Hearing is held. However, each of the remaining *Churchill* factors supports preliminary approval.

### 1. The Strength of Plaintiffs' Case, Risks of Further Litigation, and Risk of Maintaining Class Action Status Support Approval

Courts typically examine the first three *Churchill* factors together, and each supports preliminary approval of the settlement. *See Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017) (analyzing the first three *Churchill* factors together).

The risks inherent in further litigation against Manghat are significant. Manghat insists he is not subject to the personal jurisdiction of this Court, and Plaintiffs may not be able to establish sufficient contacts to support personal jurisdiction. Moreover, as Manghat claims to have been unaware of the fraudulent conduct, Plaintiffs may have difficulty establishing his scienter, especially because it appears that Defendant Shetty, not Manghat, was the chief perpetrator of the scheme. While Plaintiffs believe they have viable arguments, there is no assurance that their claims against Manghat would be sustained. Even if claims against Manghat survived a motion to dismiss, the documentary and expert evidence that the parties may present at trial or summary judgment will be complex, may be susceptible to different interpretations, and might not be convincing to the jury. A jury, or this Court at summary judgment, may find in favor of Manghat on the merits, or on the amount of damages or the method by which those damages are calculated.

The scope of discovery would be significant and complex because it would involve bankrupt entities and foreign persons largely outside the scope of conventional discovery tools. Plaintiffs would have to analyze tens if not hundreds of thousands of documents, and would have to prove Manghat's state of mind for each of his statements.

This case would require experts. Plaintiffs have already retained consulting financial and damages experts. Were this case to proceed, Plaintiffs would need testifying experts on, at a minimum, financial matters, accounting, and related party transactions.

Nor could this case be resolved quickly. The time from filing a securities class action to victory on appeal regularly exceeds a decade. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 232 (2d Cir. 2016) (securities class action filed in 2002 affirmed in 2016); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413 (7th Cir. 2015) (appellate decision in 2015 following verdict in favor of plaintiffs remanding case brought in 2002 for further proceedings). The inevitable delay supports approval. *See Rodriguez*, 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement.").

Hence, the strength of Plaintiffs' case against Manghat balanced against the risk, delays, and expense of litigation – assuming that Plaintiffs prevailed on the threatened motion to dismiss – support preliminary approval. *Rinky Dink*, 2016 WL 4052588, at *5 (finding first three *Churchill* factors supported preliminary approval when plaintiffs were confident in their case but continuing to litigate risked losing class certification and was "inherently expensive"); *Ikuseghan v. Multicare Health Sys.*, No. 3:14-CV-05539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years.").

Finally, Plaintiffs understand that the majority of Manghat's assets are subject to a freezing order from the High Court of London, and therefore believe any attempt to attach and recover assets from him would be exceptionally difficult. Plaintiffs do not believe a substantially higher settlement from Manghat is possible at this time.

### 2.    The Settlement Recovers a Reasonable Proportion of Damages

The amount offered in settlement also weighs in favor of preliminary approval. Courts typically weigh the relief obtained in the settlement against the possible relief that could be obtained at trial. *See, e.g. Ikuseghan*, 2016 WL 3976569, at *4 (comparing value obtained in TCPA settlement against possible recovery at trial). That said, the settlement should not be rejected just because the amount of the settlement is small compared to the best possible result. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement . . . unfair.").

According to a recent review of securities class action settlements, cases alleging damages of less than $2 million typically settle *in their entirety as against all Defendants* for about 11% of total damages. Laarni T. Bulan *et al.*, Securities Class Action Settlements: 2019 Review and Analysis (Cornerstone Research).[2] After consulting with their expert, Plaintiffs estimate that damages here are slightly under $2 million. The $190,000 Manghat Settlement alone recovers 9.5% of these damages (and in conjunction with the $120,000 Tompkins Settlement, over 15%), which is more than the median percentage of investor losses recovered in securities class action settlements. *See Heritage Bond*, 2005 WL 1594403, at *8-*9 (average

---

[2] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

recovery between 2% to 3% of maximum damages).  And, the Manghat Settlement does not release claims against any other Defendant, leaving open the possibility for an even more substantial recovery.

### 3.    Plaintiffs' Investigation Allowed Them to Make an Informed Decision

Next, even at this early stage of the proceedings, Plaintiffs "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink*, 2016 WL 4052588, at \*5.  Plaintiffs' private investigation revealed the potential difficulties they would face establishing personal jurisdiction over Manghat.  Additionally, Plaintiffs had the benefit of briefing in the bankruptcy proceedings and related lawsuits.  Plaintiffs also consulted with multiple experts about the range of damages, and the ADS structure.  As a result, Plaintiffs were fully informed about all significant issues, and are capable of assessing the benefits of the proposed settlement.  *See Ikuseghan*, 2016 WL 3976569, at \*3 (approving settlement reached "between experienced attorneys who are familiar . . . with the legal and factual issues of this case in particular").  Thus, this factor supports preliminary approval.

### 4.    Experienced Counsel Believe the Settlement Is In the Best Interests of the Settlement Class

The final *Churchill* factor also demonstrates that the proposed settlement warrants preliminary approval.  Co-Lead Counsel have dozens of years of combined experience and expertise in litigating securities actions.  Plaintiffs were consulted throughout the litigation and had ample opportunity to assess the strengths of the claims in which to appraise the sufficiency of the settlement, which they approved. *See e.g.*, *Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each

party's expected outcome in litigation.") (citing *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ikuseghan*, 2016 WL 3976569, at *4 (considering that class counsel, "who are experienced and skilled in class action litigation, support the [s]ettlement as fair, reasonable, and adequate, and in the best interests of the [c]lass as a whole," and approving settlement).

The Manghat Settlement provides a reasonable recovery given the risks of further litigation against him. The Court should grant preliminary approval and allow Settlement Class Members to be heard.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED PLAN OF ALLOCATION

The proposed Plan of Allocation, which is detailed in the Notice, will govern the allocation of settlement proceeds among Settlement Class Members who timely file a Claim Form. Courts in this Circuit typically approval a plan of allocation, so long as "the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted." *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007). Co-Lead Counsel prepared the proposed Plan of Allocation in consultation with Plaintiffs' damages expert. The Plan of Allocation rationally reflects compensable damages suffered by Settlement Class Members. All Settlement Class Members are treated equally under the plan.

The only agreement made in connection with the Manghat Settlement – other than the Settlement itself – is a confidential Supplemental Agreement, which sets forth certain conditions under which Defendants may terminate the settlement if requests for exclusion from the Settlement Class exceed a certain amount, which is kept confidential ("Opt-Out Threshold"). This type of agreement is common in class actions and does not render a settlement unfair. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("[t]he

existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").  Thus, the Plan of Allocation will fairly and equitably distribute the proceeds among Settlement Class members who submit valid claims.

## V.   THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS

As explained in the Postcard Notice and Notice, Co-Lead Counsel intend to apply for fees not to exceed one-third of the Settlement Amount, litigation expenses not to exceed $10,000, and an award to Lead Plaintiffs not to exceed $3,000 each. Co-Lead Counsel will provide more detailed information in support of their application in its motion for expenses, to be filed with the Court 28 days before the final Settlement Hearing.

## VI.  THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").  Moreover, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962; *see also Sandoval v. Tharaldson Employee Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.").

In accordance with the proposed Preliminary Approval Order, Co-Lead

Counsel will cause the Claims Administrator to mail the Postcard Notice, in substantially the form of Exhibit A-4 to the Stipulation, to those members of the Settlement Class as may be identified through reasonable effort. In addition, the Claims Administrator will solicit nominees for lists of their customers who may be Settlement Class Members and either provide the nominees with sufficient copies of the Postcard Notices or mail directly to these Settlement Class Members. The Claims Administrator will publish the Summary Notice, in substantially the form of Exhibit A-2 to the Stipulation, through a newswire service with wide circulation. The Claims Administrator will also post the Notice and Proof of Claim, in substantially the form of Exhibits A-1 and A-3 to the Stipulation, on a case-specific webpage, along with the Summary Notice, Postcard Notice, Stipulation of Settlement, Preliminary Approval Order, Complaint, and other important documents.

The Settlement Administrator shall also, among other things, receive Proofs of Claim and determine whether they present valid clams in whole or part, work with Class Members as needed to help them supplement or clarify their Proofs of Claim, and determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation, or in such other plan of allocation as the Court approves).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Postcard Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class members that Class Counsel will seek fees not to exceed one-third of the Settlement Amount, litigation expenses not to exceed $10,000, and an award to Lead Plaintiffs not to exceed $3,000 each. Once they are filed, the Claims Administrator will post a copy of Plaintiffs' Motions in

14

support of final approval and for reimbursement of expenses on the case webpage, along with supporting documents.

The proposed Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and Due Process.  The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the proposed Settlement Class and who is excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Settlement Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Co-Lead  Counsel intends to seek in connection with final Settlement approval; (9) the maximum amount Plaintiffs' Counsel will request for reimbursement of costs and expenses; and (10) the plan for allocating the Settlement proceeds to the Settlement Class.

Further, the proposed Postcard Notice discusses the rights Settlement Class members have in connection with the Settlement, including (1) the right to request exclusion from the Settlement Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator.

The notice program and the form and content of the Notice and Summary Notice satisfies all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, in granting preliminary approval of the Manghat Settlement, the Court should also approve the proposed form and method of giving notice to the Class.

Plaintiffs propose the following schedule:

| Summary Notice emailed and/or Postcard Notice mailed to Settlement Class Members | 16 calendar days after entry of the Preliminary Approval Order |
|---|---|
| Summary Notice published | 26 calendar days after entry of the Preliminary Approval Order |
| Deadline for papers in support of settlement and Expense Award | 28 calendar days before the final approval Settlement Hearing |
| Objection deadline | 21 calendar days prior to the final approval Settlement Hearing |
| Opt-Out deadline | 21 calendar days prior to final approval Settlement Hearing |
| Deadline for response to objections and other reply papers in support of Settlement | 7 calendar days before the final approval Settlement Hearing |
| Postmark deadline to submit Proofs of Claims to Claims Administrator | 30 calendar days prior to the final approval Settlement Hearing |
| Final approval Settlement Hearing | To be determined by the Court, approximately 110 days after entry of the Preliminary Approval Order |

## VII. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

This Court should also preliminarily certify a Settlement Class. The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "securities fraud cases fit Rule 23 like a glove." *Booth*, 2015 WL 3957746, at *9.

Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. In addition, the class must meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P.

23.   Here, the proposed Settlement Class consists of all persons and entities who purchased the NMC ADSs between March 13, 2016, and March 10, 2020, as alleged in the Complaint.

Securities claims are particularly well suited for class treatment because they let private actors supplement civil and criminal proceedings where there are numerous investors with small individual claims who otherwise would have no reason to litigate.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  This action is no exception and, as explained below, the proposed Settlement Class satisfies each of the requirements of Rule 23.

**A. Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Classes consisting of 25 members have been held to be large enough to justify certification.  *See Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  "Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks."  *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).

Here, NMC ADSs had an aggregate volume of 1.6 million over the Class Period, and Plaintiffs estimate that there were hundreds of thousands of damaged shares.  In addition, beneficial holders of NMC ADSs plainly number in the hundreds and are geographically located throughout the United States and the world, making joinder of all class members impracticable.  Thus, the numerosity element is satisfied.

**B. Commonality**

Rule 23(a)(2) is satisfied where the proposed class representative shares at least one question of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Further, commonality tolerates

variation among individual members of the class as long as the claims of the plaintiff and other class members are based on the same legal or remedial theory. *Blackie*, 524 F.2d at 902. Here, questions that are common to the proposed Class include, among others: (i) whether Manghat's alleged acts violated the federal securities laws; (ii) whether statements made by Manghat to the investing public during the Class Period misrepresented material facts about NMC; (iii) whether the price of NMC ADS was artificially inflated during the Class Period; and (iv) to what extent Settlement Class Members have sustained damages and the proper measure of such damages. Securities actions containing such common questions are prime candidates for class certification.

In short, because the core complaint of all Settlement Class Members is that they purchased NMC ADSs at artificially-inflated prices and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is satisfied. *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of "[defendant's] common stock at artificially inflated prices").

### C. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). Differences in the amount of damages, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *See id.* Rather, in

a securities class action, where the plaintiffs assert that defendants disseminated allegedly false or misleading statements, the claims and nature of the evidence are generally considered sufficient to satisfy the typicality requirement." *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2019 WL 1441634, at \*13 (D. Or. Mar. 19, 2019), *report and recommendation adopted,* No. 3:16-CV-00580-AC, 2019 WL 2288432 (D. Or. May 29, 2019).

Here, Plaintiffs' and the Settlement Class Members' claims arise from the same alleged conduct by Defendants.  Plaintiffs allege that, like the other members of the Settlement Class, they purchased NMC ADSs at prices that were inflated because Defendants, in violation of the federal securities laws, made false and materially misleading statements and omissions during the Class Period.  The proof that Plaintiffs would present to establish their claims would also prove the claims of the rest of the Class.  Further, Plaintiffs are not subject to any unique defenses that could make them atypical members of the Settlement Class.

**D. Adequacy**

A representative party satisfies Rule 23(a)'s adequacy requirement by showing that it will fairly and adequately protect the interests of the class.  To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced, and capable of conducting the litigation.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims are typical of and coextensive with those of the Settlement Class.  Plaintiffs, like all class members, purchased NMC ADS shares during the Class Period that was artificially inflated by Defendants' allegedly materially false and misleading statements and omissions, and were damaged thereby.

Further, Plaintiffs have retained counsel highly experienced in securities class

19

action litigation, who have successfully prosecuted many securities and other complex class actions throughout the United States.  Thus, Plaintiffs are an adequate representative of the proposed Class, and their counsel is qualified, experienced, and capable of prosecuting this action, in satisfaction of Rule 23(a)(4).

### E. Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

Finally, in addition to the four requirements of Rule 23(a), a class must also satisfy one of the three requirements of Rule 23(b).  Here, little question exists that a class action is superior to other available methods for litigation of the claims asserted here, as required by Rule 23(b)(3).  To ensure that a class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to a class representative.  In a securities class action, "whether Defendants' disseminated releases and statements during the Class period misrepresented material facts, outweigh any individual issues that may arise."  *In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-MSB, 2019 WL 6894075, at *10 (S.D. Cal. Dec. 18, 2019)

Further, "the superiority of class actions in large securities fraud [matters] is well recognized."  *In re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996).  The predominance test is met in this action: the same set of operative facts and a single proximate cause applies to each class member.  If Plaintiffs and each of the Settlement Class Members were to bring individual actions, they each would be required to prove the same wrongdoing by Defendant to establish liability, showing superiority.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (holding class actions are a particularly appropriate and desirable means to resolve claims based on securities laws).

Thus, all of the requirements of Rule 23(a) and (b) are satisfied and the Court should certify the proposed Class for settlement purposes and appoint Lead Plaintiffs

as the class representatives.

## VIII. THE COURT SHOULD APPROVE LEAD COUNSEL'S SELECTION OF CLAIMS ADMINISTRATOR

Co-Lead Counsel retained the Claims Administrator, Strategic Claims Services, to provide: (i) notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) the administration of the claims process. Strategic Claims Services has administered the prior Tompkins Settlement in a highly cost-effective manner, and was the only firm that provided a bid sufficiently low to allow this distribution to be viably distributed to Settlement Class Members as opposed to reserved for future distribution in combination with other settlements, if achieved. Co-Lead Counsel also considered certain fixed costs associated with the administration of the settlement, such as the construction and maintenance of the settlement webpage and the use of postcards for notice as opposed to a multi-page mailer. *Id.* At this time, Strategic Claims Services estimates that its cost of distributing the Manghat Settlement will be $25,000 or less, exclusive of brokers' fees which are out of its control.

## IX. CONCLUSION

The Court should enter the Proposed Order preliminarily approving partial settlement and providing for notice, which will: (i) preliminarily approve the partial Settlement; (ii) certify the Class for settlement purposes; (iii) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (iv) set a Settlement Hearing date and time to consider final approval of the partial Settlement and related matters and establish a schedule for various deadlines in connection with the Settlement.

Dated: November 2, 2021                    Respectfully submitted,

                                           **POMERANTZ LLP**

21

By:    /s/ Joshua B. Silverman

Joshua B. Silverman (*pro hac vice)*
Jared M. Schneider (*pro hac vice*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
jbsilverman@pomlaw.com
jschneider@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Nicholas Manningham (*pro hac vice application pending*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: nmanningham@rosenlegal.com

*Counsel for Lead Plaintiffs*

22