UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE CONSUELO B. MARSHALL, U.S. DISTRICT JUDGE

CHRIS HASHEM, INDIVIDUALLY          )
AND ON BEHALF OF ALL OTHERS         )
SIMILARLY SITUATED,                 )
                                    )
                PLAINTIFF,          )
                                    )
        vs.                         ) No. CV 20-2303-CBM
                                    )
NMC HEALTH PLC, PRASANTH            )
MANGHAT, KHALIFA BIN BUTTI,         )
PRASHANTH SHENOY, H.J. MARK         )
TOMPKINS, AND B.R. SHETTY,          )
                                    )
                DEFENDANTS.         )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, OCTOBER 12, 2021

10:06 A.M.

LOS ANGELES, CALIFORNIA

_____

**CHIA MEI JUI, CSR 3287, CCRR, FCRR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA 90012
cmjui.csr@gmail.com

CHIA MEI JUI, CSR 3287, CCRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

      POMERANTZ LLP
      BY:   JOSHUA B. SILVERMAN, ATTORNEY AT LAW
      10 SOUTH LA SALLE STREET, SUITE 3505
      CHICAGO, ILLINOIS 60603
      (312) 377-1181

FOR THE DEFENDANT B.R. SHETTY:

      CHASSMAN & SEELIG, LLP
      BY:   MARK B. CHASSMAN, ATTORNEY AT LAW
      1250 SIXTH STREET, SUITE 403
      SANTA MONICA, CALIFORNIA 90401
      (310) 929-7192

      MEISTER SEELIG & FEIN LLP
      BY:   AUSTIN D. KIM, ATTORNEY AT LAW
      125 PARK AVENUE, 7TH FLOOR
      NEW YORK, NEW YORK 10017
      (212) 655-3500

FOR THE DEFENDANT PRASANTH MANGHAT:

      KOBRE & KIM LLP
      BY:   NICHOLAS ICKOVIC, ATTORNEY AT LAW
      150 CALIFORNIA STREET, 19TH FLOOR
      SAN FRANCISCO, CALIFORNIA 94111
      (415) 582-4800

FOR THE DEFENDANT H.J. MARK TOMPKINS:

      EARLY SULLIVAN WRIGHT GIZER AND MCRAE LLP
      BY:   WILLIAM A. WRIGHT, ATTORNEY AT LAW
      6420 WILSHIRE BOULEVARD, 17TH FLOOR
      LOS ANGELES, CALIFORNIA 90048
      (323) 301-4669

LOS ANGELES, CALIFORNIA; TUESDAY, OCTOBER 12, 2021

10:06 A.M.

- - -

THE CLERK:  Calling item No. 1, CV 20-2303, Chris Hashem versus NMC Health PLC.

Counsel, please state your appearances at the lectern.

MR. SILVERMAN:  Good morning, Your Honor.  Josh Silverman of Pomerantz LLP on behalf of plaintiffs.

THE COURT:  Good morning.

MR. KIM:  Good morning, Your Honor.

Austin Kim from Meister Seelig & Fein for Defendant Shetty.

THE COURT:  Good morning.

MR. CHASSMAN:  Good morning, Your Honor.

Mark Chassman of Chassman & Seelig on behalf of Defendant Shetty as well.

THE COURT:  Good morning.

MR. ICKOVIC:  Good morning, Your Honor.

Nicholas Ickovic with the firm of Kobre & Kim on behalf of the defendant, Prasanth Manghat.

THE COURT:  Good morning.  Counsel may be seated.

MR. WRIGHT:  Good morning, Your Honor.

William Wright for Defendant Mark Tompkins.

THE COURT:  Good morning.

So the matter before the Court this morning it's defendants' motion to dismiss.  And so I am going to start with tentative rulings so that we can have a conversation about the position of the respective parties based on the Court's tentative.  So this is a tentative for purposes of further discussion.

Tentative is the Court would find defendants have sufficiently alleged domestic transaction.  Same finding as to material misrepresentations or omissions of fact.  Same finding as to scienter.  The same finding as to the alleged economic loss and the loss causation.

There is a request to take judicial notice by the defense.  So Exhibits 1 through 6 and 8 are incorporated by reference; so not necessary to take judicial notice.

What that means is the Court will consider or has considered those exhibits.  And then the Court does take judicial notice of Exhibit 7.

The defendants filed two motions to dismiss, and it's unclear to the Court what the difference is between them, and I don't know why we have two.

The first one was filed on June 21st, 2021, and the second one was filed on August 4th, 2021.  So it may be that you are withdrawing the first one, the June 21st, 2021, or it may be that you think that they're sufficiently different, that you are asking the Court to consider both.

So I will let defendants respond to that when the time comes, and then plaintiff may want to advise the Court which of the two were you responding to.

So the issues for our purposes of discussion is the reliance issue. So at this point the Court does not feel that that's been adequately pled, and I will let the parties address that.

The plaintiff has asked for leave to amend, and unless the Court changes its mind, then I would probably be granting defendants' motion to dismiss with leave to amend. And at this point, the Court's concerned about the reliance, the allegations to support reliance.

I am also concerned about whether the plaintiff is alleging misrepresentation or omission of fact. So I'd like to have plaintiff's counsel address that.

If you feel that you have adequately alleged both, identify for me the material misrepresentations as opposed to the omission of fact. And maybe it's not the plaintiff's position that the basis of your case is omissions of fact. Maybe it's just material misrepresentation.

So why don't I hear from the defendant first on why two motions to dismiss.

MR. KIM:  Thank you, Your Honor.

With regard to why there are two motions to dismiss, the first motion, the June motion, was filed in

response to plaintiff's original consolidated Complaint.

And in response to defendants' motion to dismiss, the plaintiffs filed an Amended Complaint. And so the second motion to dismiss was in response to the Amended Complaint because, in our view, once the Amended Complaint was filed, that mooted the first motion to dismiss.

So I apologize for the confusion, but that is the reason why. So we would ask that the Court consider the latter motion to dismiss which I believe is the motion that the plaintiffs did respond to.

THE COURT: All right. And so that was the other thought that the Court had. We could treat the first one as moot in light of the Amended Complaint. And so, apparently, the defendant would not object if the Court so indicated.

MR. KIM: That's correct, Your Honor.

THE COURT: So I think important for the parties to know that, within the structure of the Court, the clerks office, there are various people who have different responsibilities in the clerks office.

So if they see a motion that appears to be outstanding -- in other words, there has never been a ruling on that motion, it shows up sometimes much later as something that still has not been ruled on.

So it is helpful for parties to either withdraw

things that are no longer in issue or the Court can deem moot or in some way have a ruling on it that those who do the docketing will understand that this is something that has actually been ruled on.

So for these purposes, then the Court will deny the first motion as moot and then issue a ruling on the motion that was filed on August 4th.

MR. KIM:  That's correct, Your Honor.  Thank you.

THE COURT:  Okay.  All right.

Let's start with the plaintiff.  And so my first concern is material issues of -- I'm sorry.  Misrepresentation or omissions.

MR. SILVERMAN:  Sure, Your Honor.

THE COURT:  Maybe your position is both, and you could just identify the portion of your Complaint that you think addresses each.

MR. SILVERMAN:  Sure, Your Honor.

You are correct.  We do allege both misrepresentations and omissions.  This case as is set forth in our Complaint alleges primarily an omission scheme in which debt and related party transactions were hidden and omitted from investors, but we also allege some affirmative misrepresentations.

For example, we allege that Defendant Shetty misrepresented in the annual reports that related party

transactions had been disclosed.

So while that is the opposite side of the same coin -- and you could argue that it really could fall into the broader omission -- because he went out of his way and made an affirmative misrepresentation that said everything has been disclosed, there is really both omissions and affirmative misrepresentations.

Our case is primarily based on omissions.  There is one area that is more weighted towards affirmative misrepresentations, and that is the area in which the defendants claim to have, quote/unquote, strengthened internal controls.

In that sense, there is also an omission, of course, that there were deficiencies in internal controls. And that -- for their claim of having strengthened it, that to me I think could be more fairly characterized as an affirmative misrepresentation rather than omission.

The others are primarily based on omission.  And they are all set forth starting on paragraph 26 of our Complaint.  We allege the exact text that was described, the exact items that were omitted in each context.  So we've identified both the affirmative misrepresentations or omissions.

I don't think that's a meaningful distinction for the bulk of our claims.  It's not a meaningful distinction

for the 10b-5(b) misrepresentation claim, nor for the scheme liability claim.  But I understand Your Honor has raised the issue of reliance, and I suspect that this question is addressed towards whether the case primarily alleges misrepresentations that are affirmative in which case Affiliated Ute would not apply, or it primarily alleges omissions in which case Affiliated Ute would apply.

And this case primarily alleges omissions.  If they had said nothing at all, we'd be in the same place we are today because there would be -- have been an omitted debt that brought down the company.

There would have been omitted related party transactions that stripped assets from the company.  So the bulk of what hurt the investors and what hurt the company and what was not revealed to them was an omission.

The affirmative representations alleged in our Complaint really just put the gloss on this in the company's relationship with its investors.

THE COURT:  All right.  To the extent that the plaintiff's position is both misrepresentations and omissions, what are the allegations that support reliance?

MR. SILVERMAN:  Sure, Your Honor.

First, let's talk about the standard.  The standard is whether it's been plausibly alleged.  In virtually every securities class action, this is an issue

that is dealt with using expert testimony at class certification.

The Supreme Court in Basic has said it's a matter for trial. Many Courts have said it's premature at the pleading stage. The Centaur, Capital, and In re USA Talks.Com cases that are cited on page 22 of our brief is an example. More recently the Supreme Court noted in Halliburton II that these cases generally involved expert testimony.

So there is no requirement that we plead the evidence that our experts will set forth in our Complaint. However, it's important to note that there is a lot alleged in our Complaint that demonstrates that investors relied, to their detriment, on the misrepresentations and omissions on the fraud that's alleged.

In the -- the Ninth Circuit, like virtually every other circuit in the nation, has adopted the Cammer factor test and has identified that, of the Cammer factors, the most important of the Cammer factors is a cause and effect relationship between disclosures and declines in stock price. That's the Binder versus Gillespie case that we cite in our brief. They say that's the touchstone of market efficiency.

Now, what we allege in our Complaint is that, following the disclosures of company specific information,

material adverse company specific information, there was a definite and substantial cause and effect relationship.

I direct Your Honor respectfully to -- let's see -- page -- I'm sorry, paragraph 80 of the Complaint which talks about a 33.6 percent drop in NMC ADR prices after the disclosure of the initial partial disclosure that was made in the Muddy Waters Report; the 28.4 percent decline that was alleged in paragraph 82 after Defendant Bin Butti sold off shares indicating that he too accepted that there was a problem with the company; and paragraph 85 which indicates a 5 percent drop following a company's press release seeking that it was urgently seeking clarity from Dr. Shetty about the undisclosed arrangements; paragraph 89 which refers to a 6.5 percent drop in NMC ADR price after the company announced the resignations of a bunch of directors including Defendant Shetty; and then, most significantly, in paragraph 94, a 64 percent drop in NMC ADR price after the company admitted that it was having -- I'm sorry, after Financial Times published an article entitled "NMC Health Discovers Almost $3 billion of Debt Hidden from its Board."

So as I mentioned earlier in reliance, Your Honor asked about reliance generally, and the Binder versus Gillespie case adopted the Cammer Factor test.  That's also what's discussed in defendant's brief.  As Your Honor knows,

that's a class certification test.

However, it's also important to note that Cammer itself involved an OTC stock just like this does.  At the time the company involved in the Cammer decision, which was adopted by the Ninth Circuit and virtually every other circuit, was not traded on a national exchange.  It was traded on NASDAQ, and times have changed since 1979, but at the time of the Cammer decision, Nasdaq was not an exchange under SEC rules.

The Cammer test goes on at length saying, if this was an exchange, it would be an easy decision.  The exchanges like the New York Stock Exchange, American Exchange are generally efficient.  But for an over the counter test stock, we need to look at additional factors, and it listed a bunch of factors and those were what were ultimately adopted.

So there is really no basis to ascertain merely from the fact that this was traded on the OTC pink sheets that it cannot be efficient.

The volume that the stock was traded, especially in the latter half of -- the latter parts of the class period also denote trade efficiency.  It traded with very volume, as we alleged in our Complaint; and, as the experts will show, at class certification.

Finally, there is a reason why the Supreme Court

indicates that this is a matter for experts.  They typically go through an event study, and they talk about all the information that was available to investors and why or why not that was impounded into the stock price.

Now, here, although the stock was on the OTC, it was also traded in -- on London, on the London Exchange at very high volume.  It was covered by analysts.  It was reported on by the press globally both here, in the Middle East, and in the UK.

So this really was a widely followed stock, and it was a unique stock in the sense that it's a stock that is only traded on the OTC because it also had the ability to trade on the London exchange, was rapidly traded on that exchange.  And one of the things, one of the Cammer factors, when we get to the class certification, will be the presence of arbitrageurs.  That's Cammer Factor, I believe, 3 -- could be 2.

But at any rate, the presence of arbitrageurs occurs when you have two markets in which to arbitrage a price discrepancy between.

Here you have London and the OTC.  So if there was any kind of price discrepancy where the information was being impounded in London but not here, it would be arbitraged out because there is an economic incentive to do so.

Again, I think we are putting the cart ahead of the horse.  This is really an issue where experts will testify at class certification.

If Your Honor wants a little more robust pleading, we can easily do that.  However, I truly believe that the bulk of this, as recognized by the Supreme Court, requires an expert econometric review, and we'll be providing that at the appropriate time.

That's all I have for reliance.  Is there any other question I can answer for the Court?

THE COURT:  I actually don't think so.  Let me just check notes.

No, not at this time.

So I will let the defendants be heard on comments made by plaintiff's counsel, and you may wish to address the tentative findings.  I do note that I have another question for the plaintiff, but I will ask plaintiff to be prepared to address that later.

Defendant suggests much of what plaintiff is concerned about is puffery or opinions and has some examples of that, and so later I will give plaintiff an opportunity to address that.

I will hear from the defendants now.

MR. KIM:  Thank you, Your Honor.

THE COURT:  The Court expressed concern about

allegations to support reliance.  You heard the plaintiff's argument -- I think nothing new in that argument.  So it may be that you just rely upon the -- your papers, but you may also want to address it here.

MR. KIM:  Yes, Your Honor.

So the -- missing from what the plaintiff discussed was actually what was alleged in the Complaint regarding reliance.

There was one allegation in the Complaint that relates to reliance, and that's paragraph 102 where in very conclusory fashion they just list the Cammer factors and say, "We met it."

You need facts.  A curious fraud claim cannot be alleged with just listing the Cammer factors, putting your client's name in front -- putting the defendant's name in front of it, and then hope to survive a motion to dismiss.

Plaintiff's counsel referenced trading volume. There is not a single allegation in the Complaint listing any trading volume for NMC ADRs.  The only allegation is that it was actively traded on the OTC pink.

Under the Cammer factors in order to be actively traded, the weekly trading volume has to be 1 percent or more of the total market cap.  Simply saying it was actively traded is not a fact.  That is a legal conclusion that is not entitled to any weight on this motion.

With regard to the two presumptions that the plaintiffs are relying on, there is the fraud in the market presumption and then there is the Affiliated UTE presumption.

The plaintiffs are going back and forth as to whether or not it's a misrepresentation case or omissions case. I think it underscores the fact that at best this is a mixed case -- not primarily misrepresentations maybe, not primarily omissions. It's a mixed case which forecloses Affiliated Ute. That's plain.

And so, if they are going to rely on a presumption, they have to rely on the fraud in the market presumption which requires a showing of an inefficient market which requires then facts such as trading volume, such as whether or not there were market makers in the United States that were covering the NMC ADR.

The plaintiffs have introduced new facts at this hearing about the London market. That's nowhere alleged in the Amended Complaint. You can't introduce new facts at the hearing on a motion to dismiss the Complaint.

To the extent they are relying on the London market, then they're free to introduce that later on if they want if the Court were to dismiss this and give them an opportunity to replead.

But as it stands, the Complaint does not allege

facts with any specificity that there was reliance.

Now, with regard to the plaintiff's claim that there were misrepresentations and/or omissions concerning related party transactions -- and this is discussed in plaintiff's brief and reply.

But the plaintiffs place enormous weight on a 2018 transaction known as the CosmeSurge Transaction.  They call it a damning fact, that it's a lie and underscores why that there was deceit.

The problem with the plaintiff's argument is that that very transaction that was complained of it was transparently disclosed.  I would direct Your Honor to Exhibit 6.  And that's at page 148 where NMC disclosed that in January of 2018 the group had acquired 70 percent of CosmeSurge from a related party who was an executive director of the company and that the transaction had been consummated based on valuation done by management.

What the plaintiffs have argued is that none of that information that is plainly on the paper was disclosed. So that's the basis of their omissions case, is to just throw facts out and claim that they were not disclosed even though they were disclosed.

The second related party transaction that the plaintiffs place emphasis on is a preclass period transaction in 2014.  That in and of itself forecloses a

basis for reliance. You can't rely on something that happened before the class and then claim that that's fraud.

If there are to be statements or transactions that are part of his securities fraud claim, it has to have happened during the class period.

Those are the two related party transactions that the plaintiffs have highlighted. Neither one forms the basis for a claim.

With regard to the undisclosed debt, I am still unclear as to what the undisclosed debt allegations are. There is a single allegation that cites to a newspaper headline, but that newspaper headline that was published in I believe March of 2020 plaintiffs now argue that that headline somehow relates to 2016, 2017, 2018, 2019, and 2020.

A headline cannot -- is not a particularized specific fact that concerns debt disclosures from four years prior let alone for an entire four-year period.

So those are their allegations. And it's also in our brief and in -- you know, fully covered.

With regard to the last point that the plaintiffs had raised was the OTC market. And I would direct Your Honor to Judge Morrow's decision, ScripsAmerica versus Ironridge. The cite is 119 F.Supp.3d 1213, and that's a 2015 case.

And Judge Morrow in that decision goes through -- it's a motion to dismiss a securities fraud claim just like this claim here.

Judge Morrow goes through a very detailed analysis of why the OTC market as a matter of law is not deficient and why the fraud in the market presumption cannot apply to security that traded OTC market. She goes through a deep analysis, collecting cases from across the country all coming to the same conclusion.

The plaintiffs cite to a fairly old case down from the Southern District of California, saying that it's an issue of fact, but I would advocate for Your Honor to follow the much more recent 2015 decision from Judge Morrow.

Because, like I said, like, if we started with, if we can wrap up with how we started, the Cammer factors are not strictly for class certification periods.

Judge Morrow and plenty of judges around the country have applied the in motion to dismiss scenarios for failure to plead trading volume, for failure to identify the analysts that have followed the security for failure to identify market makers and arbitragers, for failure to identify whether or not the company is required to file form FS3s with the SEC.

The only factor that the plaintiffs cite to is a cause and effect. But let's look at the cause and effect

allegations that the plaintiffs cite.

The plaintiffs identified paragraph 81, which is a January 8, 2020, NMC press release talking about sales of securities; and they claim that, based on that news, the share prices fell.

I don't see anything in paragraph 81 that's either a misrepresentation or an omission of fact. It's just a press release.

The same thing goes for paragraph 83. It's another press release. Nothing in paragraph 83 is a misrepresentation or omission. It's just a statement and a claim that a share price fell.

Notably, January 8th happens to be when one of the plaintiffs purchases a security. So it matches up that they want to say that, "I bought it, the price fell." But that doesn't help their case because you have to actually show that the misrepresentation or omission is what caused the price drop and that you relied on it, not just simply linking days and share prices. That doesn't fit a claim.

The same applies for the plaintiff's allegation that in paragraph 88 that there was another press release. Again, nothing in paragraph 88 appears to identify a misrepresentation or omission, and they just follow it off and say, "Well, the share prices fell."

To wrap it up, it is curious that Your Honor asked

plaintiffs to identify allegations of reliance, yet they avoided referencing the one allegation in the Complaint that deals with reliance specifically. And with all due respect, I would argue that that's because they understand that the Complaint does not plead reliance.

THE COURT: Thank you.

Plaintiff's counsel, if you feel that defense counsel argued something that you haven't addressed, you may but not necessary at this point.

But the Court would like to have you address the -- what has been identified by the defendants as opinion and puffery. And why you think it's neither, if that is your position.

MR. SILVERMAN: Sure, Your Honor.

First, let me very briefly address the OTC issue very quickly. The Ninth Circuit has routinely not created -- has never created any bright line rule.

Counsel's attempt to foist a bright line rule upon this Court is contrary to the approach of the Ninth Circuit which says that you assess it on evidence at class certification.

And in fact the Toshiba case that they cite for standing is pretty important in this respect: Toshiba is very similar to this case in the sense that it involved an American depository shares traded on the OTC with an

underlying stock that was traded somewhere else.

Here the underlying stock was in the UK, there it was Tokyo.  However, if there was no ability to plead reliance for an OTC stock, then the Ninth Circuit would not have allowed repleading.  It would not -- it wouldn't make any sense.  It would have just said that this is an impediment you can't overcome.

In this case it can be overcome.  I'm not saying every OTC stock is going to trade in an efficient market.  Maybe most won't.  But in this case we will have an expert which will provide evidence.  And I understand my colleague on the other side is pointing to a lack of evidence of specific volume, lack of evidence of specific regression between cause and effect, lack of evidence of specific analyst coverage.  And in that sense he is right because we don't have to plead evidence.  We have to plead facts which make that plausible, and we have done that.

At the evidentiary stage, there will be plenty of evidence.  That's really where it is appropriately addressed, and that's where it is addressed by virtually every Court.

In terms of puffery, the -- counsel has cherry-picked a couple of phrases which he doesn't like in our Complaint.  And having said that, the bulk of -- and I understand that counsel has addressed puffery and opinions

as if they are the same thing.  They're not.

Opinions are actionable under Supreme Court authority where they omit material information or where they're not honestly held when made.  We've alleged they omit material information.  The question is whether some of these statements are so vague that no reasonable investor could rely on it.

Well, the statements, for example, about internal controls, they don't just say we have internal controls, we think we're a good company.  They say that, under the leadership of Shetty and the other board -- the other directors, they strengthened internal controls.

And the only reason they made that statement was so that investors would rely on it.  That is -- they made that in a communication directed at investors for the purpose of informing investors of the status and progress that the company was purporting to make.

Other information that goes to the core of the omissions in our case by definition cannot be puffery.  It is not puffery to fail to disclose $3 billion in debt.  It is not puffery to fail to disclose related party transactions.  It is not puffery to say that you have internal controls that you don't have.

These are quite simply facts.  And they may -- in some of the statements there may be a qualifier, but the

introduction of a qualifier does not remove a statement of hard fact from the purview of the securities fraud statutes. They quite simply were not honest with investors.

Counsel said this is about two smaller transactions -- one called CosmeSurge and one called Women's Hospital.  That's not accurate, Your Honor.

This is about a fraudulent scheme involving both undisclosed related party transactions and undisclosed debt as well as deficiencies in internal controls that allowed those things to happen.

The smaller transactions that are alleged -- they're just a fraction -- they're put in to provide hard anecdotal facts where those hard anecdotal facts are revealed.

Having said that, Mr. Shetty -- or Dr. Shetty himself has said there was serious fraud engineered with -- by transactions that were made in his name.

Those are the related party transactions, not just the CosmeSurge and Women's Hospital.  The company didn't fall apart, didn't go -- have to go to the UK equivalent of bankruptcy because it overpaid for CosmeSurge or Women's Hospital.  But in connection with both of those, they're adequately alleged.  They're not puffery in any sense.

We allege -- nor were the disclosures that were made fair, accurate, and not misleading.  As we have alleged

in the Complaint, while the company did disclose that it made the transaction to -- for CosmeSurge, for example, to KBBO Group, which was an affiliate of Bin Butti, a co-conspirator of Dr. Shetty, they did not disclose to investors that they paid an inflated valuation.

To the contrary.  They said in each of the annual reports that all their transactions were made at arm's length on a commercial basis.  And what we're alleging is that this wasn't arm's length and a commercial basis.  It was a -- it was a means of overpaying to transfer money that belonged to the corporation that belonged to investors out of the corporation to a related party.

And the Women's Hospital, yes, it was 2014.  But as Your Honor will note, it was addressed extensively in the 2015 annual report which was published in the beginning of the class period.  And it was discussed not only in general but also as a progress -- an accomplishment of Dr. Shetty's.

So the omission of the fact that they overpaid to related parties to get that done and to -- which effectively result in hidden compensation to related party is exactly something that should have appeared in the 2015 annual report that Dr. Shetty himself attested was complete.

That's all I have on those issues pending any further questions from the Court.

THE COURT:  I have no additional questions.  So the Court would deem the matter submitted and issue a written order.

MR. SILVERMAN:  Thank you, Your Honor.

THE COURT:  Thank you.

MR. CHASSMAN:  Thank you, Your Honor.

(Proceedings concluded at 10:45 a.m.)

--oOo--

CERTIFICATE


   I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  October 26, 2021.




                    _/S/ CHIA MEI JUI_ _____

                    Chia Mei Jui, CSR No. 3287