Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>Defendants. | No. 2:20-cv-02303-CBM(MAAx)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: April 5, 2022<br>Time: 8:00 a.m.<br>Courtroom: 8B<br>Judge: Hon. Consuelo B. Marshall |

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     CASE BACKGROUND ..............................................................................3

        A. Plaintiffs' Allegations............................................................................3

        B. Procedural History.................................................................................4

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED .........4

        A. The Settlement Class Satisfies All Requirements of Rule 23(a) ..................6

        B. The Settlement Class Satisfies All Requirements of Rule 23(b)(3) ..............7

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL............8

        A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ......................................................................10

           1.  Plaintiffs Faced the Risk of Dismissal .....................................................10

           2.  Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial ....................................11

           3.  Plaintiffs Faced Additional Risks of Continued Litigation ...................12

        B. The Amount Obtained in Settlement Supports Final Approval...................14

        C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval..............................................................................16

        D. The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ........................................17

        E. The Reaction of the Settlement Class Supports Approval...........................19

        F. The Settlement Meets the Remaining Rule 23(e)(2) Factors.......................20

           1.  The Proposed Method for Distributing Relief Is Effective....................20

           2.  The Proposed Award of Attorneys' Fees Is Appropriate .......................21

           3.  The Parties Have No Other Agreements Besides A Standard Blow Out Agreement ................................................................................................21

i

4. There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably ...........................................................22

G. The Court Should Approve the Plan of Allocation.....................................22

V.    NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS........23

VI.   CONCLUSION.................................................................................................255

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..............................................................................12

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ............................................................ 7-8

*Christine Asia Co. v. Yun Ma*,
  No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..18

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980)...............................................................18

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ..............................................................11

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)................................................................................8

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ....................17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................9, 14, 20

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..................10

*Hubbard v. BankAtlantic, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...............................................................15

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................13

*In re Cooper Companies Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)..........................................................................7

*In re Critical Path, Inc.*,
No. C, 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002)...............17

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .....................23

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001).....................................................................23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................16

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..............passim

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................25

*In re LJ Int'l, Inc. Sec. Litig.*,
No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009).........11

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..........................................................................passim

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010).....................................................................13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................8, 16, 19, 22

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ................................................................................13

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...............................................................................19

*In re Petrobras Securities Litigation*,
  No. 1:14-cv-09662 (S.D.N.Y. Feb. 23, 2018) .....................................................19

*In re Portal Software, Inc. Sec. Litig.*,
  No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)....................18

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................25

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................................13

*In re Rambus Inc. Derivative Litig.*,
  No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................19

*In re Silver Wheaton Corp. Sec. Litig.*,
  No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017)...... 5-6

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................10

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................................8

*In re Toronto-Dominion Bank Securities Litigation*,
  No. 17-cv-1665 (Oct. 3, 2019)..............................................................................19

*In re UTStarcom, Inc. Sec. Litig.*,
  No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) .......................6

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................22

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................17

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ..........16

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ........................................................................22

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ............................................................................9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........................................................................17

*Low v. Trump Univ., LLC*,
246 F. Supp. 3d 1295 (S.D. Cal. 2017) ...........................................................10

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ..5, 6, 7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)....................................................................14

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................................................9, 14, 15

*Pace v. Quintanilla*,
No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............18

*Ramsey v. MRV Commc'ns Inc.*,
No. CV0804561GAFRCX, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) .........11

*Rieckborn v. Velti PLC*,
No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)...................17

*Riker v. Gibbons*,
No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ..........18, 23

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................14

vi

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ...................................................................24

*Salazar v. Midwest Servicing Grp., Inc.*,
 No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ..............10

*Tadepalli v. Uber Techs., Inc.*,
 No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016).................17

*Thomas v. MagnaChip Semiconductor Corp.*,
 No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018)....................7

*Thorpe v. Walter Investment Management Corp.*,
 No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016).........19

*Tom v. Com Dev USA, LLC*,
 No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ..............9

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ................................................................9, 10

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ...................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(4)-(7) ...................................................................21, 24

**Rules**

Fed. R. Civ. P. 23 .........................................................................passim

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Co-Lead Plaintiffs Chris Hashem, Shengming Huang, and Abdul Razeq Abdul Ahad ("Plaintiffs") submit this memorandum in support of their motion for final approval of the Settlement with Defendant Prasanth Manghat ("Manghat") and Plan of Allocation, and final certification of the Settlement Class.[1]

## I.   INTRODUCTION

Plaintiffs and Manghat reached a settlement of this securities class action ("Manghat Settlement") for $190,000 in cash. The Settlement is a fair, reasonable, and adequate result, recovering approximately 9.5% of the estimated damages (and in conjunction with the $120,000 Tompkins Settlement, over 15%) despite significant risks.  Plaintiffs now seek final approval of the Manghat Settlement.  The Manghat Settlement is the product of arm's-length negotiations between lawyers experienced in securities class action litigation. It represents tangible and significant benefits for the Settlement Class despite several obstacles that Plaintiffs faced, including the amount of potentially recoverable damages, the risk that Manghat would secure dismissal for lack of jurisdiction or failure to state a claim, the risks that Plaintiffs could not certify a class or prove that Manghat made false statements with scienter, and the risks or prosecuting this litigation through trial and appeals.

The terms of the Settlement are set forth in the Stipulation. In the Court's Order re: Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement ("Preliminary Approval Order"), Dkt. No. 112, the Court preliminarily approved the

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement dated November 2, 2021 ("Settlement" or "Stipulation") (Dkt. No. 100-2). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig, attached as Exhibit 1 to the Rosen Decl. Citations to "Expense Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expense and Award to Plaintiffs, filed herewith.

1

Settlement, preliminarily certified the Class for purposes of effectuating the Settlement, and directed that notice be disseminated to potential members of the Settlement Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e), focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Here, the Settlement is fair, reasonable, and adequate. Plaintiffs believe their case is strong, but they determined that executing the Settlement was fair and reasonable, and the amount adequate, given the risks inherent in litigation. Manghat insists that he is not subject to the personal jurisdiction of this Court and claims to have been unaware of the fraudulent conduct, among other defenses. Thus, Plaintiffs would have faced a high bar to survive any motion to dismiss. Even if Plaintiffs survived a motion to dismiss, they faced other material obstacles to proving their claims, such as prevailing at class certification, summary judgment, and trial. Rather than engaging in expensive, protracted litigation with no assurance of success, therefore, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class.

Through protracted negotiations with Manghat, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The $190,000 cash Settlement eliminates the risks of continued litigation against Manghat and provides a beneficial cash recovery for the Settlement Class. To date, no Class member has objected to the Settlement. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed plan of allocation is fair, reasonable, and adequate. Here, Co-Lead Counsel developed the proposed plan of allocation in consultation with Plaintiffs' damages expert and the Claims Administrator, and no Class Member has objected to it. The proposed Plan of Allocation comports with applicable legal principles and in no way favors Plaintiffs

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

over other members of the Settlement Class.  The Court should also approve the Plan of Allocation.

## II.    CASE BACKGROUND

### A.    Plaintiffs' Allegations

In their Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), Plaintiffs alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Manghat and Defendants NMC Health, Inc. ("NMC" or "Company"), H.J. Mark Tompkins, Khalifa Bin Butti, Prashanth Shenoy, and B.R. Shetty ("Defendants"), on behalf of a putative class of investors who purchased or otherwise acquired NMC American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive (the "Class Period"). The Amended Complaint alleges that Defendants made false and misleading statements and omissions concerning the Company's debt disclosures, related party transactions, and internal controls and risk management. Plaintiffs allege that they and the members of the Settlement Class suffered damages because they purchased NMC ADSs at inflated prices and when the truth came out, the inflation dissipated.

Plaintiffs allege that throughout the Class Period, Defendants falsified financial statements by hiding billions of dollars' worth of debt and failed to disclose significant related party transactions and insider deals with some of the Company's controlling shareholders and senior executives. The truth was gradually revealed to investors through a series of partial corrective disclosures starting on December 17, 2019. On that day, Muddy Waters Capital LLC ("Muddy Waters") published a report explaining that NMC had misled investors and failed to disclose: (i) its lack of internal controls; (ii) (de facto) related party transactions; (iii) its true debt burden; (iv) its true cash-on-hand and asset values; and (v) its use of reverse factoring. Then, on March 10, 2020, the *Financial Times* published an article that revealed that NMC had discovered almost

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

$3 billion of hidden, undisclosed debt. Plaintiffs allege that, on this news, the Company's stock price fell sharply, harming investors.

**B.    Procedural History**

Chris Hashem commenced this Action by filing an initial complaint on March 10, 2020, alleging violations of the Exchange Act against Defendants. Dkt. No. 1. On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen") as Co-Lead Counsel. Dkt. No. 21. Plaintiffs served Manghat on April 2, 2021, *see* Dkt. No. 47, and have since served all other individual defendants. Claims against NMC are stayed due to its bankruptcy, and Plaintiffs do not expect any recovery to be possible from that entity.

Given the relatively small dollar amounts involved, and the serious risks to establishing jurisdiction and liability against Manghat, Co-Lead Counsel and Manghat's counsel promptly began to discuss settlement after Manghat's service. After dozens of communications over several months, they arrived at the Manghat Settlement. Rosen Decl. ¶8.

**III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 112 ¶¶2-3. As previewed in Plaintiffs' brief in support of preliminary approval of the Settlement (Dkt. No. 100-1), certification of the Settlement Class under Rule 23 is merited here.  No pertinent changes have transpired since the Court issued the Preliminary Approval Order, and Class treatment continues to provide benefits to the Settlement Class. Thus, the Court should certify the Settlement Class for settlement purposes.

Certification of a settlement class is appropriate where the proposed class and class representatives meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a).  Certifying a class

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

action for damages also requires a showing under Rule 23(b)(3) of predominance and superiority. Fed. R. Civ. P. 23(b)(3).

The Parties stipulated to the certification of the Settlement Class only for settlement purposes. Stipulation ¶9.1. Plaintiffs request that the Court finally certify the Settlement Class defined in the Stipulation, and conditionally certified in the Preliminary Approval Order, comprising "all Persons that purchased or acquired NMC Health PLC ("NMC") American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive ( "Class Period") excluding: (i) Defendants; (ii) current and former officers and directors of NMC and any Manghat Released Parties; (iii) the Persons expressly excluded from the definition of Settlement Class in paragraph 1.31 of the Settlement Stipulation; (iv) the respective spouses, children, or parents of any Person excluded under subparagraphs, (i) through (iii) of this paragraph; (v) any Person more than 5% owned or directly or indirectly controlled by any Person excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a Person is a beneficiary or of which any Person is related or affiliated to a beneficiary or a trustee; (vi) the respective heirs, successors, trustees and assigns of any Person excluded under paragraphs (i) through (v); and (vii) those Persons who file valid and timely requests for exclusion in accordance with this Preliminary Approval Order." Dkt. No. 112 ¶2. No circumstance has arisen since the Court's preliminary certification of the Settlement Class that should cause this Court to undo its certification.

Courts in the Ninth Circuit routinely certify class actions alleging securities fraud. *See, e.g., In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010). Here, the proposed Settlement Class meets all the requirements of Rules 23(a) and 23(b)(3), which is sufficient to certify it finally for purposes of the Settlement.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

**A.    The Settlement Class Satisfies All Requirements of Rule 23(a)**

First, the Class is sufficiently numerous.  In the Ninth Circuit, "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6. "Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks." *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010). Here, NMC ADSs had an aggregate volume of 1.6 million over the Class Period, and Plaintiffs estimate that there were hundreds of thousands of damaged shares.  In addition, beneficial holders of NMC ADSs plainly number in the hundreds and are geographically located throughout the United States and the world, making joinder of all class members impracticable.

Second, the conduct alleged in the Amended Complaint was common to all members of the Settlement Class. All Settlement Class Members purchased or otherwise acquired NMC ADSs during the Settlement Class Period, at prices artificially inflated by Defendants' alleged misrepresentations, and were damaged when the truth was revealed. That is sufficient to show commonality.

Third, Plaintiffs' claims are typical of those of the rest of the Settlement Class. Plaintiffs allege that, like the other members of the Settlement Class, they purchased NMC ADSs at prices that were inflated because Defendants, in violation of the federal securities laws, made false and materially misleading statements and omissions during the Class Period.  *See* Dkt. No. 11-2 (Plaintiffs' PSLRA certifications). There is no evidence suggesting that Plaintiffs' claims are atypical of the Settlement Class or that any unique defenses apply to Plaintiffs' claims. *See Semtech*, 2010 WL 11507255 at *4-5 (finding typicality was met despite certain unique factors). Plaintiffs satisfy the typicality requirement.

Fourth, Plaintiffs are adequate representatives of the Settlement Class, and the Court-appointed Co-Lead Counsel, Rosen and Pomerantz, are adequate counsel. No evidence exists of any conflicts of interest between Plaintiffs and the other Settlement Class Members. *Silver Wheaton*, 2017 WL 2039171 at *7-8. Rosen and Pomerantz are

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

experienced in prosecuting similar securities fraud class actions and have skillfully litigated this Action through the pleadings stage. *See Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *2-3 (N.D. Cal. May 15, 2018) (approving class action settlement in case where plaintiffs were represented by Rosen and Pomerantz). Plaintiffs and Co-Lead Counsel thus satisfy the adequacy requirement.

### B.    The Settlement Class Satisfies All Requirements of Rule 23(b)(3)

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the Action—whether Defendants made public misrepresentations of material facts with scienter, artificially inflating the price of securities—is the central issue and predominates over any theoretical individual issue that may arise. The common resolution of these issues supports a finding of predominance. *Semtech*, 2010 WL 11507255, at *7; *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

The class action is also the best method of resolving this Action. For certification of a settlement class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. *Amchem*, 521 U.S. at 620. A court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Id.* The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891,

903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id.*

This Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3). The Court should finally certify the Settlement Class.

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements, imposing the following:

> (2)    ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

8

> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant[2]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, each of Rule 23(e)'s and the Ninth Circuit's factors weighs in favor of final approval of the Settlement.

---

[2] Here there was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

### A.     The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where, as here, the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Even among class actions, securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In this Action, Co-Lead Counsel and Plaintiffs carefully evaluated the merits of this case in light of all of the risks and potential weaknesses before Plaintiffs entered into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Settlement Class in continuing this action against Manghat. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282-83 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class ultimate recovery be less than the proposed settlement).

### 1.     Plaintiffs Faced the Risk of Dismissal

Class action plaintiffs face procedural hurdles and failing at any one stage of the litigation could defeat the class action. While Plaintiffs believe their arguments opposing a motion to dismiss are strong, there is no guarantee they would prevail before

10

the Court. The PSLRA imposes heightened pleading burdens on complaints alleging securities fraud that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Manghat insists he is not subject to the personal jurisdiction of this Court, and Plaintiffs may not be able to establish sufficient contacts to support personal jurisdiction. Moreover, as Manghat claims to have been unaware of the fraudulent conduct, Plaintiffs may have difficulty establishing his scienter, especially because Defendants Shetty and Manghat each contend that the other was the chief perpetrator of the scheme. Rosen Decl. ¶22.

Plaintiffs must show that Defendants made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter is difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Especially where, as here, Plaintiffs were faced with alleging scienter through circumstantial evidence—an especially difficult task. *Ramsey v. MRV Commc'ns Inc.*, No. CV0804561GAFRCX, 2010 WL 11596641, at *3 (C.D. Cal. Nov. 16, 2010).

The Court could have found that Manghat was not subject to personal jurisdiction of this Court or that Plaintiffs' allegations supporting a motive or opportunity to commit fraud were insufficient to support a strong inference of scienter. Rosen Decl. ¶22. The Settlement removes this uncertainty, and therefore the risk of dismissal supports approval of the Settlement.

**2.      Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial**

Even if Plaintiffs defeated the threatened motion to dismiss, they would still need to obtain class certification, which would be complex and expensive under the circumstances here. In any securities fraud class action, a plaintiff faces significant challenges to certifying a class and maintaining certification throughout trial. One of the more difficult elements to satisfy is showing that class-wide issues—such as reliance on Defendants' misrepresentations—predominate over individualized issues.

11

Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiffs would need to prove that NMC ADS securities traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into NMC's ADS price.

To meet the standards for the *Basic* presumption, Plaintiffs would have had to hire an expert economist to conduct an event study showing the price reaction of NMC ADSs to new, company-specific material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Rosen Decl. ¶23. Manghat would also likely contest either or both the efficiency of the market for NMC securities and whether the fraud impacted the price of NMC securities, and would present his own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiffs would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiffs were successful in obtaining class certification, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). A class is not safely certified until judgment. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court would have denied certification, supports the Settlement's adequacy.

### 3. Plaintiffs Faced Additional Risks of Continued Litigation

Even if Plaintiffs were to defeat the motion to dismiss and successfully obtain class certification, there is no question that further litigation would be risky, complex, and expensive. First, they would need to engage in fact discovery, requiring review of thousands of documents and deposing Manghat, among others. Rosen Decl. ¶24. After the close of merits discovery, the parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other issues as well. Defendants, including Manghat, would present their own expert testimony to demonstrate that the

12

revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. *Id.* ¶25. Expert discovery and trial preparation would unquestionably prove expensive and complex in a case like this. *See Heritage Bond*, 2005 WL 1594403, at \*6.

Further risks also threaten a recovery absent the Settlement. Plaintiffs might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiffs might have an expert excluded, crippling their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might trim Plaintiffs' damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[3] Plaintiffs might still lose their case in this Court even after winning at trial. *See, e.g., In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at \*38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for their damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (\$81 million jury verdict reversed). Or, they might be unable to collect on a judgment even if sustained—a real possibility

---

[3] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

here in light of the fact that most of Manghat's assets are subject to a global freezing order. *See, e.g.*, THE FINANCIAL TIMES, "Bank wins freezing order against NMC Health owners and executives," *available at* https://www.ft.com/content/7e1efa41-3fcb-4222-9aa4-193bc214e30c.

Accordingly, the likely duration and expense of further litigation against Manghat also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

## B.     The Amount Obtained in Settlement Supports Final Approval

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Manghat would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, Plaintiffs cannot be sure they will be able to secure or enforce a judgment against Manghat at or near the full amount of the class-wide damages they estimate. In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

14

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Manghat's defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs were to prevail on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.*, *Hubbard v. BankAtlantic, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that they would be unable to recover a greater amount from Manghat further down the road.

The Settlement locks in a substantial benefit for Settlement Class Members while leaving open the possibility of an even more substantial recovery against the remaining defendants. The $190,000 Manghat Settlement alone recovers approximately 9.5% of the estimated total damages of just under $2 million. By itself, this settlement is more than the median percentage of losses recovered in securities class action settlements. *See Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages). The Manghat Settlement, together with previous Tompkins Settlement, recovers over 15% of the estimated damages.

According to a recent review of securities class action settlements, in 2019, cases alleging damages of less than $2 million typically settled *in their entirety as against all Defendants* for about 11% of total damages. Laarni T. Bulan *et al*, Securities Class Action Settlements: 2019 Review and Analysis (Cornerstone Research).[4]  The Manghat Settlement alone recovers nearly 90% of this number without releasing claims against any other Defendant, leaving open the possibility for an even more substantial recovery. Moreover, the Manghat Settlement by itself is well within the range of the

---

[4]  *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

15

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

percentage of investor losses recovered in securities class action settlements. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"). In the context of questions about collectability, therefore, the Manghat Settlement Amount is fair, reasonable, and adequate.

### C.    The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

Even at this early stage of the proceeding, Plaintiffs had enough information to make an informed decision about the Manghat Settlement. Plaintiffs' private investigation revealed the potential difficulties they would face establishing personal jurisdiction over Manghat.  Additionally, Plaintiffs had the benefit of briefing in the bankruptcy proceedings and related lawsuits.  Plaintiffs also consulted with multiple experts about the range of damages, and the ADS structure.

Through these efforts, Plaintiffs and Co-Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended

on further litigation. *Id.* Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *7 (N.D. Cal. Apr. 25, 2016) (no discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, the Parties reached this settlement only after a thorough investigation into the strengths and weaknesses of the claims against Manghat and hard-fought negotiations. Thus, Plaintiffs and Co-Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Plaintiffs and Co-Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable settlement, supporting final approval.

**D. The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it results from arms'-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03

17

5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

Here, Plaintiffs reached the Settlement only through hard-fought negotiations. Rosen Decl. ¶11. Co-Lead Counsel also kept a close eye on NMC's evolving financial situation, which was a key factor in the settlement negotiations. As noted in Plaintiffs' preliminary approval brief, no hint of collusion exists here. There is no "clear sailing" agreement, and the Settlement was achieved only after tough negotiations between skilled counsel. Counsel on both sides are experienced and knowledgeable when it comes to litigating complex, securities class actions. The opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

The experience and reputation of Rosen and Pomerantz allowed Co-Lead Counsel to credibly threaten further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Numerous courts have recognized that Rosen "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *see also Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Numerous courts have also found that Pomerantz has "a reputation for zealous advocacy in securities class actions." *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016); *see also In re Petrobras Securities Litigation,* No. 1:14-cv-09662 (S.D.N.Y. Feb. 23, 2018) ("[T]he lawyers in this case [are] some of the

best lawyers in the United States, if not in the world.") and on Jun. 25, 2018 ("[T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery"); *In re Toronto-Dominion Bank Securities Litigation*, No. 17-cv-1665 (Oct. 3, 2019) ("This settlement appears to have been obtained through the hard work of the Pomerantz firm.… It was through their efforts and not piggybacking on any other work that resulted in this settlement"). Thus, Co-Lead Counsel's experience supports approval.

In considering final approval of the Settlement the Court should give Co-Lead Counsel's views material weight. In a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9.

**E.     The Reaction of the Settlement Class Supports Approval**

The absence of many objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). Here, there were no objections.

The Claims Administrator mailed 1,721 copies of the Postcard Notice to potential Settlement Class Members. Craig Decl. ¶4. SCS emailed the Summary Notice to three email addresses received from a nominee and was notified by one of the nominees that they emailed 251 of their customers to notify them of this settlement and

19

provide direct link to the Notice Packet on the settlement webpage. *Id.* ¶5. In total 1,972 potential Settlement Class Members were notified either by mailed Postcard Notice, emailed Summary Notice, or emailed a direct link to the Notice Packet. *Id.* ¶6.

The deadline to file objections to and request exclusion from the Settlement is March 15, 2022. To date, no Settlement Class Members have objected to the Settlement or validly requested exclusion from it.[5] Craig Dec. ¶¶12-13; Rosen Decl. ¶14. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 459 (that there was only one opt-out supports upholding district court's approval of settlement). The lack of objections or requests for exclusion supports final approval.

**F.      The Settlement Meets the Remaining Rule 23(e)(2) Factors**

**1.      The Proposed Method for Distributing Relief Is Effective**

The Court's Preliminary Approval Order established a plan to provide notice to Class Members, which Plaintiffs and the Claims Administrator duly followed. As the Court directed in the Preliminary Approval Oder, the Claims Administrator mailed 1,721 Postcard Notices to potential Settlement Class members. Craig Decl. ¶4. The Postcard Notice notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶2 (Exhibit A).

Class Members completed a standard claim form that requests the information necessary to calculate their claim amount pursuant to the Plan of Allocation. The case-specific website also allowed Class Members to file their claims electronically without ever having to print, scan, mail, or email any document.

---

[5] If any exclusion requests or objections are received after the date of this filing, they will be addressed on reply.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

**2.      The Proposed Award of Attorneys' Fees Is Appropriate**

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of one third of the Settlement Amount, plus interest, and incremental expenses of $2,961.41. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, part III(C)(5).

Plaintiffs also request an award of $3,000 each (totaling $9,000) pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiff supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with NMC in general.  Plaintiffs spent significant time representing the Settlement Class.  Hashem Decl. ¶12, Huang Decl. ¶12, and Abdul Ahad Decl. ¶12.  Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. Fee Brief, part V.

**3.      The Parties Have No Other Agreements Besides A Standard Blow Out Agreement**

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement the Parties entered into gives Manghat the right to terminate the Settlement if Settlement Class Members holding more than a certain number of damaged shares opt out. Plaintiffs disclosed the agreement and its essential terms in the Stipulation (¶10.5) and in Plaintiffs' preliminary approval brief (Dkt. No. 100-1 at 12-13). It is only the supplemental agreement's exact terms—specifically, the number of shares that will trigger the right to terminate—that the parties have not disclosed to Settlement Class Members. This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

**4.    There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably**

The Plan of Allocation will determine how the money is distributed between Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class member based on their recognized losses resulting from the stock price declines between December 17, 2019 and March 10, 2020 in response to the corrective disclosures. Co-Lead Counsel prepared the proposed Plan of Allocation in consultation with Plaintiffs' damages expert, and the Plan rationally reflects compensable damages suffered by Settlement Class Members. It thus tracks Plaintiffs' theory of the case. The Plan of Allocation will determine Plaintiffs' recoveries just like every other Settlement Class Member, so they receive no preferential treatment.

**G.    The Court Should Approve the Plan of Allocation**

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation outlined therein. Plaintiffs now request that the Court grant final approval of the Plan of Allocation for the purpose of administering the Settlement. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold NMC securities. Plaintiffs engaged a damages expert to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Rosen Decl. ¶17. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon

22

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognize loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Rosen Decl. ¶18.

There have been no objections and no exclusion requests from any potential Settlement Class Members, further supporting approval of the Plan of Allocation. Craig Decl. ¶¶12-13; Rosen Decl. ¶14. The Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## V. NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement, in the manner and form directed and preliminarily approved by the Court. Plaintiffs, through Co-Lead Counsel and the Claims Administrator, mailed 1,721 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Craig Decl. ¶4. In addition, three nominees were emailed the Summary Notice, and one nominee notified the Claims Administrator that they emailed 251 of their customers to notify them of this Settlement and provided them with a direct link to the Notice Packet on the settlement webpage. *Id.* ¶5. In total, 1,972 potential Settlement Class Members were notified either by mailed Postcard Notice, emailed Summary Notice, or emailed a direct

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

link to the Notice Packet. *Id.* ¶7. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶10. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of expenses that Co-Lead Counsel would seek; (5) Co-Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

**VI.   CONCLUSION**

For the foregoing reasons, the Court should: (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: March 8, 2022                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        _/s/ Laurence M. Rosen_
                                        Laurence M. Rosen (SBN 219683)
                                        355 South Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
                                        Email: lrosen@rosenlegal.com

                                        Nicholas D. Manningham (_pro hac vice_)
                                        275 Madison Avenue, 40th Floor
                                        New York, New York 10016
                                        Telephone: (212) 686-1060
                                        Facsimile: (212) 202-3827
                                        Email: nmanningham@rosenlegal.com

                                        **POMERANTZ LLP**

                                        Joshua B. Silverman (_pro hac vice_)
                                        10 South La Salle Street, Suite 3505
                                        Chicago, Illinois 60603
                                        Telephone: (312) 377-1181
                                        Facsimile: (312) 377-1184
                                        Email: jbsilverman@pomlaw.com

                                        _Co-Lead Counsel for Plaintiffs_

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2022, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Lauren M. Rosen*
Laurence M. Rosen

26