Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>Defendants. | No. 2:20-cv-02303-CBM(MAAx)<br><br>CLASS ACTION<br><br>**DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** |

1

DECLARATION OF LAURENCE M. ROSEN

I, Laurence M. Rosen, declare as follows:

1.      I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen"), Co-Lead Counsel for Plaintiffs in this Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this declaration in support of Plaintiffs' Motions for: (1) final approval of the proposed Settlement of this Action; and (2) award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, filed concurrently herewith.[1] This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Co-Lead Counsel's request for reimbursement of expenses is reasonable and should be approved by the Court.

3.      The Settlement creates a gross settlement fund of $190,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons who purchased or otherwise acquired NMC Health PLC ("NMC" or the "Company") American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive (the "Class Period").[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement dated November 2, 2021 ("Settlement" or "Stipulation") (Dkt. No. 100-2).

[2] Excluded from the Settlement Class are all: (i) Defendants; (ii) current and former officers and directors of NMC and any Manghat Released Parties; (iii) the Persons expressly excluded from the definition of Settlement Class in paragraph 1.31 of the Settlement Stipulation; (iv) the respective spouses, children, or parents of any Person excluded under subparagraphs, (i) through (iii) of this paragraph; (v) any Person more than 5% owned or directly or indirectly controlled by any Person excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a Person is a beneficiary or of which any Person is related or affiliated to a beneficiary or a trustee; (vi) the respective heirs, successors, trustees and assigns of any Person excluded under

DECLARATION OF LAURENCE M. ROSEN

4.      The memoranda in support of Plaintiffs' motions, filed herewith, set out the complete narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.      Chris Hashem commenced this Action by filing an initial complaint on March 10, 2020, alleging violations of the Exchange Act against Defendants. Dkt. No. 1.

6.      On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP ("Pomerantz") and Rosen as Co-Lead Counsel. Dkt. No. 21.

7.      Plaintiffs served Manghat on April 2, 2021.  Dkt. No. 47.

8.      Given the relatively small dollar amounts involved, and the serious risks to establishing jurisdiction and liability against Manghat, Co-Lead Counsel and Manghat's counsel promptly began to discuss settlement after Manghat's service. After dozens of communications over several months, they arrived at the Manghat Settlement.

9.      The Parties entered into an agreement to settle the Action on November 2, 2021. Dkt. No. 100-2.

10.      On December 8, 2021, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. Dkt. No. 112.

## II.      OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

11.      Counsel for the Parties began settlement discussions shortly after Plaintiffs served Manghat. The Parties discussed settlement even as Plaintiffs researched and filed an amended complaint. During settlement discussions, Co-Lead Counsel kept a close eye on NMC's and Manghat's evolving financial situation, which

---

paragraphs (i) through (v); and (vii) those Persons who file valid and timely requests for exclusion in accordance with this Preliminary Approval Order.

was a key factor in the settlement negotiations. After several months of arm's-length negotiations, the Parties finally entered the Stipulation.

12.     In the opinion of the team of lawyers at Rosen and Pomerantz who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation against Manghat under circumstances where a more favorable outcome is less likely, while at the same time leaving open the possibility of an even more substantial recovery against the remaining defendants. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

13.     As set forth herein and in the accompanying memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), the Manghat Settlement alone recovers approximately 9.5% of the estimated total damages of just under $2 million. A guaranteed cash settlement that provides a substantial benefit in the face of numerous challenges—including establishing personal jurisdiction over Manghat and defeating any motion to dismiss—is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

14.     The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement. Pursuant to the Notice, exclusion requests and objections to the Settlement must be received by March 15, 2022. To date, neither the Claims Administrator nor Co-Lead Counsel have received any requests for exclusion or objections to any aspect of the Settlement. *See* Declaration of Margery Craig Concerning (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Craig

DECLARATION OF LAURENCE M. ROSEN

Decl.") ¶¶12-13.[3] If the Claims Administrator or Co-Lead Counsel receives any objection or exclusion request, Plaintiffs will address them in their reply papers in support of final approval.

## III.   NOTICE PROCEDURES

15.     At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on January 3, 2022, Strategic Claims Services ("SCS" or "Claims Administrator") published the Summary Notice on the *Globe Newswire*. Craig Decl. ¶8. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on December 17, 2021. *Id.* ¶10.

16.     To date, SCS has mailed 1,721 copies of the Postcard Notice to potential Settlement Class members. *Id.* ¶4. In addition, three nominees were emailed the Summary Notice, and one nominee notified the Claims Administrator that they emailed 251 of their customers to notify them of this Settlement and provided them with a direct link to the Notice Packet on the settlement webpage. *Id.* ¶5. In total, 1,972 potential Settlement Class Members were notified either by mailed Postcard Notice, emailed Summary Notice, or emailed a direct link to the Notice Packet. *Id.* ¶7.

## IV.   PLAN OF ALLOCATION

17.     Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 100-2, Ex. A-1 (proposed Notice) at 12-23. Co-Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their recoverable damages, and it closely tracks Plaintiffs' theory of the case.

---

[3] A true and correct copy of the Craig Decl. is attached hereto as Exhibit 1.

DECLARATION OF LAURENCE M. ROSEN

18.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

19.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

20.    The proposed Settlement is the culmination of careful, economical litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Co-Lead Counsel had thoroughly investigated the case against Manghat and consulted with multiple experts about the range of damages and the ADS structure.

21.    Co-Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other factors related to collectability of any settlement or judgment. Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation. Co-Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

DECLARATION OF LAURENCE M. ROSEN

22.    Although Co-Lead Counsel believe Plaintiffs' claims against Manghat are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat any motion to dismiss. Manghat insists he is not subject to the personal jurisdiction of this Court, and Plaintiffs may not be able to establish sufficient contacts to support personal jurisdiction.  Moreover, as Manghat claims to have been unaware of the fraudulent conduct, Plaintiffs may have difficulty establishing his scienter, especially because Defendants Shetty and Manghat each contend that the other was the chief perpetrator of the scheme. Although Plaintiffs believe they have viable arguments, there is no assurance that their claims against Manghat would be sustained.

23.    Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency. Plaintiffs would have had to hire an expert economist to conduct an event study showing the price reaction of NMC ADSs to new, company-specific material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive.

24.    Discovery would also be costly and time consuming. Plaintiffs would need to engage in fact discovery, requiring review of thousands of documents and deposing Manghat, among others. Further, since the Class Period began in 2016 and depositions would not start until at least 2022, it is possible that evidence could be lost because as time passes memories fade, making it a challenge to obtain usable deposition or in-person testimony.

25.    At the close of merits discovery, the parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other issues as well. Defendants, including Manghat, would present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud.

7

DECLARATION OF LAURENCE M. ROSEN

26.    Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## VI.    THE FEE APPLICATION IS FAIR AND REASONABLE

27.    The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $10,000. Craig Decl., Exs. A, C, and D. As set forth in the memorandum in support of Plaintiff's motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiff, filed herewith ("Fee Brief"), one third of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here.

28.    Co-Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Co-Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

29.    Co-Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

30.    The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 618.76 hours. A listing of the professionals at Rosen and Pomerantz who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") ¶4, and the Declaration of Joshua B. Silverman in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Silverman Fee Decl.") ¶4. A true and correct copy of the Rosen Fee Decl. is attached hereto as **Exhibit 2** and

DECLARATION OF LAURENCE M. ROSEN

a true and correct copy of the Silverman Fee Decl. is attached hereto as **Exhibit 3**. The total value of the services performed in this case by Rosen and Pomerantz, based upon our current rates, is $392,400.40.

31.     If Co-Lead Counsel's request of one third of the Settlement as attorneys' fees is granted, Co-Lead Counsel would receive a fee of $63,333. This fee award would represent a negative lodestar multiplier of approximately 0.16. This is significantly lower than the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

32.     As reflected in each firm's resume, Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. *See* Dkt. No. 11-5 (Rosen Resume); Dkt. No. 11-6 (Pomerantz Resume).

33.     Moreover, in addition to the time expended to date, Co-Lead Counsel will expend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution.

34.     Co-Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

35.     Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiff further describes in the Fee Approval Brief the risks Lead Counsel assumed and the time and expenses it incurred without any payment.

36.     From the outset, Co-Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Co-Lead Counsel has received no compensation during the course of this litigation, pending since March 2020.

DECLARATION OF LAURENCE M. ROSEN

37.    The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

38.    As a result of persistent efforts in the face of substantial risks and uncertainties, Co-Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Co-Lead Counsels' efforts and the favorable result achieved, I believe that a 33% fee is reasonable and that the Court should approve it.

39.    As noted above, noted above, 1,972 potential Settlement Class Members received notice of the Settlement. Craig Decl. ¶6.

40.    The deadline for objections is March 15, 2022. To date, neither Co-Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Craig Decl. ¶12.

41.    The deadline for exclusion requests is March 15, 2022. To date, neither Co-Lead Counsel nor the Claims Administrator has received any requests for exclusion from the settlement. Craig Decl. ¶11.

**VI.    REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE**

42.    Excluding expenses previously reimbursed in connection with the Tompkins Settlement, Co-Lead Counsel have incurred expenses in the amount of $2,961.41 while prosecuting the Action. These expenses, in the aggregate, are less than the $10,000 expense request that was fully disclosed in the Postcard Notice, Summary Notice, and Notice. They were advanced by Co-Lead Counsel and were reasonable and necessary for the prosecution of the Action.

43.    From the beginning of the case, Co-Lead Counsel was aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Co-Lead Counsel was motivated to, and

DECLARATION OF LAURENCE M. ROSEN

did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

44. A listing of the expenses incurred by Rosen compiled from the regularly maintained records are set forth in the Rosen Fee Decl., ¶6, and a listing of the expenses incurred by Pomerantz compiled from the regularly maintained records are set forth in the Silverman Fee Decl., ¶6. The expenses incurred by Rosen pertaining to this case are reflected in Rosen's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

45. Litigation expenses for which Co-Lead Counsel seeks reimbursement included travel expenses, administrative costs, and other expenses that were necessary for the prosecution of this Action. Each of these incremental expenses were reasonable and necessary for the successful continued prosecution of this case.

46. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

**VII. A NOMINAL AWARD TO PLAINTIFFS IS WARRANTED**

47. Plaintiffs seek an award of $3,000 each for their time and effort oversseing this action pursuant to the PSLRA. The declarations of each plaintiff, attached hereto as **Exhibits 4-6**, detail the work Plaintiffs completed on behalf of the Settlement Class, including filing the complaint, filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront.

48. As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the Class.

DECLARATION OF LAURENCE M. ROSEN

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2022.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

DECLARATION OF LAURENCE M. ROSEN

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2022, I electronically filed the foregoing Declaration of Laurence M. Rosen in Support of Plaintiffs' Motions for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

13

DECLARATION OF LAURENCE M. ROSEN