UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM,<br><br>　　　　Plaintiff,<br>v.<br><br>NMC HEALTH PLC et al,<br><br>　　　　Defendants. | Case No.: 2:20-cv-02303-CBM-MAA<br><br>**ORDER RE: MOTION FOR ATTORNEY'S FEES AND EXPENSES AND AWARD TO PLAINTIFFS** (120) . |

The matter before the Court is Co-Lead Plaintiffs Chris Hashem, Shengming Huang, and Abdul Razed Abdul Ahad's ("Plaintiffs") Motion for Attorney's Fees, Expenses, and Award to Plaintiffs (the "Motion") brought pursuant to Federal Rule of Civil Procedure 23(h). (Mot. – Dkt. No. 121.) The Motion is unopposed.

## I.　BACKGROUND

Plaintiffs Chris Hashem, Shengming Huang, and Abdul Razed Abdul Ahad represent a putative class of investors who purchase or otherwise acquired NMC American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020. (SAC – Dkt. No. 102.) Plaintiffs filed the Second Amended Complaint ("SAC") — the operative Complaint — alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants NMC Health,

1

Inc., Prasanth Manghat, H.J. Mark Tompkins, Khalifa Bin Butti, Prashanth Shenoy, and B.R. Shetty. (*Id.*) On December 8, 2021, the Court approved a settlement amount of $120,000 between Plaintiffs and Defendant Tompkins, but Plaintiffs deferred seeking an attorney's fees or service award until settlements were reached with other Defendants. (Order – Dkt. No. 113.)

Plaintiffs and Defendant Manghat reached a settlement in which Defendant Manghat agreed to pay Plaintiffs $190,000 in cash. On December 8, 2021, the Court preliminary approved the settlement on December 8, 2021. (Order – Dkt. No. 112.) On March 8, 2022, Plaintiffs concurrently filed a Motion for Final Settlement Approval and the present Motion for Attorney's Fees in which they request an award of attorney's fees and costs and an incentive award for each of the three named Plaintiffs. (Mots. – Dkt. Nos. 118, 120.)

## II. DISCUSSION

Plaintiffs' Counsel request an award of attorney's fees, costs, and service awards to each of the three named Plaintiffs.

**1. Attorney's Fees**

Plaintiffs' co-lead counsel request an award of attorney's fees of $63,333 (one-third of the Settlement Amount). (Mot. – Dkt. No. 120.)

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Fee provisions in class-action settlements must be reasonable. *In re Bluetooth Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 942–43. The court must review fee requests with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must

> assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotations and citations omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees should equal 25-percent of the settlement, although courts may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33-percent fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33-percent fee award).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g., Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to

take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

### 1.1. Percentage Award

The Court finds that the fee award is appropriate as a percentage of the common fund given the results obtained (approximately 9.5% of the estimated total damages), the facts of the case, the lack of objections to the settlement, the risk of litigating the case, and counsel's litigating the case on a contingency basis. *Cf. e.g., Raziano v. Albertson's LLC,* Case No. CV19-004373 JAK (ASx), 2021 WL 3473575 at *15 (C.D. Cal. Feb. 8, 2021) (approving attorney's fees equal to one-third of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

### 1.2. Lodestar Cross-Check

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Laurence Rosen of the Rosen Law Firm, P.A. declared that the hourly rates for attorneys who worked on this case range from $500–$675 for associates

1  and up to $ 925 for partners. (Rosen Decl. – Dkt. No. 122-2 at ¶¶ 4–5.) Joshua
2  Silverman of the Pomerantz LLP law firm declared that the hourly rates for
3  attorneys who worked on this case range from $415–$615 for associates, $645 for
4  counsel, and up to $920 for partners. (Silverman Decl. – Dkt. No. 122-3 at ¶¶ 4–
5  5.) These rates are consistent with those of other attorneys engaged in similar
6  litigation in this District. *See, e.g, In re Amgen Inc. Sec. Litig.*, No. CV 7-2536
7  PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving
8  hourly rates of $750–985 for partners, $500–800 for of counsel/senior counsels,
9  and $300–725 for other attorneys in securities class action); *Roberti v. OSI Sys.,*
10 *Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8,
11 2015) (in securities class action, approving hourly rates of between $525 and
12 $975). The Court thus finds that the billing rates are normal and customary (and
13 thus reasonable) for lawyers of comparable experience doing similar work.
14      Plaintiffs' lead co-counsel also declared that their firms collectively
15 dedicated 618.75 hours to this litigation, resulting in a lodestar calculation of
16 $392,400.40. (Rosen Decl. – Dkt. No. 122-2 at ¶¶ 4–5; Silverman Decl. – Dkt. No.
17 122-3 at ¶¶ 4–5.) Based on this lodestar calculation, the requested attorney's fees
18 award of $63,333 results in a negative lodestar multiplier of 0.16. (Rosen Decl. –
19 Dkt. No. 122 at ¶ 31.) The multiplier is significantly lower than the range typically
20 awarded in this District. *See e.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783
21 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers
22 that courts have allowed"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244,
23 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well
24 within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*,
25 No. 16-CV-01378-CAS (GJSx), 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6,
26 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized
27 by this Court and by other courts within the Ninth Circuit.") The Court thus finds
28 that the lodestar calculation supports an attorney's fees award of $63,333.

\* \* \*

Accordingly, the Court awards Plaintiffs' Co-lead counsel an attorney's fees award of $63,333.

### 2. Expenses

Plaintiffs' co-counsel requests an award for $2.961.41 of expenses they incurred in reaching the settlement with Defendant Manghat. (Mot. – Dkt. No. 121 at 24–25.) The Rosen Law Firm incurred $2,163.90 of expenses ($135.86 for legal research, $735.93 for court filings, copies, and messenger fees, and $1,292.11 for travel and lodging). (Rosen Decl. – Dkt. 122-2 at ¶ 6.) Pomerantz LLP incurred $797.51 of expenses ($135.43 for research and $662.08 for travel and lodging). (Silverman Decl. – Dkt. 122-3 at ¶ 6.)

The court may award Plaintiffs' counsel's reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The Court finds that Plaintiffs' counsel's expenses are reasonable and awards the $2,961.41 of expenses.

### 3. Service Awards

Plaintiffs request that each of the named Plaintiffs — Chris Hashem, Shengming Huang, and Abdul Razed Abdul Ahad — receive a service award of 3,000 ($9,000 in total). (Mot. – Dkt. No. 121 at 26–27.)

The Private Securities Litigation Reform Act ("PSLRA") permits courts to grant service awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of a class. *See* 15 U.S.C. §78u-4(a)(4). District courts

must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co*, 327 F.3d 938, 977 (9th Cir. 2003) (quotations and citations omitted). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness 958–59 (9th Cir. 2009) (citation omitted).

Here, the named Plaintiffs collectively spent approximately 80 hours on this case (30 hours each as to Mr. Hashem and Mr. Huang, and 20 hours as to Mr. Ahad), and each named Plaintiff declared that they actively participated in the case, including communicating with Plaintiffs' counsel, gathering information and evidence, and making themselves available for depositions. (Hashem Decl. – Dkt. No. 122-4, ¶ 12; Huang Decl. – Dkt. No. 122-6, ¶ 12; Ahad Decl. – Dkt. No. 122-5, ¶ 12).

Moreover, Plaintiffs did not request attorney's fees or service awards from the Tompkins Settlement and deferred their requests until settlements were reached with other Defendants. Taking both the Tompkins Settlement and the Manghat Settlement into account — which total $310,000 — the Court finds that the requested amount of $3,000 for each named Plaintiff (approximately 2.9% of the total settlement fund) is justified and comparable to service awards throughout the Ninth Circuit. *See, e.g., Cilluffo v. Central Refrigerated Services, Inc.*, Case No. 12-cv-00886 VAP (OPx) (C.D. Cal. April 3, 2018) (approving service awards totaling 2.7% of the total settlement fund); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and finding that a service award of $5,000 is presumptively reasonable); *Faigman v. AT & T Mobility LLC*, Case No. C06–04622 MHP, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011)

(approving service awards of $3,333.33 for each of three class representatives); *Clesceri v. Beach City Investigations & Protective Services, Inc.*, Case No. CV–10–3873–JST (RZx), 2011 WL 320998, *2 (C.D. Cal. Jan. 27, 2011) (preliminarily approving service awards of $3,000 to two named plaintiffs); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646–47 (S.D. Cal.2011) (approving service awards of $4,000 for one named plaintiff and $2,000 for another).

Accordingly, the Court grants the Motion for service awards and awards $3,000 to each of the three named Plaintiffs.

### III. CONCLUSION

Accordingly, the Court finds that the requested awards are reasonable, **GRANTS** the Motion and awards $63,333 for attorney's fees, $2,961.41 for expenses, and a $9,000 service award ($3,000 to each of the three named plaintiffs).

**IT IS SO ORDERED.**

DATED: 4/8/2022

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE