Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY,<br><br>Defendants. | No. 2:20-cv-02303-CBM-MAA<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: August 16, 2022<br>Time: 8:00 a.m.<br>Courtroom: 8B<br>Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND .........................................................................................3

      A.   Plaintiffs' Allegations...................................................................3

      B.   Procedural History.........................................................................4

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......5

      A.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Final Approval of the Settlement ...................................................................6

           1.   Plaintiffs Faced the Risk of Dismissal .......................................7

           2.   Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial ........................8

           3.   Plaintiffs Faced Additional Risks of Continued Litigation ........9

      B.   The Amount Obtained in Settlement Supports Final Approval..........11

      C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval .....................................................................13

      D.   The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ...............................15

      E.   The Reaction of the Settlement Class Supports Approval...............17

      F.   The Settlement Meets the Remaining Rule 23(e)(2) Factors.............18

           1.   The Proposed Method for Distributing Relief is Effective.......18

           2.   The Proposed Award of Attorneys' Fees is Appropriate .........18

i

3.    The Parties Have No Other Agreements Besides a Standard Opt-Out Agreement ............................................................................19

4.    The Plan of Allocation Treats Class Members Equitably ........19

G.    The Court Should Approve the Plan of Allocation ............................20

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..21

A.    The Settlement Class Satisfies All Requirements of Rule 23(a) ........22

B.    The Settlement Class Satisfies all Requirements of Rule 23(b)(3).....23

V.    NOTICE OF THE SETTLEMENT SATISFIED DUE PROCESS ..............24

VI.    CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................23

*Barani v. Wells Fargo Bank, N.A.*,
   No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014)............24

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ..................................................................................8

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...................................................................23

*Chambers v. Whirlpool Corp.*,
   2016 WL 5922456 (C.D. Cal. 2016) ..........................................................9

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......
   .................................................................................................. 9, 19, 21

*Christine Asia Co. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)
   .............................................................................................................16

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................24

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...................................................................7

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ..................................................................................5

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..................14

iii

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 6, 11, 17

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...............6

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..................................................................... 10, 12

*IBEW v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..........................................................12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................24

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................................................10

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................10

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009)..........................................................................23

*In re Critical Path, Inc.*, No. C,
   01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ......................14

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................20

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......... *passim*

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................................25

*In re LJ Int'l, Inc. Sec. Litig.*,
   No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)..8, 12

iv

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................... *passim*

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010) ....................................................10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 5, 17, 20

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................10

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................16

*In re Petrobras Securities Litigation*,
No. 1:14-cv-09662 (S.D.N.Y. Feb. 23, 2018) ......................................16

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...............25

*In re Portal Software, Inc. Sec. Litig.*,
No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...............15

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................10

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..............17

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017) .........
................................................................................................ 21, 22

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...............................................................5

*In re Toronto-Dominion Bank Securities Litigation*,
   No. 17-cv-1665 (Oct. 3, 2019) ...........................................................16

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ..................22

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................20

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .............14

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ........13

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) .............................................................19

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .............................................................14

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ..................................................6

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
   No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .........
   .................................................................................... 21, 23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...........................................................11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ..........................................................6, 11

vi

*Pace v. Quintanilla*,
No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........15

*Quiruz v. Specialty Commodities, Inc.*,
No. 17-CV-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)..............15

*Ramsey v. MRV Commc'ns Inc.*,
No. CV0804561GAFRCX, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ........8

*Rieckborn v. Velti PLC*,
No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)...............14

*Riker v. Gibbons*,
No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ...... 15, 20

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..........................................................................10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..............................................................................25

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ............6

*Tadepalli v. Uber Techs., Inc.*,
No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ............14

*Thomas v. MagnaChip Semiconductor Corp.*,
No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018)..............23

*Thorpe v. Walter Inv. Mgmt. Corp.*,
No. 1:14-CV-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..........16

*Tom v. Com Dev USA, LLC*,
No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017)...........6

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .............................................................................5, 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND
FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........15

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .................................................................................8

**<u>Statutes</u>**

15 U.S.C. §78u-4(a)(4) .............................................................................................18

15 U.S.C. § 78u-4(a)(7) ...........................................................................................25

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................... *passim*

**<u>Other Authorities</u>**

Cornerstone Research, *Securities Class Action Settlements: 2020 Review and
  Analysis* at Appendix 2 (2021) ............................................................................13

viii

Co-Lead Plaintiffs Chris Hashem, Shengming Huang, and Abdul Razeq Abdul Ahad ("Plaintiffs") submit this memorandum in support of their motion for final approval of the Settlement with Defendant B.R. Shetty ("Shetty") and Plan of Allocation, and final certification of the Settlement Class.[1]

# I.   INTRODUCTION

Plaintiffs and Shetty settled this securities class action ("Shetty Settlement") for $300,000 in cash. The Settlement is a fair, reasonable, and adequate result, recovering approximately 15% of the estimated damages (and in conjunction with the $120,000 Tompkins Settlement and $190,000 Manghat Settlement, over 30.5%) despite significant risks. Plaintiffs now seek final approval of the Shetty Settlement. The Shetty Settlement is the product of arm's-length negotiations between experienced in securities class action practitioners. It represents tangible and significant benefits for the Settlement Class despite several obstacles that Plaintiffs faced, including the amount of potentially recoverable damages, the risk that Shetty would secure dismissal for lack of jurisdiction or failure to state a claim, the risks that Plaintiffs could not certify a class or prove that Shetty made false statements with scienter, and the risks or prosecuting this litigation through trial and appeals.

The terms of the Settlement are set forth in the Stipulation. In the Court's April 8, 2022 Order ("Preliminary Approval Order"), ECF No. 132, the Court

_____

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement dated February 17, 2022 ("Settlement" or "Stipulation") (ECF No. 117-2). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig, attached as Exhibit 1 to the Rosen Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expense and Award to Plaintiffs, filed herewith.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND
FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA

preliminarily approved the Settlement, preliminarily certified the Class for purposes of effectuating the Settlement, and directed that notice be disseminated to potential Settlement Class Members.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e), focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Here, the Settlement is fair, reasonable, and adequate. Plaintiffs believe their case is strong, but they determined that executing the Settlement was fair and reasonable, and the amount adequate, given the risks inherent in litigation. The risks inherent in further litigation against Shetty are significant. These risks include uncertainty about whether Plaintiffs will be able to prove that any challenged statement was false or misleading and that Shetty acted with the requested state of mind, that the alleged misstatements and omissions caused the Settlement Class any damages, and the amount of damages, if any.  While Plaintiffs believe they have viable arguments, there is no assurance that their claims against Shetty would be sustained.  The Court previously dismissed Plaintiffs' claims against Shetty and could do so again.  If claims against Shetty survived a motion to dismiss, the documentary and expert evidence that the parties may present at trial or summary judgment would be complex, may be susceptible to different interpretations, and might not be convincing to the jury.  A jury, or this Court at summary judgment, may find in favor of Shetty on the merits, or on the amount of damages as well as the method by which those damages are calculated. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class.

Through protracted negotiations with Shetty, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The $300,000 cash

Settlement eliminates the risks of continued litigation against Shetty and provides a beneficial cash recovery for the Settlement Class. To date, no Settlement Class Member has objected to the Settlement. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed plan of allocation is fair, reasonable, and adequate. The proposed plan of allocation is the same plan the Court previously approved with the Tompkins and Manghat Settlements. ECF Nos. 113 at ¶12; 133 at ¶11. Co-Lead Counsel developed the proposed plan of allocation in consultation with Plaintiffs' damages expert and the Claims Administrator, and no Class Member has objected to it. The proposed Plan of Allocation comports with applicable legal principles and does not favor Plaintiffs over other members of the Settlement Class. The Court should also approve the Plan of Allocation.

## II.   BACKGROUND

### A.   Plaintiffs' Allegations

In their Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), Plaintiffs alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Shetty and Defendants NMC Health, Inc. ("NMC" or "Company"), H.J. Mark Tompkins, Khalifa Bin Butti, Prashanth Shenoy, and Prasanth Manghat ("Defendants"), on behalf of a putative class of investors who purchased or otherwise acquired NMC American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive (the "Class Period"). The Amended Complaint alleges that Defendants made false and misleading statements and omissions concerning the Company's debt disclosures, related party transactions, and internal controls and risk management. Plaintiffs allege that they and the members of the Settlement Class

suffered damages because they purchased NMC ADSs at inflated prices and when the truth came out, the inflation dissipated causing the stock price to fall significantly. Plaintiffs allege that throughout the Class Period, Defendants falsified financial statements by hiding billions of dollars' worth of debt and failed to disclose significant related party transactions and insider deals with some of the Company's controlling shareholders and senior executives. The truth was gradually revealed to investors through a series of partial corrective disclosures starting on December 17, 2019. On that day, Muddy Waters Capital LLC published a report disclosing that NMC had misled investors and failed to disclose: (i) its lack of internal controls; (ii) (de facto) related party transactions; (iii) its true debt burden; (iv) its true cash-on-hand and asset values; and (v) its use of reverse factoring. Then, on March 10, 2020, the *Financial Times* published an article revealing that NMC had discovered almost $3 billion of hidden, undisclosed debt. Plaintiffs allege that, on this news, the Company's stock price fell sharply, harming investors.

**B.    Procedural History**

This Action was filed on March 10, 2020 against NMC and certain of its officers and directors. On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel.  ECF No. 21.

Plaintiffs and Shetty filed a joint stipulation on March 25, 2021 effecting service of process upon Shetty (*see* ECF No. 35), and Plaintiffs have since served all other individual defendants. Claims against NMC are stayed due to its bankruptcy, and Plaintiffs do not expect any recovery to be possible from that entity.

On August 4, 2021, Shetty filed a motion to dismiss the claims against him. ECF No. 70.  After the Parties fully briefed the motion, the Court entered an order on November 1, 2021, granting Shetty's motion to dismiss with leave to amend.

ECF No. 94. On November 12, 2021, Plaintiffs filed the Second Amended Complaint against Shetty and other Defendants. ECF No. 102. Given the relatively small dollar amounts involved, and the potential litigation risks, Co-Lead Counsel and Shetty's counsel began to discuss settlement after Plaintiffs filed the Second Amended Complaint. After numerous communications over the subsequent months, they arrived at the Shetty Settlement.

## III. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits"). Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of

counsel; the presence of a government participant[2]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, all of these factors weigh in favor of final approval.

### A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where, as here, the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Even among class actions, securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In this Action, Co-Lead Counsel and Plaintiffs carefully evaluated

---

[2] Here there was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

the merits of this case in light of all of the risks and potential weaknesses before Plaintiffs entered into the Shetty Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Settlement Class in continuing this action against Shetty. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282-83 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class ultimate recovery be less than the proposed settlement).

### 1. Plaintiffs Faced the Risk of Dismissal

Class action plaintiffs face procedural hurdles and failing at any one stage of the litigation could defeat the class action. While Plaintiffs believe the Second Amended Complaint addressed deficiencies the Court previously found in the Amended Complaint, there is no guarantee the Court would agree after an anticipated motion to dismiss. The PSLRA imposes heightened pleading burdens on complaints alleging securities fraud that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Shetty will continue to insist, among other things, that Plaintiffs cannot plead a connection between Shetty and the NMC ADR program and that Plaintiffs cannot prove materiality, reliance on Shetty's alleged misrepresentations, and loss causation. Moreover, as Shetty claims he was unaware of the fraudulent conduct, Plaintiffs may have difficulty establishing his scienter, especially because Defendants Shetty and Manghat each contend that the other was the chief perpetrator of the scheme. Rosen Decl. ¶25.

To be successful in continued litigation, Plaintiffs must show that Shetty made

7

false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter is difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Especially where, as here, Plaintiffs were faced with alleging scienter through circumstantial evidence—an especially difficult task. *Ramsey v. MRV Commc'ns Inc.*, No. CV0804561GAFRCX, 2010 WL 11596641, at *3 (C.D. Cal. Nov. 16, 2010). Moreover, Shetty already succeeded in obtaining a dismissal of the Amended Complaint.  ECF No. 94. While Plaintiffs believe that they addressed the issues raised in the Court's November 1, 2021 dismissal order in the Second Amended Complaint, the risk that Shetty could once again succeed on a motion to dismiss is ever-present. The Settlement removes this uncertainty, and thus the risk of dismissal supports approval of the Settlement.

### 2. Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial

Even if Plaintiffs defeated the threatened motion to dismiss, they would still need to obtain class certification, which would be complex and expensive under the circumstances here. In any securities fraud class action, a plaintiff faces significant challenges in certifying a class and maintaining certification throughout trial. One of the more difficult elements to satisfy is showing that class-wide issues—such as reliance on Defendants' misrepresentations—predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiffs would need to prove that NMC ADS securities traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into NMC's ADS price.

To meet the standards for the *Basic* presumption, Plaintiffs need an expert economist to conduct an event study showing the price reaction of NMC ADSs to new, company-specific material information, prepare a report, and testify at a

8

deposition on the issue of market efficiency. Such well-qualified experts are expensive. Rosen Decl. ¶26. Shetty would likely present his own expert report and testimony to oppose class certification and contest the efficiency of the market for NMC ADSs and whether the fraud impacted the price of NMC ADSs. In addition to briefing the certification motion, Plaintiffs would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiffs were successful in obtaining class certification, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). Thus, as in any class action suit, there was a risk that even if the class was certified, it would be modified or decertified prior to a decision on the merits. *See Chambers v. Whirlpool Corp.*, 2016 WL 5922456, *6 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Consequently, this factor favors approving the Settlement.

### 3.    Plaintiffs Faced Additional Risks of Continued Litigation

"In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove" *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (collecting cases). This Action is no different. Even if Plaintiffs were to defeat the anticipated motion to dismiss and successfully obtain class certification, there is no question that further litigation would be risky, complex, and expensive. First, they would need to engage in fact discovery, requiring the review of thousands of documents and deposing Shetty, among others. Rosen Decl. ¶27. After merits discovery, the parties would engage in expert discovery on the questions of loss causation, damages, and perhaps other issues as well. Courts have recognized that such a "battle of experts"

is a significant litigation risk, and weights in favor of approving a settlement. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016).

Further risks also threaten a recovery absent the Settlement. Plaintiffs might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiffs might have an expert excluded, crippling their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might trim Plaintiffs' damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[3] Plaintiffs might still lose their case in this Court even after winning at trial. *See, e.g., In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for their damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict reversed). Or, they might be unable to collect on a judgment

---

[3] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

even if sustained—a real possibility here in light of the fact that most of Shetty's assets are subject to a global freezing order. *See* Exhibit 2 to Rosen Decl.

Accordingly, the likely duration and expense of further litigation against Shetty also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

## B.   The Amount Obtained in Settlement Supports Final Approval

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Just.*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Just.*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Shetty would have no reason to settle. In a factually and legally complex securities class action lawsuit, Plaintiffs cannot be sure they will be able to secure or enforce a judgment against Shetty at or near the full amount of the class-wide damages they estimate. In fact, settlements may be acceptable even if it is only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The

estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Shetty's defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs were to prevail on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.*, *Hubbard*, 688 F.3d at 716 (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that they would be unable to recover a greater amount from Shetty further down the road.

The Settlement guarantees a substantial benefit for Settlement Class Members while leaving open the possibility of an even more substantial recovery against the remaining defendants. The $300,000 Shetty Settlement alone recovers approximately 15% of the estimated total damages of just under $2 million. By itself, this settlement is well above the range of the percentage of investor losses recovered in securities class action settlements. *See Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages); *In re LJ Int'l Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (approving securities fraud class action settlement where recovery was 4.5% of maximum damages); *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities fraud class action settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

The Shetty Settlement, together with previous Tompkins and Manghat Settlements, recovers over 30.5% of Plaintiffs' estimated damages. In comparison, according to a recent review of securities class action settlements, in 2020, cases alleging damages under $2 million typically settled *in their entirety as against all*

*Defendants* for about 13% of total damages. *See* Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis* at Appendix 2, p. 18, (2021).[4] Thus, the amount the Shetty Settlement recovers for Settlement Class Members supports finding that it is fair, reasonable, and adequate.

## C.     The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

Even at this early stage of the proceeding, Plaintiffs had enough information to make an informed decision about the Shetty Settlement. Not only did Plaintiffs have the benefit of reviewing the motion to dismiss briefing and the Court's opinion on the motion, they also had the benefit of briefing in NMC Health's bankruptcy proceedings and related lawsuits. Plaintiffs also consulted with multiple experts about the range of damages, and the ADS structure.

Through these efforts, Plaintiffs and Co-Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were

---

[4] *Available at* https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf

expended on further litigation. *Id.* Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *7 (N.D. Cal. Apr. 25, 2016) (no discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

The Parties reached this settlement only after a thorough investigation into the strengths and weaknesses of the claims against Shetty and hard-fought negotiations. Thus, Plaintiffs and Co-Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Plaintiffs and Co-Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable settlement, supporting final approval.

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA

**D.      The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it results from arms'-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

Here, Plaintiffs reached the Settlement only through hard-fought negotiations. Rosen Decl. ¶40. Co-Lead Counsel also kept a close eye on NMC's evolving financial situation, which was a key factor in the settlement negotiations. As noted in Plaintiffs' preliminary approval brief, no hint of collusion exists here. There is no "clear sailing" agreement, and the Settlement was achieved only after tough negotiations between skilled counsel. Counsel on both sides are experienced and knowledgeable when it comes to litigating complex, securities class actions. The opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *Quiruz v. Specialty Commodities, Inc.*, No. 17-CV-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020).

Rosen's and Pomerantz's experience and reputation supported Co-Lead Counsel credibly to threaten further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Numerous courts have recognized that Rosen "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant

15

expert involvement" to secure eve-of-trial settlement); *see also Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (approving the largest ever settlement in a case brought by investors of a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Numerous courts have also found that Pomerantz has "a reputation for zealous advocacy in securities class actions." *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-CV-20880-UU, 2016 WL 10518902, at *9 (S.D. Fla. Oct. 17, 2016); *see also In re Petrobras Securities Litigation,* No. 1:14-cv-09662 (S.D.N.Y. Feb. 23, 2018) ("[T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.") and on Jun. 25, 2018 ("[T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery"); *In re Toronto-Dominion Bank Securities Litigation*, No. 17-cv-1665 (Oct. 3, 2019) ("This settlement appears to have been obtained through the hard work of the Pomerantz firm.… It was through their efforts and not piggybacking on any other work that resulted in this settlement"). Thus, Co-Lead Counsel's experience supports approval.

In considering final approval of the Settlement the Court should give Co-Lead Counsel's views material weight. In a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the

underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9.

### E.     The Reaction of the Settlement Class Supports Approval

The absence of many objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). Here, there are no objections. Craig Decl. ¶12.

SCS mailed 1,718 copies of the Postcard Notice to potential Settlement Class Members. Craig Decl. ¶4. SCS was also informed by a nominee that it emailed 247 of its customers direct links to the Notice of Pendency and Proposed Partial Settlement of Class Action and Proof of Claim and Release Form (collectively, the "Notice Packet"). *Id*. ¶5. In total 1,965 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Notice Packet. *Id.* ¶6.

The deadline to file objections to and request exclusion from the Settlement is July 26, 2022. To date, no Settlement Class Members have objected to the Settlement or submitted a request for exclusion.[5] Craig Dec. ¶¶11-12; Rosen Decl. ¶¶43-44. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 459 (that there was only one optout supports upholding district court's approval of settlement). The lack of objections or requests for exclusion supports final approval.

---

[5] If any exclusion requests or objections are received after the date of this filing, they will be addressed on reply.

17

**F.     The Settlement Meets the Remaining Rule 23(e)(2) Factors**

**1.     The Proposed Method for Distributing Relief is Effective**

The Preliminary Approval Order established a plan to provide notice to Settlement Class Members, which Plaintiffs and the Claims Administrator duly followed. As directed in the Preliminary Approval Order, SCS mailed 1,718 Postcard Notices to potential Settlement Class Members. Craig Decl. ¶4. An additional 247 potential Settlement Class Members received emails with links to the Notice Packet. *Id*. ¶5. The Postcard Notice and Notice Packet alerted Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Notice Packet, and Preliminary Approval Order. *Id*. ¶¶2-3 (Exhibit A and C). SCS also electronically disseminated the Summary Notice on *GlobeNewswire*. *Id*. ¶8. Settlement Class Members completed a standard claim form that requests the information necessary to calculate their claim amount pursuant to the Plan of Allocation. Settlement Class Members are also able to file their claims electronically through the Settlement Website.

**2.     The Proposed Award of Attorneys' Fees is Appropriate**

As discussed in the Fee Brief, Co-Lead Counsel seek an award of attorneys' fees of one-third of the Settlement Amount, plus interest, and incremental expenses of $100,000. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, Section III(C)(5).

Plaintiffs also request an award of $3,000 each (totaling $9,000) pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs supervised and engaged with Co-Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments

18

in this case and with NMC in general. Plaintiffs spent significant time representing the Settlement Class. Hashem Decl. ¶¶7, 12 Huang Decl. ¶¶7, 12, and Abdul Ahad Decl. ¶¶7, 12, Exhibits 5-7 to Rosen Decl. Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. Fee Brief, Section V.

### 3. The Parties Have No Other Agreements Besides a Standard Opt-Out Agreement

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (¶10.5) and in Plaintiffs' preliminary approval brief (ECF No. 117-1 at 12-13), the Parties entered into a Supplemental Agreement that gives Shetty the right to terminate the Settlement if Settlement Class Members holding more than a certain number of damaged shares opt out. Only the supplemental agreement's exact terms—specifically, the number of shares that will trigger the right to terminate—is not disclosed to Settlement Class Members. This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

### 4. The Plan of Allocation Treats Class Members Equitably

The Plan of Allocation will determine how the Settlement Fund is distributed between Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class Member based on their recognized losses resulting from the stock price declines during the Settlement Class Period in response to the corrective disclosures. This type of distribution is indicative of equal treatment amongst the Class Members. *See Cheng Jiangchen*, 2019 WL 5173771, at *7 (holding that the *pro rata* distribution plan demonstrated "no significant indication of preferential treatment"). Moreover, Co-Lead Counsel prepared the proposed Plan of Allocation in consultation with Plaintiffs' damages expert, and the Plan rationally reflects

19

compensable damages Settlement Class Members suffered. It thus tracks Plaintiffs' theory of the case. The Plan of Allocation will determine Plaintiffs' recoveries just like every other Settlement Class Member, so they receive no preferential treatment.

## G. The Court Should Approve the Plan of Allocation

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation. The Court also previously approved the Plan of Allocation with the prior settlements in this Action. Plaintiffs now request that the Court grant final approval of the Plan of Allocation to administer the Settlement. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold NMC securities. Plaintiffs' damages expert assisted in developing the plan to allocate the Settlement proceeds among Claimants to reimburse Settlement Class Members fairly and reasonably. Rosen Decl. ¶19. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-

CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also Cheng Jiangchen*, 2019 WL 5173771, at *8 (deeming a plan of allocation "fair, reasonable and adequate" where claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on an out-of-pocket measure of damages). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognized loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Rosen Decl. ¶20. No objections or exclusion requests have been received, further supporting approval of the Plan of Allocation. Craig Decl. ¶¶11-12; Rosen Decl. ¶¶43-44. The Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. ECF No. 132 ¶¶2-3. The Parties stipulated to the certification of the Settlement Class only for settlement purposes. Stipulation ¶9.1. Plaintiffs request that the Court finally certify the Settlement Class defined in the Stipulation, and conditionally certified in the Preliminary Approval Order.

As previewed in Plaintiffs' brief in support of preliminary approval of the Settlement (ECF No. 117-1), certification of the Settlement Class under Rule 23 is merited here. No changes have transpired since the Preliminary Approval Order, and Class treatment continues to provide benefits to the Settlement Class. Moreover, Courts in the Ninth Circuit routinely certify class actions alleging securities fraud. *See*, *e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010). Thus, as the proposed Settlement Class meets all the requirements of Rules 23(a) and

23(b)(3), the Court should certify the Settlement Class for settlement purposes.

## A. The Settlement Class Satisfies All Requirements of Rule 23(a)

First, the Settlement Class is sufficiently numerous as "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6. "Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks." *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010). Here, NMC ADSs had an aggregate volume of 1.6 million over the Settlement Class Period. Plaintiffs estimate that there were hundreds of thousands of damaged shares. Additionally, there are likely hundreds of beneficial holders of NMC ADSs who are geographically dispersed, making joinder of all Class Members impracticable.

Second, the conduct alleged in the Second Amended Complaint was common to all Class Members because all Settlement Class Members purchased or otherwise acquired NMC ADSs during the Settlement Class Period, at prices artificially inflated by Shetty's alleged misrepresentations, and were damaged when the truth was revealed. That is sufficient to show commonality.

Third, Plaintiffs' claims are typical of those of the rest of the Settlement Class because Plaintiffs allege that, like the other members of the Settlement Class, they purchased NMC ADSs at prices that were inflated because Shetty, in violation of the federal securities laws, made false and materially misleading statements and omissions during the Settlement Class Period. *See* ECF No. 11-2 (Plaintiffs' PSLRA certifications). That is sufficient to show typicality.

Fourth, Plaintiffs are adequate representatives of the Settlement Class, as no evidence exists of any conflicts of interest between Plaintiffs and the other Settlement Class Members. *Silver Wheaton*, 2017 WL 2039171 at *7-8. Rosen and Pomerantz are experienced in prosecuting similar securities fraud class actions and

have skillfully litigated this Action through the pleadings stage. *See Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *2-3 (N.D. Cal. May 15, 2018) (approving class action settlement in a case where plaintiffs were represented by Rosen and Pomerantz). Plaintiffs and Co-Lead Counsel thus satisfy the adequacy requirement.

**B.      The Settlement Class Satisfies all Requirements of Rule 23(b)(3)**

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here. The root of the Action—whether Shetty made public misrepresentations of material facts with scienter, artificially inflating the price of securities—is the central issue and predominates over any theoretical individual issue that may arise. The common resolution of these issues supports a finding of predominance. *Semtech*, 2010 WL 11507255, at *7; *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

A class action is also the best method of resolving this Action. The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA

wrongdoing." *Id.* This Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3). The Court should finally certify the Settlement Class.

## V.   NOTICE OF THE SETTLEMENT SATISFIED DUE PROCESS

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Courts routinely find that a combination of a mailed post card directing class to a more detailed online notice sufficient to satisfy due process requirements. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).

In accordance with the Preliminary Approval Order, the Claims Administrator, under Co-Lead Counsel's supervision, mailed 1,718 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Craig Decl. ¶4. In addition, one nominee notified SCS that it emailed 247 of its customers to notify them of this Settlement and provided a direct link to the Notice Packet on the settlement webpage. *Id*. ¶5. In total, 1,965 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Notice Packet. *Id*. ¶6. SCS also electronically disseminated the Summary Notice of *GlobeNewswire*. *Id.* ¶8. SCS also published all information regarding the Settlement online on the Settlement website. *Id*. ¶10. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of expenses that Co-Lead Counsel would seek; (5) Co-Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process. *See*, *e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.   CONCLUSION

For the foregoing reasons, the Court should: (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: July 19, 2022                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        */s/ Laurence M. Rosen*
                                        Laurence M. Rosen (SBN 219683)
                                        355 South Grand Avenue, Suite 2450
                                        Los Angeles, California 90071
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
                                        Email: lrosen@rosenlegal.com

                                        **POMERANTZ LLP**
                                        Joshua B. Silverman (*pro hac vice*)
                                        Christopher P.T. Tourek (*pro hac vice*)
                                        10 South La Salle Street, Suite 3505
                                        Chicago, Illinois 60603
                                        Telephone: (312) 377-1181
                                        Facsimile: (312) 377-1184
                                        Email: jbsilverman@pomlaw.com
                                        Email: ctourek@pomlaw.com

                                        *Co-Lead Counsel for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND
FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; 2:20-cv-02303-CBM-MAA