Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HASHEM, Individually and on behalf of all others similarly situated, | No. 2:20-cv-02303-CBM(MAAx) |
| Plaintiff, | CLASS ACTION |
| v. | **DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF MOTIONS FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SHETTY; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** |
| NMC HEALTH PLC, PRASANTH MANGHAT, KHALIFA BIN BHUTTI, PRASHANTH SHENOY, H.J. MARK TOMPKINS, and B.R. SHETTY, | |
| Defendants. | |

1

I, Laurence M. Rosen, declare as follows:

1.      I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen"), Co-Lead Counsel for Plaintiffs in this Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this declaration in support of Plaintiffs' Motions for: (1) final approval of the proposed Shetty Settlement; and (2) award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, filed concurrently herewith.[1] This Declaration demonstrates why the Shetty Settlement is fair, reasonable, and adequate and warrants Court approval, as well as why the Court should approve Co-Lead Counsel's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiffs as reasonable.

3.      The Settlement creates a gross settlement fund of $300,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons who purchased or otherwise acquired NMC Health PLC ("NMC" or the "Company") American Depositary Shares ("ADSs") between March 13, 2016 and March 10, 2020, both dates inclusive (the "Class Period").[2]

_____

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement dated February 17, 2022 ("Settlement" or "Stipulation") (ECF No. 117-2).

[2] Excluded from the Settlement Class are: (i) Defendants; (ii) current and former officers and directors of NMC Health and any other Released Party defined in the Stip. at ¶ 1.26; (iii) the Persons deemed Related Parties to the Released Parties as defined in the Stip. at ¶ 1.24; (iv) the respective spouses, children, or parents of any Person excluded under subparagraphs (i) through (iii) of this paragraph; (v) any Person more than 5% owned or directly or indirectly controlled by any Person excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a Person is a beneficiary or of which any Person is related or affiliated to a beneficiary or a trustee;

2

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

4.     The memoranda in support of Plaintiffs' motions, filed herewith, set out the complete narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.     Chris Hashem commenced this Action by filing an initial complaint on March 10, 2020, alleging violations of the Exchange Act against Defendants. ECF No. 1.

6.     On September 24, 2020, this Court consolidated related actions, appointed Plaintiffs as Co-Lead Plaintiffs and approved their selection of Pomerantz LLP ("Pomerantz") and Rosen as Co-Lead Counsel. ECF No. 21.

7.     On March 25, 2021, Plaintiffs and Shetty filed a stipulation regarding service of process on Shetty. ECF No. 35.

8.     On August 4, 2021, Shetty filed a motion to dismiss. ECF No. 70. Plaintiffs filed an opposition to the motion to dismiss on September 8, 2021. ECF No. 80. Shetty filed his reply in further support of his motion to dismiss on September 22, 2021. ECF No. 81.

9.     On November 1, 2021, the Court granted Shetty's motion to dismiss, permitting Plaintiffs leave to amend. ECF No. 94.

10.     On November 12, 2021, Plaintiffs filed the Second Amended Complaint against Shetty and the other Defendants. ECF No. 102.

11.     Given the risks to protracted litigation, shortly after Plaintiffs filed the Second Amended Complaint, Plaintiffs and Shetty began to discuss a potential resolution of the claims against Shetty.

---

(vi) the respective heirs, successors, trustees and assigns of any Person excluded under paragraphs (i) through (v); and (vii) those Persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval of Settlement.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

12.    After numerous communications over the course of several months, the Shetty Settlement was reached.

13.    Plaintiffs filed the motion for preliminary approval of the Shetty Settlement on February 18, 2022. ECF No. 117. The Court preliminarily approved the Shetty Settlement on April 5, 2022, ECF No. 130, and entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement [117] on April 8, 2022. ECF No. 132.

14.    The attorneys from Rosen and Pomerantz who worked on this case believe that the Shetty Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Shetty Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation against Shetty under circumstances where a more favorable outcome is less likely, while at the same time leaving open the possibility of an even more substantial recovery against the remaining defendants. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

15.    As set forth herein and in the accompanying memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), the Shetty Settlement alone recovers approximately 15% of the estimated total damages of just under $2 million. This guaranteed cash settlement provides a substantial benefit in the face of numerous challenges—including defeating a motion to dismiss the Second Amended Complaint—is a highly favorable outcome. In light of these circumstances, and especially when the Shetty Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Shetty Settlement is fair, reasonable, and adequate.

16.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement. Pursuant to the Notice, the deadline to submit requests for exclusion requests or objections to the Settlement is July 26, 2022.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

As of July 18, 2022, neither the Claims Administrator nor Co-Lead Counsel have received any requests for exclusion or objections to any aspect of the Settlement. *See* Declaration of Margery Craig Concerning (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Craig  Decl.") ¶¶11-12.[3] If the Claims Administrator or Co-Lead Counsel receives any objection or exclusion request, Plaintiffs will address them in their reply papers in support of final approval.

**II.    NOTICE PROCEDURES**

17.    At Co-Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on May 2, 2022, Strategic Claims Services ("SCS" or "Claims Administrator") published the Summary Notice on the *GlobeNewswire*. Craig Decl. ¶8. The Claims Administrator also published the Notice of Pendency and Proposed Partial Settlement of Class Action ("Long Notice"), Proof of Claim and Release Form ("Claim Form" and with the Long Notice, the "Notice Packet"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on April 22, 2022. *Id.* ¶10.

18.    To date, SCS has mailed 1,718 copies of the Postcard Notice to potential Settlement Class Members. *Id.* ¶4. In addition, one nominee notified SCS that they emailed 247 of their customers to notify them of this Settlement and to provide them with a direct link to the Notice Packet on the settlement webpage. *Id.* ¶5. In total, 1,965 potential Settlement Class Members were notified either by mailed Postcard Notice, emailed Summary Notice, or emailed a direct link to the Notice Packet. *Id.* ¶6.

**III.    PLAN OF ALLOCATION**

19.    Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* ECF No. 117-2, Ex. A-1 (proposed Notice) at 12-23 (Page ID 2390-2401). The Plan of Allocation here in the Shetty Settlement is the same as the one included in the Tompkins and Manghat Settlements that the Court

---

[3] A true and correct copy of the Craig Decl. is attached hereto as **Exhibit 1**.

5

previously approved. Co-Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their recoverable damages, and it closely tracks Plaintiffs' theory of the case.

20.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under Co-Lead Counsel's direction, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

21.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## IV.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

22.    The proposed Settlement is the culmination of careful, economical litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Co-Lead Counsel had thoroughly investigated the case against Shetty, reviewed the Court's motion to dismiss order, and consulted with multiple experts about the range of damages and the ADS structure.

23.    Co-Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

factors related to collectability of any settlement or judgment. In fact, most of Shetty's assets are subject to a global freezing order. See *The Financial Times*, "Bank wins freezing order against NMC Health owners and executives" published on February 14, 2021, attached as **Exhibit 2**.

24.    Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation. Co-Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

25.    Although Co-Lead Counsel believe Plaintiffs' claims against Shetty are meritorious, they are wary that the Court previously granted Shetty's motion to dismiss finding that they had failed to plead market efficiency and reliance. If the Court found that the Second Amended Complaint did not cure these deficiencies, then the claims against Shetty would be dismissed. Moreover, Shetty insists that he was unaware of the alleged fraud. Defendants Shetty and Manghat each contend that the other was the chief perpetrator of the scheme. It is possible that if the Action proceeded to discovery, Plaintiffs may uncover evidence supporting Shetty's position and thus, undermining Plaintiffs' claims. Accordingly, although Plaintiffs believe they have viable arguments, there is no assurance that their claims against Shetty would be sustained.

26.    Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency, particularly as the Court previously held that market efficiency was not sufficiently alleged. To obtain class certification, Plaintiffs would have to hire an expert economist to conduct an event study showing the price reaction of NMC ADSs to new, company-specific material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive.

27.    Discovery would also be costly and time consuming. Plaintiffs would need to engage in fact discovery, requiring review of thousands of documents and deposing Shetty, among others. Further, since the Class Period began in 2016 and depositions would not realistically start until at least 2023, there was a true possibility

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

that evidence could be lost given the passage of time as memories fade, making it a challenge to obtain usable deposition or in-person testimony.

28.   At the close of merits discovery, the Parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other issues as well. Defendants, including Shetty, would present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud.

29.   Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## V.   THE FEE APPLICATION IS FAIR AND REASONABLE

30.   The Notice informed Settlement Class Members of Co-Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $10,000. Craig Decl., Exs. A, C, and D. As set forth in the memorandum in support of Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiff, filed herewith ("Fee Brief"), one-third of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here. The Court granted Plaintiffs' request of one-third of Manghat Settlement Amount finding the request reasonable. ECF No. 134.

31.   Co-Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Co-Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

32.     Co-Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

33.     To date, Co-Lead Counsel have expended 777.69 hours on this Action. A listing of the attorneys and professionals at Rosen and Pomerantz who worked on this matter, the number of hours spent by each such professional, and their hourly rates are set forth in detail in the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") ¶4, and the Declaration of Joshua B. Silverman in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Silverman Fee Decl.") p. 1. A true and correct copy of the Rosen Fee Decl. is attached hereto as **Exhibit 3** and a true and correct copy of the Silverman Fee Decl. is attached hereto as **Exhibit 4**. The total value Rosen's and Pomerantz's services in this Action, based upon our current rates, is $497,280.90.

34.     If Co-Lead Counsel's request of one-third of the Settlement as attorneys' fees is granted, Co-Lead Counsel would receive a fee of $100,000. In total from the Manghat Settlement and the Shetty Settlement, Co-Lead Counsel would be awarded $163,333. This total fee award of $163,333 would represent a negative lodestar multiplier of approximately 0.32. This is significantly lower than the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

35.     As reflected in each firm's resume, Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. *See* ECF No. 11-5 (Rosen Resume); ECF No. 11-6 (Pomerantz Resume).

36.     Moreover, in addition to the time expended to date, Co-Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

37. Co-Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

38. Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiff further describes in the Fee Approval Brief the risks Co-Lead Counsel assumed and the time and expenses it incurred without any payment.

39. From the outset, Co-Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required.

40. Reaching the Shetty Settlement required Co-Lead Counsel's hard work and diligence to develop the facts and theories of the case and persuade Shetty to decide to resolve the claims rather than continue litigation. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

41. As a result of persistent efforts in the face of substantial risks and uncertainties, Co-Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Co-Lead Counsels' efforts and the favorable result achieved, I believe that a fee of one-third of the Settlement Amount is reasonable and warrants Court approval.

42. As noted above, noted above, 1,965 potential Settlement Class Members received notice of the Settlement. Craig Decl. ¶6.

43. The deadline for objections is July 26, 2022. As of July 18, 2022, the date of the execution of the Craig Declaration, neither Co-Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Craig Decl. ¶12.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

44.     The deadline for exclusion requests is July 26, 2022. As of July 18, 2022, neither Co-Lead Counsel nor the Claims Administrator has received any requests for exclusion from the settlement. Craig Decl. ¶11.

## VI.     REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

45.     Excluding expenses previously reimbursed in connection with the Tompkins and Manghat Settlement, Co-Lead Counsel have incurred expenses in the amount of $3,382.83 while prosecuting the Action. These expenses, in the aggregate, are less than the $10,000 expense request that was fully disclosed in the Notice. They were advanced by Co-Lead Counsel and were reasonable and necessary for the prosecution of the Action.

46.     From the beginning of the case, Co-Lead Counsel was aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Co-Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

47.     A listing of the expenses incurred by Rosen compiled from the regularly maintained records are set forth in the Rosen Fee Decl., ¶5, and a listing of the expenses incurred by Pomerantz compiled from the regularly maintained records are set forth in the Silverman Fee Decl., p. 2. The expenses incurred by Rosen and Pomerantz pertaining to this case are reflected in Rosen's and Pomerantz's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

48.     Litigation expenses for which Co-Lead Counsel seeks reimbursement included travel expenses, administrative costs, and other expenses that were necessary for the prosecution of this Action. Each of these incremental expenses were reasonable and necessary for the successful continued prosecution of this case.

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)

49.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

## VII.   A NOMINAL AWARD TO PLAINTIFFS IS WARRANTED

50.     Plaintiffs seek an award of $3,000 each, or $9,000 in total, for their time and effort overseeing this action pursuant to the PSLRA. Declarations of Chris Hashem, Abdul Razeq Abdul Ahad, and Shengming Huang, respectively attached hereto as **Exhibits 5-7**, detail the work Plaintiffs completed on behalf of the Settlement Class, including filing the complaint, filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Shetty Settlement with counsel. Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront.

51.     As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2022.

/s/ *Laurence M. Rosen*
Laurence M. Rosen

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.


/s/ *Laurence M. Rosen*
Laurence M. Rosen

DECLARATION OF LAURENCE M. ROSEN; 2:20-cv-02303-CBM(MAAx)